## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JUDY KIRKBRIDE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:21-cv-22 |
| | ) | |
| v. | ) | Chief Judge Algenon L. Marbley |
| | ) | Magistrate Judge Elizabeth P. Deavers |
| THE KROGER CO., | ) | |
| | ) | Oral Argument Requested |
| Defendant. | ) | |
| | ) | |

## THE KROGER CO.'S MOTION TO DISMISS

For the reasons set forth in the attached memorandum, Defendant The Kroger Co. moves, pursuant to Fed. R. Civ. P. 12(b)(6) and 9(b), to dismiss all of the claims in Plaintiff's Complaint because Plaintiff has failed to state claims for relief and has failed to plead with particularity.

Dated: April 9, 2021

Respectfully submitted,

_____
Nathaniel Lampley Jr. (BPR #004 1543)
(NLampley@vorys.com) (trial attorney)
VORYS, SATER, SEYMOUR AND PEASE LLP
Atrium Two, Suite 2000 221 East Fourth Street
Cincinnati, OH 45202
Telephone: (513) 723-4000
Facsimile: (513) 852-7869

Robert Webner (BPR #0029984)
(rnwebner@vorys.com)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215

Telephone: (614) 464-6400
Facsimile: (614) 464-6350

Frederick Robinson (*pro hac vice*)
(frobinson@reedsmith.com)
Selina Coleman (*pro hac vice*)
(scoleman@reedsmith.com)
REED SMITH LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005
Telephone: (202) 414-9200
Facsimile: (202) 414-9299

Michael S Leib (*pro hac vice*)
(mleib@reedsmith.com)
REED SMITH LLP
10 S. Wacker Drive, Suite 4000
Chicago, IL 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

This certifies that all counsel of record were served via the Electronic Case Filing ("ECF") System on April 9, 2021.

_____
Nathaniel Lampley Jr.

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JUDY KIRKBRIDE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.:  2:21-cv-22 |
| | ) | |
| v. | ) | Chief Judge Algenon L. Marbley |
| | ) | Magistrate Judge Elizabeth P. Deavers |
| THE KROGER CO., | ) | |
| | ) | Oral Argument Requested |
| Defendant. | ) | |
| | ) | |

**DEFENDANT THE KROGER CO.'S MEMORANDUM OF LAW
<u>IN SUPPORT OF ITS MOTION TO DISMISS</u>**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................................III

I.      INTRODUCTION ...............................................................................................1

II.     FACTUAL BACKGROUND ..............................................................................2

       A.     The Kroger Rx Savings Club ................................................................2

       B.     The U&C Prices Kroger Submits To TPPs .............................................3

       C.     Plaintiff's Prescription Drug Purchases ................................................4

III.    LEGAL STANDARD ........................................................................................4

IV.    ARGUMENT .....................................................................................................5

       A.     The Court Should Dismiss Plaintiff's Claims For Fraud (Count I) ........................5

              1.     To The Extent Plaintiff Is Alleging Misrepresentations, Plaintiff Pleads Kroger Made The Misrepresentations To A Third-Party, Which, Under Ohio Law, Cannot Form The Basis For A Fraud Claim ...............................................................................................6

              2.     To The Extent Plaintiff Attempts To Plead That Kroger Concealed The True U&C Prices, She Has Failed To State A Claim Because Plaintiff Did Not Have A Duty To Disclose Its U&C Prices And Because Plaintiff Also Pleads That Kroger Publishes Its Retail And Club Prices .......................................................................................8

              3.     Because Plaintiff Pleads That She Anticipates Purchasing Generic Drugs Again At Kroger In The Future, She Cannot Establish Reliance Or Materiality ............................................................................10

              4.     Plaintiff Has Failed To Allege A Cognizable Injury And, Therefore, The Court Should Dismiss Plaintiff's Fraud Claim ..................................10

              5.     By Alleging Kroger Made "Misrepresentations And/Or Omissions," And By Failing To Make Clear What Those Alleged "Misrepresentations And/Or Omissions" Are, Plaintiff Has Failed To Plead Fraud With The Particularity Required ......................................12

       B.     The Court Should Dismiss Plaintiff's Claim For Negligent Misrepresentation (Count II) ...................................................................13

1.  Because, Under Ohio Law, A Consumer Transaction Cannot Give Rise To A Claim For Negligent Misrepresentation, The Court Should Dismiss Plaintiff's Claim For Negligent Misrepresentation .........13

2.  Plaintiff's Negligent Misrepresentation Claim Should Also Be Dismissed Because Plaintiff Has Failed To Plead Reliance Or A Cognizable Injury......................................................................................14

3.  Plaintiff Has Failed To Plead Negligent Misrepresentation With Sufficient Particularity .................................................................15

4.  Because Plaintiff Pleads A Misrepresentation To A Third Party, She Has Failed To State A Claim For Negligent Misrepresentation ...............15

C.  Because The Complaint Establishes That Plaintiff Has Not Conferred An Unjust Benefit On Kroger, The Court Should Dismiss Plaintiff's Unjust Enrichment Claim (Count III).................................................................16

V.  CONCLUSION.............................................................................................................17

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Andersen Windows, Inc.*,
  913 F. Supp. 2d 490 (S.D. Ohio 2012) ..............................................................5, 12

*Anderson, Inc. v. Consol, Inc.*,
  348 F.3d 496 (6th Cir. 2003) ................................................................................15

*Andersons, Inc. v. Consol, Inc.*,
  185 F. Supp. 2d 833 (N.D. Ohio 2002)................................................................16

*Angelo v. Muskingum Cty. Child Protective Servs.*,
  No. 2:20-cv-6421, 2021 U.S. Dist. LEXIS 21167 (S.D. Ohio Feb. 4, 2021) ..........................3

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................................ *passim*

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................................ *passim*

*Bryk v. Berry*,
  2008 Ohio App. LEXIS 2049 (Ohio Ct. App., May 19, 2008)................................5

*Bush Truck Leasing, Inc. v. Cummins, Inc.*,
  Case No. 1:18-cv-871, 2020 U.S. Dist. LEXIS 120226 (S.D. Ohio July 9,
  2020) ....................................................................................................15

*Carter v. Nat'l City Bank*,
  No. 1:17-cv-508, 2018 U.S. Dist. LEXIS 122683 (S.D. Ohio July 23, 2018)........................13

*Eidson v. Tenn. Dep't. of Children's Servs.*,
  510 F.3d 631 (6th Cir. 2007) ...............................................................................14

*Garofalo v. Chi. Title Ins. Co.*,
  661 N.E.2d 218 (Ohio Ct. App. 1995) .................................................................10

*Gator Dev. Corp. v. VHH, Ltd.*
  No. C-080193, 2009 Ohio App. LEXIS 1525 (Ohio Ct. App. Apr. 17, 2009)....................8, 9

*Hiles v. Edward Thomas Invest. Group, LLC*,
  Franklin Cty C.P. Nos. 16CV-3704, 16CV-3706, 16CV-3766, 16CV-4382,
  16CV-4416, 2017 Ohio Misc. LEXIS 4045 (Ct. Com. Pl. Aug. 23, 2017)..........................16

*Johnson v. Microsoft Corp.*,
  834 N.E.2d 791 (Ohio S.C. 2005).........................................................................16

*Langford v. Rite Aid of Ala., Inc.*,
231 F.3d 1308 (11th Cir. 2000) ...................................................................8, 14

*Laurent v. Flood Data Servs.*,
766 N.E.2d 221 (Ohio Ct. App.. Oct. 31, 2001) ...................................................16

*Middlefield Banking Co. v Deeb*,
Case No. 2011-G-3007, 2012 Ohio App. LEXIS 2829 ...........................................13

*Moses v. Sterling Commerce Am., Inc.*,
No. 02AP-161, 2002 Ohio App. LEXIS 4347 (Ohio Ct. App. Aug. 15, 2002)...................7, 8

*RLFShop, LLC v. Am. Express Co.*,
No. 3:17-cv-405, 2018 U.S. Dist. LEXIS 143249 (S.D. Ohio Aug. 23, 2018) .......................13

*Sooy v. Ross Incineration Servs.*,
C.A. NO. 98CA007031, 1999 Ohio App. LEXIS 4889 (Ohio Ct. App. Oct. 20,
1999) ...........................................................................................7, 8

*Terlesky v. Fifth Dimension, Inc.*,
No. 15-cv-374, 2015 U.S. Dist. LEXIS 155236 (S.D. Ohio Nov. 17, 2015) ...................14, 15

*Total Benefits Planning Agency Inc. v. Anthem Blue Cross & Blue Shield*,
630 F. Supp. 2d 842 (S.D. Ohio 2007) .............................................................3

*Wash. Cty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*,
431 F. Supp. 3d 698 (D. Md. 2020)................................................................15

**Other Authorities**

Fed. R. Evid. 201 ....................................................................................3

Federal Rule of Civil Procedure 9(b).................................................2, 5, 12, 15

Federal Rule of Civil Procedure 12(b)(6) ...................................................2, 4

## I.    INTRODUCTION

Plaintiff alleges that The Kroger Co. ("Kroger"), a national grocery retailer with pharmacies in many of its stores, defrauded customers who used insurance to buy generic drugs. Specifically, Plaintiff alleges that Kroger caused insured customers not to receive the benefit of the special prices Kroger makes available to customers who choose to enroll in Kroger's Rx Savings Club (the "Savings Club") and pay its membership fee of $36 for an individual or $72 for a family.  Plaintiff's claims, however, fail from the start.

Plaintiff claims that Kroger committed fraud by misrepresenting its "usual and customary" ("U&C") prices when submitting claims for prescription reimbursement to third-party payors ("TPPs"), such as health insurers, which is a price point that TPPs consider when determining customer copayments.  Ohio law, however, does not recognize fraud based on an alleged misrepresentation made to a third party that indirectly causes injury to a plaintiff.  Further, to the extent Plaintiff alleges that Kroger "concealed the true U&C prices," not only does a seller have no duty to a buyer to disclose the alleged "true U&C prices," but also Plaintiff's own Complaint establishes that Kroger published on its website both the retail prices and the club prices of Savings Club program drugs.  In other words, the Complaint itself establishes that Kroger did not "conceal the true U&C prices."  Instead, Kroger publicly announced that its retail prices and Savings Club prices were not the same.  For these reasons, Plaintiff has failed to state a claim for fraud.

Plaintiff also alleges negligent misrepresentation.  Under Ohio law, for purposes of negligent misrepresentation, only certain professions have a duty to provide accurate information; a seller in a consumer transaction does not have such a duty.  Indeed, Ohio courts have made it clear that the claim of negligent misrepresentation does not apply to a consumer transaction.  As such, the Court should dismiss Plaintiff's negligent misrepresentation claim.

Finally, Plaintiff has not pled any injury or loss, which dooms all of her claims, including her claim for unjust enrichment. Plaintiff alleges an injury because she has insurance and paid $4.46 more in copayments on two prescription drugs than she would have paid if Kroger had charged her the Savings Club prices for those two drugs, plus the $36 membership fee. The Complaint itself, however, shows that Plaintiff's insurance plan did not cover one of the two prescriptions for which Plaintiff alleges Kroger overcharged her. Because Plaintiff's claims only reach prescriptions for which she was "insured for the purchase through a third-party payor" (Compl. (ECF #1) ¶ 24), that purchase cannot be part of Plaintiff's claim. Removing that purchase, Plaintiff alleges only that she was overcharged $1.97 on one prescription drug, while admitting that she cannot show injury or loss unless she was overcharged by an amount greater than the $36 membership fee, which she was not. With no injury alleged, all of Plaintiff's claims must fail.

In sum, the Complaint does not describe fraud, negligent misrepresentation, or unjust enrichment and, therefore, the Court should dismiss Plaintiff's entire Complaint pursuant to Federal Rules of Civil Procedure 12(b)(6) and 9(b).

## II. FACTUAL BACKGROUND[1]

### A. The Kroger Rx Savings Club

Since 2018, Kroger has offered its customers the opportunity to join the Savings Club. (Compl. ¶ 17.) Customers who choose to join the Savings Club must pay an annual fee of $36 for individuals or $72 for families. (*Id.*) In return, Savings Club members receive access to prices lower than Kroger's retail prices for many commonly prescribed generic drugs. (*Id.*) Any customer can determine whether the Savings Club covers a prescription drug through the Kroger website, www.krogersc.com (available at www.kroger.com/health/pharmacy), where Kroger

---

[1] For purposes of this Motion only, Kroger bases its arguments on the facts alleged in the Complaint.

provides a lookup feature that allows customers to see the difference between the retail prices and the Savings Club prices of the covered drugs.[2]  Indeed, Plaintiff's Complaint includes examples of the lookup feature for two prescription drugs in the Savings Club.  (*See* Compl. ¶¶ 20-21.)

Uninsured customers who do not join the Savings Club or present any other kind of benefit pay Kroger's retail prices for prescription medications.  (Compl. ¶¶ 20-21.)  Insured customers, like Plaintiff, have the option of either using their insurance benefits for a particular prescription or, after enrolling in the Savings Club and paying the enrollment fee, using their Savings Club benefits to receive the Savings Club price.  (*Id*. ¶¶ 9, 17-18.)

### B.      The U&C Prices Kroger Submits To TPPs

Plaintiff claims that, for drugs in the Savings Club, Kroger should have reported its Savings Club prices as its U&C prices to TPPs, and that, if it had, some insured customers, including Plaintiff, would have paid less for some prescriptions.  (Comp. ¶¶ 18-19.)

When a customer uses their insurance to purchase a prescription drug, the plan pays a portion of the cost and the customer pays a copay and/or deductible.  (Compl. ¶ 9.)  Plaintiff alleges that "the pharmacist or pharmacy technician enters the prescription information and any applicable insurance or benefit information into Kroger's computerized claims processing system," and "then submits the claim to the customer's TPP or its agent," who determines the customer's copayment amount.  (Compl. ¶¶ 1, 12-13.)  When submitting the claim to the TPP, Kroger reports certain data, one of which is the U&C price for the drug.

---

[2] A court may take judicial notice of facts in accordance with Federal Rule of Evidence 201.  *See* Fed. R. Evid. 201(b)(2) and (c)(1) (a court "may take judicial notice on its own" of facts "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy [cannot] reasonably be questioned"); *Angelo v. Muskingum Cty. Child Protective Servs.,* No. 2:20-cv-6421, 2021 U.S. Dist. LEXIS 21167, at *1, *4 n.2 (S.D. Ohio Feb. 4, 2021); *see also Total Benefits Planning Agency Inc. v. Anthem Blue Cross & Blue Shield*, 630 F. Supp. 2d 842, 849 (S.D. Ohio 2007) (taking judicial notice of information on the relationship between the defendants found on the defendant's parent company's website, finding that the website is a "sources whose accuracy cannot reasonably be questioned").

Although Plaintiff does not plead any facts about the contracts relevant to her claims, Plaintiff does allege that at least some contracts between Kroger and TPPs provide that "the amount of the [customer's] copayment cannot exceed the U&C price." (Compl. ¶ 16.) Plaintiff alleges that Kroger submits its retail prices to TPPs as its U&C prices. (*Id.* ¶¶ 13, 20-21.) She also alleges that, if Kroger reported its Savings Club prices as its U&C prices, insured customers whose TPP has a contract with Kroger that provides that customers' copayments cannot exceed the U&C price would pay no more than the Savings Club price for Savings Club drugs, even if the customer had not joined the Savings Club or paid the membership fee. (*Id.* ¶ 1.)

### C.  Plaintiff's Prescription Drug Purchases

Plaintiff alleges that on December 7, 2020, she filled two prescriptions at Kroger, paying a total of $56.28 in copayments. (Compl. ¶ 4.) Plaintiff further alleges that the combined cost of Savings Club prices for the two drugs, plus the $36 membership fee, was $51.82. Plaintiff claims, therefore, that Kroger overcharged her by $4.46 for the two drugs. (*Id.*) Although Plaintiff admits that she has no injury unless she was overcharged by an amount greater than the $36 membership fee, Plaintiff does not explain in her Complaint how Kroger would have been able to collect the $36 fee from her, as she did not elect to join the Savings Club.

## III.  LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal if a plaintiff "fail[s] to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 667-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007)). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing

- 4 -

*Twombly*, 550 U.S. at 556).  The plaintiff must make "a 'showing,' rather than a blanket assertion, of entitlement to relief."  *Twombly*, 550 U.S. at 555 n.3.

Federal Rule of Civil Procedure 9(b) requires allegations of fraud to state the circumstances that constitute the alleged fraud with greater particularity.  *See* Fed. R. Civ. P. 9(b).  Specifically, "a plaintiff must 'allege the time, place, and content of the alleged misrepresentation on which he or she relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud.'"  *Allen v. Andersen Windows, Inc.*, 913 F. Supp. 2d 490, 498-99 (S.D. Ohio 2012) (citation omitted)).

## IV.  ARGUMENT

### A.  The Court Should Dismiss Plaintiff's Claims For Fraud (Count I)

Plaintiff has failed to state a claim for fraud.  To plead a claim for fraud or fraudulent concealment under Ohio law, a plaintiff must allege:  "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance."  *Bryk v. Berry*, 2008 Ohio App. LEXIS 2049, at **3 (Ohio Ct. App., May 19, 2008).  Plaintiff's fraud claim fails, however, for the following reasons:

1. To the extent Plaintiff alleges misrepresentations, she alleges Kroger made misrepresentations to Plaintiff's TPP, not to Plaintiff, and, under Ohio law, a misrepresentation made to a third party does not support a claim for fraud;

2. To the extent Plaintiff alleges concealment, Kroger had no duty to disclose its U&C prices to Plaintiff and, moreover, Kroger publishes both the retail prices and Savings Club prices for all Savings Club drugs and, therefore, did not conceal the retail prices that Plaintiff alleges Kroger reported as its U&C prices;

3. Because Plaintiff pleads that she anticipates purchasing again at Kroger, she cannot establish reliance or materiality;

4.      Plaintiff has not pled facts showing that she suffered a cognizable injury; and

5.      Plaintiff failed to plead fraud with the required particularity.

> **1.      To The Extent Plaintiff Is Alleging Misrepresentations, Plaintiff Pleads Kroger Made The Misrepresentations To A Third-Party, Which, Under Ohio Law, Cannot Form The Basis For A Fraud Claim**

As set forth below, Plaintiff has failed to plead sufficiently whether she is alleging that Kroger made misrepresentations, omissions, or both.  To the extent that Plaintiff alleges Kroger made misrepresentations, she alleges that Kroger did so by allegedly reporting inflated U&C prices to TPPs.  But misrepresentations made to a third party, even if those misrepresentations result in injury to the plaintiff, cannot support a claim of fraud.

Plaintiff does not plead that Kroger ever mentioned the term "U&C" or "usual and customary" to her.  Instead, Plaintiff alleges that, by reporting allegedly inflated U&C prices to the TPP that determined Plaintiff's copayment for the drugs she purchased from Kroger, Plaintiff overpaid for those drugs.  Specifically, she alleges:

> Kroger materially misrepresented and/or concealed the true U&C prices of generic prescription drugs that are included in the [Savings Club] program.  Kroger made such misrepresentations and/or omissions *by reporting artificially inflated U&C prices for such drugs to TPPs*.

(Compl. ¶ 34) (emphasis added).)  In addition, Plaintiff pleads that, at the time of Plaintiff's December 7, 2020 transactions, "Kroger reported to [her TPP]" the U&C prices for Doxycycline and Benzonatate.  (Compl. ¶ 4; *see also id*. ¶¶ 12-13 (stating that, when a customer fills a prescription at Kroger, "Kroger then submits the claim to the customer's TPP or its agent" and part of the information Kroger is required to report in its submission is the drug's "usual and customary" price.)  Plaintiff alleges that "TPPs use U&C prices to set copayment amounts," and, therefore, "the result of Kroger's inflated U&C prices was that Plaintiff . . . paid far more for generic drugs than [she] should have."  (*Id*. ¶ 1.)  In fact, Plaintiff alleges that it was her TPP,

Anthem, not Kroger, that set Plaintiff's copayments for the two drug purchases at issue.  (*Id*. ¶ 4 ("Anthem set Ms. Kirkbride's copayments at . . .")

Because Plaintiff alleges that Kroger made the alleged misrepresentations to Anthem and not to Plaintiff, and that Plaintiff was harmed only as a result of Anthem's reliance on Kroger's alleged misrepresentations in setting Plaintiff's copayments, to the extent Plaintiff's fraud claim is based on misrepresentations, it fails under Ohio law.

> The Ohio Supreme Court has held that a party cannot maintain an action for fraud when the fraudulent representations were not made to him to induce him to act upon them in any matter affecting his own interests. See *Wells v. Cook* (1865), 16 Ohio St. 67, syllabus. Accordingly, ***a plaintiff claiming that a third party relied on a misrepresentation made by the defendant and that the plaintiff suffered injury thereby does not state a valid cause of action for fraud***.

*Sooy v. Ross Incineration Servs.*, C.A. NO. 98CA007031, 1999 Ohio App. LEXIS 4889, at *28 (Ohio Ct. App. Oct. 20, 1999) (emphasis added); *see also Moses v. Sterling Commerce Am., Inc.*, No. 02AP-161, 2002 Ohio App. LEXIS 4347, at *8-9 (Ohio Ct. App. Aug. 15, 2002) (same).

Plaintiff also alleges that "Kroger made a false representation every time it charged Plaintiff . . . for copays that were calculated based on inflated U&C prices." (Compl. ¶ 34.)  That, allegation, however, suffers the same defect.  As Plaintiff pleads in the Complaint, Kroger did not set Plaintiff's copayments; Anthem did.  (*Id*. ¶ 4 ("Anthem set Ms. Kirkbride's copayments at . . .")  According to Plaintiff, Anthem would have set lower copayments if Kroger had reported its Savings Club prices as its U&C prices.  (*Id*. ¶ 1) ("TPPs use U&C prices to set copayment amounts," and, therefore, "the result of Kroger's inflated U&C prices was that Plaintiff . . . paid far more for generic drugs than [she] should have.")  This, however, is the same indirect fraud allegation referenced above; that is, that Kroger allegedly made a misrepresentation to Anthem and, as a result of Anthem relying on that alleged misrepresentation, Anthem set copayments higher than it otherwise would have.  Because Plaintiff cannot plead a fraud claim based on a third

party relying on an alleged misrepresentation, she fails to state a claim for fraud. *Sooy*, 1999 Ohio App. LEXIS 4889, at *28; *Moses*, 2002 Ohio App. LEXIS 4347, at *8-9.

      **2.**       **To The Extent Plaintiff Attempts To Plead That Kroger Concealed The True U&C Prices, She Has Failed To State A Claim Because Plaintiff Did Not Have A Duty To Disclose Its U&C Prices And Because Plaintiff Also Pleads That Kroger Publishes Its Retail And Club Prices**

Although it is unclear if Plaintiff is alleging an omission, if she is, that claim also fails. Based on her Complaint, the only possible omission that Plaintiff could be claiming is that "Kroger materially misrepresented and/or concealed the true U&C prices of generic prescription drugs that are included in the [Savings Club] program." (Compl. ¶ 34.) Kroger, however, had no duty to disclose to Plaintiff the alleged "true U&C prices" and, even if it did, Plaintiff's own allegations show that Kroger did not conceal the retail prices for the Savings Club drugs that Plaintiff claims Kroger reported as its U&C prices.

Under Ohio law, a duty to disclose information in a business transaction arises only where "(1) the parties are in a fiduciary relationship; (2) both parties to the transaction understand that a special trust or confidence has been reposed; or (3) full disclosure is necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts." *Gator Dev. Corp. v. VHH, Ltd*., No. C-080193, 2009 Ohio App. LEXIS 1525, at *17 (Ohio Ct. App. Apr. 17, 2009). Here, Plaintiff has not pled the existence of a fiduciary relationship, nor did one exist. Moreover, while Plaintiff pleads that "[t]he relationship between a pharmacy and its customers is unique, special and important," because "[p]harmacists discuss with customers how they should take medications . . . and advise customers on general health topics" (Compl. ¶ 22), this case relates to the ***price*** of a product, not Plaintiff's health or use of medication. No special trust or confidence was reposed with regard to a Kroger pharmacist charging the prices set by Plaintiff's TPP. *See Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1314 (11th Cir. 2000) (stating that "[p]harmacists

owe duties to their patients ranging from diligence in recommending medication to confidentiality in maintaining patient's records; however, nothing in their professional code of conduct suggests, even obliquely, that pharmacists violate that duty by not disclosing the pricing policies of their pharmacy").  In addition, because Plaintiff does not plead that she ever had a conversation with a Kroger employee regarding the U&C price of the prescription drugs at issue, Plaintiff has failed to plead a misleading disclosure through a "partial revelation of the facts."  *See Gator Dev. Corp.¸* 2009 Ohio App. LEXIS 1525, at *17.  Without a duty, any claim for omission fails.

Moreover, Plaintiff's Complaint establishes conclusively that Kroger did not conceal "the true U&C prices of generic prescription drugs that are included in the Savings Club program." (Compl. ¶ 34.)  Indeed, Plaintiff pleads that Kroger publishes both the "retail price" and the "Kroger Rx Savings Club price" for drugs in the Savings Club.  (Compl. ¶¶ 20-21.)  Although Plaintiff cites examples that have nothing to do with her purchases, the retail price and the Savings Club price for all drugs covered by the Savings Club, including the drugs purchased by Plaintiff – Doxycycline Hylate and Benzonatate (misspelled in the Complaint as Benzontate) – can be found on Kroger's website, www.krogersc.com (available at www.kroger.com/health/pharmacy).  In fact, the images Plaintiff inserted in Paragraphs 20 and 21 of the Complaint show that Plaintiff found these price comparisons on Kroger's website.  Because Kroger publishes its "retail price" – or what Plaintiff calls in Paragraphs 20 and 21 of the Complaint "the U&C price" – as well as the Savings Club price for all drugs in the Savings Club, to the extent that Plaintiff alleges that Kroger concealed "the true U&C prices of generic prescription drugs that are included in the Savings Club program," she has failed to state a claim for relief.

3.    **Because Plaintiff Pleads That She Anticipates Purchasing Generic Drugs Again At Kroger In The Future, She Cannot Establish Reliance Or Materiality**

Plaintiff also fails to plead facts supporting reliance or materiality.  Plaintiff pleads that, "[d]ue to the need for continuity of access and care, Plaintiff anticipates filling future prescriptions for generic drugs at Kroger."  (Compl. ¶ 4.)  Of course, the allegation regarding "continuity of access of care" is not plausible and, therefore, fails to meet the pleading standards of *Iqbal* and *Twombly*.  Plaintiff can fill prescriptions at any pharmacy in her insurance network, and is not required to fill them at Kroger.  Yet Plaintiff alleges that, even though she now knows that Kroger does not report its Savings Club prices as its U&C prices, she anticipates continuing to fill prescriptions at Kroger.  (Compl. ¶ 4.)  Because Plaintiff can fill prescriptions for generic drugs at pharmacies other than Kroger, and because she pleads that, knowing Kroger's alleged wrongful conduct, she will nonetheless fill future prescriptions for generic drugs at Kroger, Plaintiff has established that she did not rely on any alleged misrepresentations, omissions, or both; and that any alleged misrepresentations, omissions, or both were not material to these transactions.  Accordingly, Plaintiff fails to state a claim for fraud.

4.    **Plaintiff Has Failed To Allege A Cognizable Injury And, Therefore, The Court Should Dismiss Plaintiff's Fraud Claim**

Under Ohio law, injury is an element of a fraud claim.  *See, e.g. Garofalo v. Chi. Title Ins. Co.*, 661 N.E.2d 218, 224 (Ohio Ct. App. 1995).  Plaintiff, however, has failed to plead an injury.

In Paragraph 4 of Complaint, Plaintiff identifies two prescription drug purchases she made at Kroger on December 7, 2020, where she allegedly paid "inflated  copayments."  (Compl. ¶ 4.) The first prescription was for Doxycycline Hylate, 100 mg, 20 tablets, for which Plaintiff alleges Kroger's reported U&C was $88.49, the amount covered by insurance was $76.70, her copayment was $11.79, and the Savings Club Price was $9.82.  (*Id.*)  The difference between her copayment

and the Savings Club price is $1.97.  The second prescription was for Benzonatate, 200 mg, 30 tablets, for which Plaintiff alleges Kroger's reported U&C was $44.49, the amount covered by insurance was $0, her copayment was $44.49, and the Savings Club Price was $6.  (*Id*.)  The difference between her copayment and the Savings Club price is $38.49.  The combined difference between her copayments and the Savings Club price for the two prescription drugs is $40.46. Plaintiff, however, recognizes that, to be eligible for the Savings Club prices, she would have been required to pay Kroger the $36 membership fee.  (*Id*.; *see also id.* ¶¶ 20-21.)  Accordingly, Plaintiff pleads an injury of $40.46 less $36.00, or $4.46.  (*Id.* ¶ 4 ("as a result of Kroger inflating its U&C prices, Ms. Kirkbride paid at least $4.46 more in copayments for her generic prescriptions").)

The problem with Plaintiff's injury claim, however, is that the Complaint makes it clear that ***Plaintiff's insurance plan did not cover Benzonatate*** and, therefore, Plaintiff paid the full retail price for that prescription.  In fact, Plaintiff's Complaint confirms that: (i) Plaintiff's insurance plan did not cover any part of the price of the drug, and (ii) the amount Plaintiff paid is the same as the amount Kroger reported as the U&C, which is the full retail price.  (*See* Compl. ¶¶ 4, 20-21 (identifying the amount for which "Kroger lists the U&C price" as the "Kroger Pharmacy retail price").)  Because Plaintiff's insurance plan did not cover Benzonatate, the amount Kroger charged Plaintiff was not a copay; Plaintiff paid 100% of the retail price for the drug. Moreover, while Plaintiff attempts to bring this action on behalf of herself and a class of consumers "who paid for, in full or in part, a prescription generic drug that Kroger included in its Rx Savings Club, and ***who were insured for the purchase*** through a third-party payor," (*id*. ¶¶ 24-25 (emphasis added), here, Plaintiff was not insured for the Benzonatate purchase through a third-party payor.

When the Benzonatate purchase is removed from Plaintiff's claim, Plaintiff has no injury. Plaintiff alleges she was overcharged by $1.97 on her Doxycycline Hylate purchase, but she admits

that she has no injury unless she was overcharged by an amount greater than the $36 membership fee. (Compl. ¶ 4.) Thus, according to her own allegations, Plaintiff did not suffer a cognizable injury. As a result, the Court should dismiss Plaintiff's fraud claim.

> **5.** **By Alleging Kroger Made "Misrepresentations And/Or Omissions," And By Failing To Make Clear What Those Alleged "Misrepresentations And/Or Omissions" Are, Plaintiff Has Failed To Plead Fraud With The Particularity Required**

Plaintiff fails to plead whether Kroger made a misrepresentation, an omission, or both, and what the alleged fraud is, which deprives Kroger of the information it needs to defend itself. In numerous paragraphs within Count I, Plaintiff alleges that Kroger made "misrepresentations ***and/or*** omissions," without making it clear which she is alleging. (*See* Compl. ¶¶ 34-37 (emphasis added).) Plaintiff also fails to plead sufficiently whether she is alleging that "Kroger materially misrepresented and/or concealed the true U&C prices . . . by reporting artificially inflated U&C prices" to TPPs (*id.* ¶ 34), or if she is alleging that "Kroger made a false representation every time it charged Plaintiff or class members for copays that were calculated based on inflated U&C prices." (*Id.*) In other words, Kroger cannot know what Plaintiff is claiming is the fraud. "The main purpose behind Rule 9(b) is to provide the defendant with notice of the plaintiff's claim so that the defendant may prepare an informed responsive pleading." *Allen*, 13 F. Supp. 2d at 499. By failing to make clear whether she is claiming that Kroger made misrepresentation, omissions, or both, and by failing to make it clear what the fraud is that she is claiming, Plaintiff has failed to plead with the specificity required by Rule 9(b).

**B.** **The Court Should Dismiss Plaintiff's Claim For Negligent Misrepresentation (Count II)**

**1.** **Because, Under Ohio Law, A Consumer Transaction Cannot Give Rise To A Claim For Negligent Misrepresentation, The Court Should Dismiss Plaintiff's Claim For Negligent Misrepresentation**

The transactions at issue in this case are consumer transactions, which, under Ohio law, cannot give rise to a claim for negligent misrepresentation. Under Ohio law, to state a claim for negligent misrepresentation, a plaintiff must allege facts establishing that the defendant has "a duty to provide accurate information to the plaintiff that goes beyond the common-law duty to exercise reasonable care to prevent foreseeable harm." *RLFShop, LLC v. Am. Express Co.*, No. 3:17-cv-405, 2018 U.S. Dist. LEXIS 143249, at *24 (S.D. Ohio Aug. 23, 2018) (citing *425 Beecher, LLC v. Unizan Bank*, 927 N.E.2d 46, 51 (Ohio Ct. App. 2010)). Such a duty arises where there "is a special relationship under which the defendant supplied information to the plaintiff for the latter's guidance in its business transaction." *Carter v. Nat'l City Bank,* No. 1:17-cv-508, 2018 U.S. Dist. LEXIS 122683, at *15 (S.D. Ohio July 23, 2018). "[T]he class of persons who are in the business of supplying information to others" for purposes of a negligent misrepresentation claim "is limited to certain professionals, such as 'attorneys, surveyors, abstractors of title and banks dealing with [certain] checks.'" *Middlefield Banking Co. v Deeb*, Case No. 2011-G-3007, 2012 Ohio App. LEXIS 2829, at *16 (citation omitted). Crucially, "under Ohio law, *the tort of negligent misrepresentation has no application to consumer transactions* or typical business transactions." *Id*. (citing *Thornton v. State Farm Mut. Auto Ins. Co.*, No. 1:06-cv-00018, 2006 U.S. Dist. LEXIS 83968, at *49 (N.D. Ohio Nov. 17, 2006)) (emphasis added).

Here, Plaintiff pleads that, '[u]nder the circumstances alleged, Kroger owed a duty to Plaintiff, and Members of the Class and Subclass, to provide them with accurate information regarding the prices of its generic prescription drugs." (Compl. ¶ 42.) This, however, is a

conclusory allegation that, for purposes of the motion to dismiss, the Court need not accept as true. *See, e.g., Eidson v. Tenn. Dep't. of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (holding that, on a motion to dismiss, a court is not required to accept as true "[c]onclusory allegations or legal conclusions masquerading as factual allegations.").  Plaintiff further pleads that "[t]he relationship between a pharmacy and its customers is unique, special and important," because "[p]harmacists discuss with customers how they should take medications . . . and advise customers on general health topics."  (*Id.* ¶ 22.)  But this case has nothing to do with Plaintiff's health, or how Plaintiff should take her medications.  Instead, this case relates solely to the prices of products.  The Complaint, however, does not cite any Ohio case, statute, or regulation that imposes or recognizes a duty on the part of pharmacists to disclose accurate pricing information.  Indeed, no such duty exists.  *See Langford*, 231 F.3d at 1314 (stating that "nothing in their professional code of conduct suggests, even obliquely, that pharmacists violate [a] duty by not disclosing the pricing policies of their pharmacy").  In other words, the Complaint describes a classic buyer-seller relationship in a consumer transaction.  And because the transactions at issue are consumer transactions, under Ohio law, Plaintiff cannot state a claim for negligent misrepresentation.

### 2. Plaintiff's Negligent Misrepresentation Claim Should Also Be Dismissed Because Plaintiff Has Failed To Plead Reliance Or A Cognizable Injury

Under Ohio law, an injury and justifiable reliance are elements of negligent misrepresentation claims.  *See, e.g.*, *Terlesky v. Fifth Dimension, Inc.*, No. 15-cv-374, 2015 U.S. Dist. LEXIS 155236, at *12 (S.D. Ohio Nov. 17, 2015) (citation omitted).  For the reasons discussed in Sections A.3 and A.4 above, Plaintiff has failed to plead reliance or a cognizable injury.  As such, the Court should dismiss Plaintiff's negligent misrepresentation claim.

### 3. Plaintiff Has Failed To Plead Negligent Misrepresentation With Sufficient Particularity

Plaintiff also has failed to plead negligent misrepresentation with the requisite particularity. "[A]ny claim sounding in fraud – not just those alleging a claim of fraud – must meet Rule 9(b)'s pleading standard." *Bush Truck Leasing, Inc. v. Cummins, Inc.*, Case No. 1:18-cv-871, 2020 U.S. Dist. LEXIS 120226, at *12-13 (S.D. Ohio July 9, 2020) (citation omitted). "Thus, 'when a party brings both fraud and negligent misrepresentation claims but fails to plead an independent basis of liability for each of the clams, courts will apply Rule 9(b)'s standard to both claims.'" *Id*., at *13 (citation omitted). Here, Plaintiff brings her fraud and negligent misrepresentation claims based on the same course of conduct and, thus, Rule 9(b) applies to the negligent misrepresentation claim.

For Plaintiff to plead a claim for negligent misrepresentation, Plaintiff must plead that the defendant supplied false information. *Terlesky*, 2015 U.S. Dist. LEXIS 155236, at *12. Concealment cannot form the basis for a negligent misrepresentation claim; it must be an actual misrepresentation. *Anderson, Inc. v. Consol, Inc.*, 348 F.3d 496, 506 (6th Cir. 2003) (under Ohio law, "a negligent misrepresentation claim only lies for an affirmative false statement, not an omission"). Plaintiff pleads, however, that "Kroger misrepresented ***and/or concealed***" the true U&C prices of generic prescription drugs that are included in the Savings Club" (Compl. ¶ 43 (emphasis added); *see also id*. ¶¶ 44-46), making it unclear whether Plaintiff has alleged a misrepresentation or omission. That falls short of the pleading standard required by Rule 9(b).

### 4. Because Plaintiff Pleads A Misrepresentation To A Third Party, She Has Failed To State A Claim For Negligent Misrepresentation

To the extent Plaintiff does allege a misrepresentation, Plaintiff alleges that Kroger did so "by reporting artificially inflated U&C prices for such drugs to third-party payors." (Compl. ¶ 34.) An alleged misrepresentation to a third party, however, cannot support a claim for negligent misrepresentation. *See Wash. Cty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*, 431 F. Supp. 3d 698,

716 (D. Md. 2020) (holding that, if the plaintiff never received the alleged misstatement, "its conclusory assertion that it relied on the misstatement . . . is implausible and the Court need not accept it as true") (citing *Iqbal*, 556 U.S. at 678).    Accordingly, Plaintiff's negligent misrepresentation claim fails.

### C. Because The Complaint Establishes That Plaintiff Has Not Conferred An Unjust Benefit On Kroger, The Court Should Dismiss Plaintiff's Unjust Enrichment Claim (Count III)

Plaintiff's unjust enrichment claim also fails because her Complaint establishes that she has not conferred an unjust benefit on Kroger.  To prove unjust enrichment, a plaintiff must show: "(a) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment."  *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio S.C. 2005).  "[J]ust because one party may have been indirectly benefitted by another does not alone support a claim for unjust enrichment."  *Hiles v. Edward Thomas Invest. Group, LLC*, Franklin Cty C.P. Nos. 16CV-3704, 16CV-3706, 16CV-3766, 16CV-4382, 16CV-4416, 2017 Ohio Misc. LEXIS 4045, at *24 (Ct. Com. Pl. Aug. 23, 2017).  Rather, plaintiffs must show that, "under the circumstances [they have] a superior equity so that as against [them] it would be unconscionable for the defendants to retain the benefit."  *Andersons, Inc. v. Consol, Inc.*, 185 F. Supp. 2d 833, 842 (N.D. Ohio 2002).  In addition, "there must be a tie of causation between the plaintiff's loss and the defendant's benefit."  *Laurent v. Flood Data Servs.*, 766 N.E.2d 221, 226 (Ohio Ct. App.. Oct. 31, 2001) (citation omitted).

Here, however, as shown in Section A.4, above, because Plaintiff's Complaint shows that her insurance plan did not cover her Benzonatate prescription, Plaintiff has not suffered a loss, nor has she conferred a benefit on Kroger, retention of which would be unjust.  Even if Plaintiff is correct and Kroger should have charged her $1.97 less on her Doxycycline Hylate prescription,

she acknowledges that she would have had to pay the $36 Savings Club membership fee to show any injury.  (*See* Compl. ¶ 4.)  As such, Plaintiff has suffered no loss and her unjust enrichment claim, like her fraud claim and negligent misrepresentation claim, also fails.

## V.    CONCLUSION

For the reasons stated above, Kroger respectfully requests that the Court dismiss Plaintiff's Complaint in its entirety, and that the Court grant Kroger all further relief as the Court deems just.

Dated: April 9, 2021                             Respectfully submitted,

_____

Nathaniel Lampley Jr. (BPR #004 1543)
(NLampley@vorys.com) (trial attorney)
VORYS, SATER, SEYMOUR AND PEASE LLP
Atrium Two, Suite 2000 221 East Fourth Street
Cincinnati, OH  45202
Telephone: (513) 723-4000
Facsimile: (513) 852-7869

Robert Webner (BPR #0029984)
(rnwebner@vorys.com)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Telephone: (614) 464-6400
Facsimile: (614) 464-6350

Frederick Robinson (*pro hac vice*)
(frobinson@reedsmith.com)
Selina Coleman (*pro hac vice*)
(scoleman@reedsmith.com)
REED SMITH LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C.  20005
Telephone: (202) 414-9200
Facsimile: (202) 414-9299

Michael S Leib (*pro hac vice*)
(mleib@reedsmith.com)
REED SMITH LLP
10 S. Wacker Drive, Suite 4000
Chicago, IL 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

This certifies that all counsel of record were served via the Electronic Case Filing ("ECF")

System on April 9, 2021.

_____

Robert N. Webner