## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| JUDY KIRKBRIDE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:21-cv-22 |
| | ) | |
| v. | ) | Chief Judge Algenon L. Marbley |
| | ) | Magistrate Judge Elizabeth P. Deavers |
| THE KROGER CO., | ) | |
| | ) | Oral Argument Requested |
| Defendant. | ) | |
| | ) | |

## THE KROGER CO.'S MOTION TO STRIKE PLAINTIFF'S CLASS ALLEGATIONS

For the reasons set forth in the attached memorandum, Defendant The Kroger Co. moves, pursuant to Fed. R. Civ. P. 23(d)(1)(D), to strike the class allegations contained in Plaintiff's Complaint.

Dated: April 16, 2021

Respectfully submitted,

 /s/ Nathaniel Lampley, Jr.
Nathaniel Lampley Jr. (BPR #004 1543)
(NLampley@vorys.com) (trial attorney)
VORYS, SATER, SEYMOUR AND PEASE LLP
Atrium Two, Suite 2000 221 East Fourth Street
Cincinnati, OH 45202
Telephone: (513) 723-4000
Facsimile: (513) 852-7869

Robert Webner (BPR #0029984)
(rnwebner@vorys.com)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Telephone: (614) 464-6400
Facsimile: (614) 464-6350

Frederick Robinson (*pro hac vice*)
(frobinson@reedsmith.com)
Selina Coleman (*pro hac vice*)
(scoleman@reedsmith.com)
REED SMITH LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005
Telephone: (202) 414-9200
Facsimile: (202) 414-9299

Michael S Leib (*pro hac vice*)
(mleib@reedsmith.com)
REED SMITH LLP
10 S. Wacker Drive, Suite 4000
Chicago, IL 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

This certifies that all counsel of record were served via the Electronic Case Filing ("ECF") System on April 16**,** 2021.

*/s/* Nathaniel Lampley, Jr.
Nathaniel Lampley Jr.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JUDY KIRKBRIDE, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.:  2:21-cv-22 |
| | ) | |
| v. | ) | Chief Judge Algenon L. Marbley |
| | ) | Magistrate Judge Elizabeth P. Deavers |
| THE KROGER CO., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT THE KROGER CO.'S MEMORANDUM OF LAW**
**IN SUPPORT OF ITS MOTION TO STRIKE PLAINTIFF'S**
**<u>CLASS ALLEGATIONS PURSUANT TO FED. R. CIV. P. 23(d)(1)(D)</u>**

## TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ............................................................................................. 1

II.    FACTUAL BACKGROUND ............................................................................. 3

    A.    The Kroger Rx Savings Club ................................................................ 3

    B.    The U&C Prices Kroger Submits To Third Party Payors ..................... 3

    C.    Plaintiff's Prescription Drug Purchases .............................................. 4

    D.    Plaintiff's Class Allegations ................................................................ 4

III.    ARGUMENT .................................................................................................... 4

    A.    Legal Standard .................................................................................... 4

    B.    Plaintiff's Class Allegations, Including Her Allegations Seeking An Ohio Subclass, Should Be Stricken ................................................... 6

        1.    Because the putative classes seek individualized money damages, and inconsistent adjudications of different class member's claims would not establish incompatible standards of conduct for Kroger, a class cannot be certified under Rule 23(b)(1) ......................................... 6

        2.    Because the putative classes primarily seek damages, under clear Supreme Court precedent, certification of an injunctive class under Rule 23(b)(2) would be inappropriate........................................................ 8

        3.    Because individual questions of fact would overwhelm any common questions, a class under Rule 23(b)(3) would be inferior and unmanageable................................................................................... 9

            a.    For Plaintiff's fraud and negligent misrepresentation claims, because individual questions of justifiable reliance and damages would overwhelm any common questions, a class under Rule 23(b)(3) would be inferior and unmanageable ............................................................... 10

            b.    For Plaintiff's unjust enrichment claim, because individual questions of fact would overwhelm any common questions, a class under Rule 23(b)(3) would be inferior and unmanageable ............................................................... 13

    C.    In The Alternative, Under Sixth Circuit Precedent, Because The Standards For Fraud, Negligent Misrepresentation, And Unjust Enrichment Vary Significantly Among The States, Plaintiff's Allegations Regarding A Nationwide Class Should Be Stricken ............................................... 15

        1.    Under Ohio's choice-of-law rules, each putative class member's claims will be governed by the law of their home state.......................... 16

2.      Because the elements of fraud and negligent misrepresentation
        vary significantly between the states, a nationwide class is not
        manageable ............................................................................................ 16

3.      Because the elements of unjust enrichment vary significantly
        between the states, a nationwide class is not manageable ...................... 19

IV.     CONCLUSION ................................................................................................ 20

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Am. Med. Sys., Inc.,*
  75 F.3d 1069 (6th Cir. 1996) ................................................17

*Amchem Prod., Inc. v. Windsor,*
  521 U.S. 591 (1997)...........................................................7

*Angelo v. Muskingum Cty. Child Protective Servs.,*
  No. 2:20-cv-6421, 2021 U.S. Dist. LEXIS 21167 (S.D. Ohio Feb. 4, 2021) ............3

*Bacon v. Honda of Am. Mfg., Inc.,*
  205 F.R.D. 466 (S.D. Ohio 2001), *aff'd* 370 F.3d 565 (6th Cir. 2004) ...................8

*Baxter v. PNC Bank Nat'l Ass'n,*
  541 F.App'x 395 (5th Cir. 2013) .........................................19

*In re Bendectin Prod. Liab. Litig.,*
  749 F.2d 300 (6th Cir. 1984) ..............................................7

*Blystra v. Fiber Tech Gr., Inc.,*
  407 F. Supp. 2d 636 (D.N.J. 2005) .....................................19

*Brae Asset Fund, L.P. v. Adam,*
  661 A.2d 1137 (Me. 1995)..................................................8

*In re Bridgestone/Firestone, Inc.,*
  288 F.3d 1012 (7th Cir. 2002) ............................................17

*Bryk v. Berry,*
  No. 07CA0045, 2008 Ohio App. LEXIS 2049 (Ohio Ct. App., May 19, 2008) ..................10

*Carter v. PJS of Parma, Inc.,*
  No. 1:15 CV 1545, 2016 U.S. Dist. LEXIS 79747 (N.D. Ohio June 20, 2016) ....................14

*Casa Orlando Apartments, Ltd v. Fed Nat*
  *'l Mortgage Ass 'n.,* 624 F.3d 185 (5th Cir. 2010) ..............................19

*Castano v. Am. Tobacco Co.,*
  84 F.3d 734 (5th Cir. 1996) .........................................17, 19

*Ceribelli v. Elghanayan,*
  990 F.2d 62 (2d Cir. 1993).................................................18

*Chesner v. Stewart Title Guar. Co.*,
    No. 1:06-cv-00476, 2008 WL 553773 (N.D. Ohio Jan. 23, 2008) ..........................................14

*Clay v. Am. Tobacco Co.*,
    188 F.R.D. 483 (S.D. Ill. 1999) ............................................................................................20

*Colley v. Procter and Gamble Co.*,
    No. 1:16-cv-918, 2016 WL 5791658 (S.D. Ohio Oct. 4, 2016) ....................................8, 9, 19

*Comcast v. Behrend*,
    569 U.S. 27 (2013) ........................................................................................................4, 12

*Cooly v. Lincoln Elec. Co.*,
    776 F. Supp. 2d 511 (N.D. Ohio 2011) ................................................................................19

*In re Currency Conversion Fee Antitrust Litigation*,
    230 F.R.D. 303 (S.D.N.Y. 2004), *modified on other grounds,* 2005 WL
    1705285 (S.D.N.Y. 2005) ...................................................................................................19

*In Re Ford Motor Co. Vehicle Paint Lit'g*,
    182 F.R.D. 214 (E.D. La 1998) ...........................................................................................19

*Gen. Insulation Co. v. Eckman Constr.*,
    992 A.2d 613 (N.H. 2010) ..................................................................................................19

*Gen. Tel. Co. of Sw. v. Falcon*,
    457 U.S. 147 (1982) .............................................................................................................5

*Gianino v. Alacer Corp.*,
    846 F. Supp. 2d 1096 (C.D. Cal. 2012) ...............................................................................18

*Green v. McNeil Nutritionals, LLC*,
    No. 2004-0379-CA, 2005 WL 3388158 (Fla. Cir. Ct. Nov. 16, 2005)....................................15

*Gunnells v. Healthplan Servs, Inc.*,
    348 F.3d 417 (4th Cir. 2003) ..............................................................................................10

*Hale v. Enerco Group*,
    288 F.R.D. 139 (N.D. Ohio 2012) ................................................................................ *passim*

*Hambleton v. R.G. Barry Corp.*,
    465 N.E.2d 1298 (Ohio 1984) .............................................................................................14

*Iba v. Jones*,
    836 F.3d 516 (5th Cir. 2016) ..............................................................................................13

*Krieger v. Gast*,
    197 F.R.D. 310 (W.D.Mich. 2000).......................................................................................15

*L. Amundson v. Wortman*,
  777 P.2d 315 (Mont. 1989) ...................................................................................18

*Loreto v. Procter & Gamble Co.*,
  No. 1:09-CV-815, 2013 WL 6055401 (S.D. Ohio Nov. 15, 2013) ............................................5

*Lubore v. R.P.M. Assoc.*,
  674 A.2d 547 (Md. Ct. Spec. App. 1996) ..................................................................18

*McKell v. Wash Mut., Inc.*,
  142 Cal. App. 4th 1457 (Cal. Ct. App. 2006) ...........................................................19

*Muncie Power Prod., Inc. v. United Techs. Auto., Inc.*,
  328 F.3d 870 (6th Cir. 2003) ...............................................................................16

*Osuna v. Wal-Mart Stores, Inc.*,
  No. C20014319, 2004 WL 3255430 (Ariz. Super. Ct. Dec. 23, 2004) ...................................15

*Pilgrim v. Universal Health Card, LLC*,
  660 F.3d 943 (6th Cir. 2011) ....................................................................... *passim*

*Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield*,
  654 F.3d 618 (6th Cir. 2011) ...............................................................................7

*Poulos v. Caesars World, Inc.*,
  379 F.3d 654 (9th Cir. 2004) .............................................................................11

*Powers v. Fifth Third Mortg. Co.*,
  No. 1:09-cv-2059, 2011 U.S. Dist. LEXIS 96458 (N.D. Ohio Aug. 12, 2011)..........................9

*Progressive Health & Rehab Corp. v. Quinn Med., Inc.*,
  323 F.R.D. 242 (S.D. Ohio 2017) ......................................................................5, 9

*Rikos v. P&G*,
  No. 1:11-CV-226, 2012 U.S. Dist. LEXIS 25104 (S.D. Ohio Feb. 28, 2012) ...........................5

*Rodney v. Northwest Airlines*,
  146 Fed. App'x 783 (6th Cir. 2005) .......................................................................9

*In re Rospatch Sec. Litig.*,
  Nos. 1:90-CV-805, 1:90-CV-806, 1:90-CV-807, 1:91- CV-85, 1991 U.S. Dist.
  LEXIS 10311 (W.D. Mich. July 22, 1991)...............................................................12

*Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*,
  319 F.3d 205 (5th Cir. 2003) .............................................................................10

*Santagate v. Tower*,
  833 N.E.2d 171 (Mass App. Ct. 2005) ...................................................................19

*Sean O'Kane A.I.A. Architect, P.C. v. Puljic*,
    87 A.3d 1124 (Conn. App. Ct. 2014)....................................................................................19

*In re Sears, Roebuck & Co. Tools Marketing and Sales Practices Lit'g*,
    Nos. 05 C 4742, 05 C 2623, 2007 WL 4287511 (N.D. Ill. Dec. 4, 2007) ...............................14

*Seattle Prof'l Eng'g Emps. Ass'n v. Boeing Co.*,
    991 P.2d 1126 (Wash. 2000)................................................................................................19

*ServiceMaster of St. Cloud v. GAB Bus. Servs, Inc.*,
    544 N.W.2d 302 (Minn. 1996).............................................................................................19

*Siegel* v. *Shell Oil Co.*,
    256 F.R.D. 580 (N.D. Ill. 2008) *aff'd* 612 F.3d 932 (7th Cir. 2010) ....................................19

*Smith v. Cash Am. Int'l, Inc.*,
    No. 1:15-CV-00760-MRB, 2019 U.S. Dist. LEXIS 92893 (S.D. Ohio June 4,
    2019) .....................................................................................................................................13

*Sprague v. Gen. Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) ...............................................................................................10

*In re St. Jude Med., Inc.*,
    522 F.3d 836 (8th Cir. 2008) ...............................................................................................10

*Sundance Homes, Inc. v. Cnty. of DuPage*,
    746 N.E.2d 254 (Ill. 2001)...................................................................................................20

*Szabo v. Bridgeport Machines, Inc.*,
    249 F.3d 672 (7th Cir. 2001) ...............................................................................................18

*Taylor v. CSX Transp., Inc.*,
    264 F.R.D. 281 (N.D. Ohio 2007) ......................................................................................7-8

*Terlesky v. Fifth Dimension, Inc.*,
    No. 15-cv-374, 2015 U.S. Dist. LEXIS 155236 (S.D. Ohio Nov. 17, 2015) .........................10

*Thompson v. Jiffy Lube Int'l, Inc.*,
    250 F.R.D. 607 (D. Kansas 2008).........................................................................................8

*Thorogood v. Sears Roebuck and Co*,
    547 F.3d 742 (7th Cir. 2008) (Posner, J.) ............................................................................11

*Treviso v. Nat'l Football Museum, Inc.*,
    No. 1:17-CV-472, 2018 U.S. Dist. LEXIS 164259 (N.D. Ohio Sept. 25, 2018)....................13

*Trustmark Ins. Co. v. Bank One, Ariz., NA*,
    48 P.3d 485 (Ariz. Ct. App. 2002).......................................................................................19

*Urman v. South Boston Sav. Bank*,
  674 N.E.2d 1078 (Mass. 1997) ................................................................18

*Vega v. T-Mobile USA, Inc.*,
  564 F.3d 1256 (11th Cir. 2009) .............................................................14

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
  No. 2:06-cv-1833, 2015 U.S. Dist. LEXIS 74846 (E.D. Pa. June 10, 2015)..........................19

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011) ..............................................................................9

**Statutes**

Ark. Code Ann. § 16-55-206 ...................................................................18, 19

**Rules**

Fed. R. Civ. P. 23(b)(1)......................................................................2, 6, 7, 9

Fed. R. Civ. P. 23(b)(1)(A)...................................................................7, 8

Fed. R. Civ. P. 23(b)(1)(B) ..................................................................8

Fed. R. Civ. P. 23(b)(2).......................................................................3, 9

Fed. R. Civ. P. 23(b)(3).......................................................................*passim*

Fed. R. Civ. P. 23(c)(1)(A) ..................................................................1, 5

Fed. R. Civ. P. 23(d)(1)(D)...................................................................1, 5

Fed. R. Evid. 201(b)(2) .......................................................................3

Fed. R. Evid. 201(c)(1) .......................................................................3

## I.    INTRODUCTION

Plaintiff alleges that The Kroger Co. ("Kroger"), a national grocery retailer with pharmacies in many of its stores, defrauded customers who used insurance to buy generic drugs. Specifically, Plaintiff alleges that Kroger caused insured customers not to receive the benefit of the special prices Kroger makes available to customers who choose to enroll in Kroger's Rx Savings Club and pay its membership fee of $36 for an individual or $72 for a family (the "Savings Club"). Kroger has filed a Motion to Dismiss Plaintiff's Complaint. (ECF No. 26.) If the Court grants that Motion, the case will be resolved. If, however, any claims survive the Motion to Dismiss, the Court should strike Plaintiff's class allegations.

Under Fed. R. Civ. P. 23(d)(1)(D), where the defect in the class allegations is apparent on the face of the complaint and where discovery could not fix the defect, the Court should strike the class allegations. Such a ruling is consistent with Rule 23, which requires resolving class certification "[a]t an early practicable time." Fed. R. Civ. P. 23(c)(1)(A). It also protects defendants from unnecessary discovery. The Complaint, on its face, shows that the Court should strike Plaintiff's class allegations.

The Court should strike the nationwide class allegations pursuant to *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943 (6th Cir. 2011). In *Pilgrim*, the Sixth Circuit affirmed the striking of a nationwide class of consumers that asserted claims of consumer fraud and unjust enrichment, holding that the laws of the different states "vary in material ways" such that "no common legal issues favor a class-action approach." *Id*. at 947. Because this was a legal determination, the Sixth Circuit found that no factual development could change the result. Here too, the laws of fraud, negligent misrepresentation, and unjust enrichment vary in so many material ways that a nationwide class action would be unmanageable. The Court should follow *Pilgrim* and strike the nationwide class allegations, thus narrowing the scope of the issues in the case.

The Court, however, need not reach the nationwide class issue, as all the class allegations, including the Ohio subclass allegations, are defective. In Ohio and other jurisdictions, fraud and negligent misrepresentation require a finding of justifiable reliance, and courts have consistently held that, where there are material variations in the kinds or degrees of reliance, a class action cannot be certified under Rule 23(b)(3). That is the case here. For example, Plaintiff pleads that she will continue to purchase drugs at Kroger even though she now knows of Kroger's allegedly fraudulent practices, making it apparent that she did not rely on any alleged misrepresentation or omission. In addition, Plaintiff alleges she overpaid by $1.97 on one of her prescriptions. There may be putative class members who are not price sensitive who would have purchased drugs at higher prices based on factors such as convenience. Moreover, Plaintiff's own Complaint shows that, whether a class member suffered an injury and the amount of any such injury will require individual determinations. Given that, if a class were certified, there would be, at a minimum, tens of thousands of class members for the Ohio subclass alone, and tens of millions, if not hundreds of millions, of class members for a nationwide class, mini-trials relating to justifiable reliance and injury/damages would not be manageable. No amount of discovery could change this.

As for unjust enrichment, courts routinely deny class certification for unjust enrichment claims because individual issues exist as to whether retention of a benefit would be unjust "***under the circumstances***." For example, if a person knew they would not receive the Savings Club price when they purchased a drug using insurance, it would not be unjust for Kroger to retain the difference between the Savings Club price and the copayment paid. Moreover, whether a person suffered a loss will require individual determinations.

Finally, because Plaintiff primarily seeks damages, a class cannot be certified under either Rule 23(b)(1) or (b)(2). In fact, the Supreme Court has made it clear that an injunctive class cannot

be certified under Rule 23(b)(2) where the monetary relief being sought is not incidental to the injunctive relief being sought.  Here, the primarily relief being sought is damages.

Because Plaintiff's Complaint establishes that class treatment is inappropriate, and because no amount of discovery will change that, the Court should strike the class allegations now.

## II.    FACTUAL BACKGROUND[1]

### A.    The Kroger Rx Savings Club

Since 2018, Kroger has offered its customers the opportunity to join the Savings Club. (Compl. ¶ 17.)  The Savings Club has an annual fee of $36 for individuals or $72 for families. (*Id*.)  Savings Club members receive access to prices lower than Kroger's retail prices for many commonly prescribed generic drugs.  (*Id*.)  Any customer can determine whether the Savings Club covers a prescription drug through the Kroger website, www.krogersc.com (available at www.kroger.com/health/pharmacy.)[2]

Uninsured customers who do not join the Savings Club or present any other kind of benefit, such as a third-party discount card, pay Kroger's retail prices for prescription medications. (Compl. ¶¶ 20-21.)  Insured customers, like Plaintiff, have the option of either using their insurance benefits for a particular prescription or, after enrolling in the Savings Club and paying the enrollment fee, using their member benefits to receive the Savings Club price.  (*Id*. ¶¶ 9, 17-18.)

### B.    The U&C Prices Kroger Submits To Third Party Payors

Plaintiff claims that, for drugs in the Savings Club, Kroger should have reported its Savings Club prices as its U&C prices to third-party payors, and that, if it had, some insured customers,

---

[1] For purposes of this Motion only, Kroger bases its arguments on the well-pleaded facts alleged in the Complaint.

[2] A court may take judicial notice of facts in accordance with Federal Rule of Evidence 201.  *See* Fed. R. Evid. 201(b)(2) and (c)(1) (a court "may take judicial notice on its own" of facts "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned"); *Angelo v. Muskingum Cty. Child Protective Servs.,* No. 2:20-cv-6421, 2021 U.S. Dist. LEXIS 21167, at *1, *4 n.2 (S.D. Ohio Feb. 4, 2021).

including Plaintiff, would have paid less for some prescriptions. (Comp. ¶¶ 1, 18-19.)

### C. Plaintiff's Prescription Drug Purchases

Plaintiff alleges that on December 7, 2020, she filled two prescriptions at Kroger, paying a total of $56.28 in copayments. (Compl. ¶ 4.) Plaintiff further alleges that the combined Savings Club prices for the two drugs, plus the $36 membership fee, was $51.82. Plaintiff claims, therefore, that Kroger overcharged her by $4.46. (*Id.*) Through Plaintiff's own damages calculation, she admits that she has no injury unless the difference between the prices she paid and the Savings Club prices was greater than the $36 annual membership fee.

### D. Plaintiff's Class Allegations

Plaintiff purports to bring suit on behalf of a nationwide class she defines as:

> [A]ll persons in the United States who paid for, in full or in part, a prescription generic drug that Kroger included in its Rx Savings Club, and who were insured for the purchase through a third-party payor.

(Compl. ¶ 24.) Plaintiff also attempts to represent an Ohio subclass defined as:

> [A]ll persons in the state of Ohio who paid for, in full or in part, a prescription generic drug that Kroger included in its Rx Savings Club, and who were insured for the purchase through a third-party payor.

(*Id.* ¶ 25.) Plaintiff requests that the Court grant herself and the putative classes "compensatory and punitive damages," and an injunction requiring Kroger "to list accurate undertake [sic] U&C prices . . . or as the Court may deem proper." (*Id.*, Prayer for Relief, at 13-14.)

## III. ARGUMENT

### A. Legal Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.'" *Comcast v. Behrend*, 569 U.S. 27, 33 (2013) (citation omitted). Accordingly, a plaintiff must show that its proposed class satisfies the four perquisites of Rule 23(a) . . . as well as "at least one of the provisions of Rule 23(b)." *Id.* "A

failure on either front dooms the class." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 945-46 (6th Cir. 2011). Moreover, even on a motion to strike, the plaintiff bears the burden of proving the class certification requirements have been met. *Progressive Health & Rehab Corp. v. Quinn Med., Inc.*, 323 F.R.D. 242, 245 (S.D. Ohio 2017).

Although the Court's consideration of these factors often occurs at a later stage in the case, Federal Rule of Civil Procedure 23(c)(1)(A) requires a court to determine "whether to certify the action as a class action" "[a]t an early practicable time after a person sues or is sued as a class representative." Fed. R. Civ. P. 23(c)(1)(A). Rule 23(d)(1)(D), in turn, permits a court to order "that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly." Fed. R. Civ. P. 23(d)(1)(D). Courts interpret these rules to mean that a court can strike class allegations where the defect in the class allegations are apparent from the face of the complaint and where discovery could not fix the defect. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 160 (1982) ("Sometimes the issues are plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim"); *Loreto v. Procter & Gamble Co.*, No. 1:09-CV-815, 2013 WL 6055401, at *2 (S.D. Ohio Nov. 15, 2013) ("A court may strike class action allegations before a motion for class certification where the complaint itself demonstrates that the requirements for maintaining a class action cannot be met"); *Rikos v. P&G,* No. 1:11-CV-226, 2012 U.S. Dist. LEXIS 25104, at *9-14 (S.D. Ohio Feb. 28, 2012) (same).

In fact, in *Pilgrim v. Universal Health Card, LLC*, the Sixth Circuit affirmed an order striking the plaintiffs' class allegations before the plaintiffs moved for certification or took discovery. 660 F.3d at 945. The Sixth Circuit found, in part, that the differences in the laws of different states made a nationwide class action "neither efficient nor workable" and that it could

not "see how discovery or for that matter more time would have helped" establish that the standards for certification could be met. *Id*. at 944-45, 949. Similarly, here, because individual issues would overwhelm over any common issues, a class, let alone a nationwide class, would be "neither efficient nor workable." *Id*. at 944-45.

    **B.    Plaintiff's Class Allegations, Including Her Allegations Seeking An Ohio Subclass, Should Be Stricken**

For purposes of this Motion, Kroger does not address the Rule 23(a) requirements, although it reserves its right to challenge at a later point in the litigation whether those requirements, and the requirements of Rule 23(b), have been met. Instead, Kroger focuses on the requirements of Rule 23(b) based on Plaintiff's Complaint. Here, because Plaintiff primarily seeks individualized damages, Plaintiff cannot show that the requirements of either Rule 23(b)(1) or (b)(2) are met. Moreover, because individual issues of justifiable reliance and damages would overwhelm any common issues, resulting in potentially millions of individual mini-trials, a Rule 23(b)(3) class would be unmanageable. No discovery will change this outcome. As a result, this is the textbook example of when a court should strike class allegations.

        **1.    Because the putative classes seek individualized money damages, and inconsistent adjudications of different class member's claims would not establish incompatible standards of conduct for Kroger, a class cannot be certified under Rule 23(b)(1)**

Plaintiff includes a cursory allegation in support of putative classes pursuant to Rule 23(b)(1). (*See* Compl. ¶ 31.) Rule 23(b)(1) provides for certification when separate actions would create a risk of: (A) "inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class"; or (B) adjudications that "would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1). Neither Rule 23(b)(1)(A) or (B) applies here.

"A class action is appropriate under [Rule 23(b)(1)(A)] when 'the party is obliged by law to treat the members of the class alike,' for example when the class touches upon how a utility company interacts with its customers or how the government imposes a tax." *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield*, 654 F.3d 618, 633 (6th Cir. 2011) (quoting *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 614 (1997)).  It is also appropriate "where the party must treat all alike as a matter of practical necessity (a riparian owner using water as against downriver owners)." *Amchem*, 521 U.S. at 614 (citation omitted).  Certification under Rule 23(b)(1) is not appropriate, however, "simply because 'some plaintiffs may be successful in their suits against a defendant while others may not.'"  *Pipefitters Local 636*, 654 F.3d at 633 (quoting *In re Bendectin Prod. Liab. Litig.*, 749 F.2d 300, 305 (6th Cir. 1984) and 7AA Wright, Miller, & Kane, Federal Practice and Procedure § 1773 (3d ed. 2010) ("explaining that the rule 'requires more than a risk that separate judgments would oblige the opposing party to pay damages to some class members and not to others or to pay them different amounts'")).  It is for that reason that "[s]uits for damages are typically not appropriate for certification under Rule 23(b)(1)(A) despite a common question of law which may result in different adjudications." *Taylor v. CSX Transp., Inc.*, 264 F.R.D. 281, 292 (N.D. Ohio 2007).  "To hold otherwise would be to render superfluous the detailed provisions of subdivision (b)(3)." *Id.*

Although Plaintiff claims that Rule 23(b)(1)(A) is met because "one court might enjoin Defendant from performing the challenged acts, whereas another might not" (Compl. ¶ 31), this does not risk "establish[ing] incompatible standards of conduct" for Kroger.  If a court does not enjoin Kroger, it would not establish any standard of conduct.  And if a Court were to enjoin Kroger, it could only require Kroger to report its Savings Club prices as its U&C prices.  There is no risk of different rulings creating incompatible standards of conduct. *See, e.g.*, *Thompson v. Jiffy*

*Lube Int'l, Inc.*, 250 F.R.D. 607, 628-29 (D. Kansas 2008) (declining to certify a (b)(1) class after finding that any injunction would be limited to requiring the defendant "to avoid the particular aspect of the program found to be misleading," and, therefore, the plaintiff "cite[d] no realistic scenario under which [the defendant] could not satisfy one such judgment without contradicting the terms of another") (citation omitted).[3]

As for Rule 23(b)(1)(B), there is "no risk that individual adjudications will prejudice non-parties' ability to protect their interests." *Colley v. Procter and Gamble Co.*, No. 1:16-cv-918, 2016 WL 5791658, at *10 (S.D. Ohio Oct. 4, 2016). Indeed, "'[t]he traditional and most common use' of such class actions is in 'limited fund' cases where claims are aggregated against a res or preexisting fund insufficient to satisfy all claims." *Id.* (citation omitted). Plaintiff does not plead any facts that, if true, would establish that this is a "limited fund" case. *See id.* (striking a 23(b)(1)(B) class allegation where there was no limited fund pled).

Given the above, no amount of discovery could establish that a class would be appropriate under Rule 23(b)(1).

> ### 2. Because the putative classes primarily seek damages, under clear Supreme Court precedent, certification of an injunctive class under Rule 23(b)(2) would be inappropriate

It is unclear if Plaintiff is seeking certification of an Rule 23(b)(2) injunctive class; however, to the extent she is, Plaintiff's allegations fail.

The Supreme Court has held that Rule 23(b)(2) "does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Wal-Mart*

---

[3] *See also Bacon v. Honda of Am. Mfg., Inc.*, 205 F.R.D. 466, 483 (S.D. Ohio 2001), *aff'd* 370 F.3d 565 (6th Cir. 2004) (declining to certify a (b)(1) class after finding that, under that provision, "separate actions must result in defendant having to choose between incompatible standards of conduct in fulfilling judgments in separate actions," something that would not happen in *Bacon* because "[a]ny monetary damages or injunctive relief awarded in cases filed by individual employees would extend only to those employees").

*Stores, Inc. v. Dukes*, 564 U.S. 338, 360-61 (2011).  Indeed, claims for monetary relief may not be certified under Rule 23(b)(2) where "the monetary relief is not incidental to the injunctive or declaratory relief."  *Id*. at 360.  Since the Supreme Court's ruling in *Dukes*, courts in this district have followed this precedent, including by striking class allegations.  *See, e.g.*, *Progressive Health*, 323 F.R.D. at 248 (striking class allegations under Rule 23(b)(2) because "no amount of discovery will show that these monetary damages [being sought by the plaintiff] are incidental to Plaintiff's injunctive claim.  If Plaintiffs are ultimately successful, relief would require precisely the type of individualized award of monetary damages that the *Dukes* Court identified as unauthorized under Rule 23(b)(2)."); *Colley*, 2016 WL 5791658, at *11-12 (same).

Because the monetary relief Plaintiff seeks is not "incidental" to the injunctive relief sought, and discovery will not cure that defect, certification cannot be had under Rule 23(b)(2).

### 3. Because individual questions of fact would overwhelm any common questions, a class under Rule 23(b)(3) would be inferior and unmanageable

For a class to be certified under Rule 23(b)(3), the court must find that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods."  Fed. R. Civ. P. 23(b)(3).  As part of the predominance analysis, a court must "consider how a trial on the merits would be conducted if a class were certified."  *Rodney v. Northwest Airlines*, 146 Fed. App'x 783, 786 (6th Cir. 2005) (citation omitted).  This "helps 'prevent [] the class from degenerating into a series of individual trials.'"  *Id*. (citation omitted).  Here, for each of Plaintiff's claims, individual issues would require tens of thousands, if not millions, of mini-trials, making class certification under Rule 23(b)(3) inappropriate.  *See, e.g.*, *Powers v. Fifth Third Mortg. Co.*, No. 1:09-cv-2059, 2011 U.S. Dist. LEXIS 96458, at *59 (N.D. Ohio Aug. 12, 2011) (denying certification because the

court "would have to determine on a case-by-case basis how many of about 15,000 to 17,000 loans . . . are covered . . . creat[ing] problems well beyond the court's resources to solve").

> **a.** **For Plaintiff's fraud and negligent misrepresentation claims, because individual questions of justifiable reliance and damages would overwhelm any common questions, a class under Rule 23(b)(3) would be inferior and unmanageable**

In Ohio, both fraud and negligent misrepresentation require proof of justifiable reliance. *See Bryk v. Berry*, No. 07CA0045, 2008 Ohio App. LEXIS 2049, at \*\*3-4 (Ohio Ct. App., May 19, 2008) (fraud); *Terlesky v. Fifth Dimension, Inc.*, No. 15-cv-374, 2015 U.S. Dist. LEXIS 155236, at \*12 (S.D. Ohio Nov. 17, 2015) (negligent misrepresentation). Because actual reliance and justifiable reliance often require individualized analyses, where there are "material variations . . . in the kinds or degrees of reliance" by the persons receiving the alleged misrepresentation and/or omission, "a fraud case may be unsuited for treatment as a class action." *Hale v. Enerco Group*, 288 F.R.D. 139, 148 (N.D. Ohio 2012) (quoting Fed. R. Civ. P. 23(b)(3), Advisory committee Notes to the 1966 Amendment). Indeed, courts "have consistently refused to permit class treatment of fraud-based claims because individual issues of reliance must be resolved." *Id.*[4]

In *Hale v. Enerco Group*, the plaintiff tried to argue that reliance could be presumed. 288 F.R.D. at 148-51. Here, however, reliance cannot be presumed. Indeed, Kroger would be entitled to take discovery as to each putative class member to challenge any claim of actual and/or justifiable reliance. For example:

---

[4] Citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 398 (6th Cir. 1998) (holding that an estoppel claim that required proof as to "whether the person justifiably relied on the statements to his detriment" was not "susceptible to class-wide treatment" "[b]ecause each plaintiff's claim depended upon facts and circumstances peculiar to that plaintiff"); *In re St. Jude Med., Inc.*, 522 F.3d 836, 838 (8th Cir. 2008) ("[b]ecause proof often varies among individuals concerning what representations were received, and the degree to which individual persons relied on the representations, fraud cases often are unsuitable for class treatment"); *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 435 (4th Cir. 2003) ("the reliance element of . . . fraud and negligent misrepresentation claims [is] not readily susceptible to class-wide proof") (citation omitted); *Sandwich Chef of Tex., Inc. v. Reliance Nat'l Indem. Ins. Co.*, 319 F.3d 205, 211 (5th Cir. 2003) ("[f]raud actions that require proof of individual reliance cannot be certified as Fed.R.Civ.P. 23(b)(3) class actions because individual, rather than common, issues will predominate").

- Plaintiff pleads that she "justifiably relied on Kroger's misrepresentations and/or omissions in that [she] would not have purchased generic prescription drugs from Kroger for more than the [Savings Club] prices but for Kroger's misrepresentations and/or omissions." (Compl. ¶ 37.) Yet Plaintiff also pleads that, "[d]ue to the need for continuity of access and care, Plaintiff anticipates filling future prescriptions for generic drugs at Kroger." (*Id*. ¶ 4.) If Plaintiff believes she has to purchase her prescription drugs at Kroger due to continuity of access and care, how can she say that she "would not have purchased generic prescription drugs from Kroger for more than the [Savings Club] prices"? (Compl. ¶¶ 37, 46.) She cannot have it both ways. If her allegation that she needs to fill future prescriptions at Kroger is true, then she could not have justifiably relied on any alleged misrepresentation or omission.

- There may be putative class members who are not price sensitive. For example, Plaintiff alleges that she overpaid by $1.97 on one of her purchases. (*Id*. ¶ 4.) Some putative class members may value the convenience of filling prescriptions while grocery shopping over price, and may not have any objection to paying an additional $1.97. *See, e.g.*, *Thorogood v. Sears Roebuck and Co*, 547 F.3d 742 (7th Cir. 2008) (Posner, J.) (decertifying class alleging that the label on a dryer with the words "stainless steel" was false because the drum within the dryer was not made entirely of stainless steel, in part because some putative class members may be indifferent to whether the drum was made entirely of stainless steel); *Poulos v. Caesars World, Inc.*, 379 F.3d 654 (9th Cir. 2004) (finding class certification inappropriate in case where the plaintiff claimed video poker machines fraudulently made it appear that the shuffling was random when the odds were computerized because "some players may be totally unconcerned with the odds of winning."); *Hale*, 288 F.R.D. at 150-1 ("[H]e or she may have decided to purchase the heater for reasons entirely unrelated to the representation").

- For other putative class members, it may actually have been ***more*** expensive to purchase the drug at other pharmacies near their home/office using their insurance, especially if the other pharmacies nearby were not in-network. For such a consumer, the price charged by Kroger may not have influenced the person's decision to purchase the drug at Kroger.

- Other putative class members may have known they could join the Savings Club and pay a lower price than they paid using their insurance, but decided, for whatever reason not to join – whether it be the time it takes to sign up to join the Savings Club, a disinclination to join clubs, a belief that the annual savings will not make it worth paying $36 to join, or some other reason. They also could decide that they are better off not paying the $36 to join the Savings Club because every year they reach their out-of-pocket maximum under their prescription drug plan and, as such, they are better off using their insurance for all of their drug purchases because after they hit their out of pocket maximum, they pay $0 for prescriptions for the rest of the year. Whatever the reason, if the person knew that the Savings Club offered prices lower than the person paid using insurance, it would be difficult for the person to prove justifiable reliance.

In other words, reliance cannot be presumed.  *See also In re Rospatch Sec. Litig.*, Nos. 1:90-CV-805, 1:90-CV-806, 1:90-CV-807, 1:91- CV-85, 1991 U.S. Dist. LEXIS 10311, at *34 (W.D. Mich. July 22, 1991) ("there is no rebuttable presumption of reliance on the [Michigan] state law claims as there is for federal securities claims").

In addition to justifiable reliance, each putative class member will have to prove injury/damages, which will require individual determinations.  In *Comcast v. Behrend*, the Supreme Court reversed the grant of certification of a (b)(3) class finding that damages were not capable of classwide proof and, therefore, "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class."  569 U.S. at 34, 37-38.  The same applies here.  In Paragraph 4 of her Complaint, Plaintiff alleged that Kroger overcharged her on two prescriptions by $40.46.  (Compl. ¶ 4.)  Recognizing that membership in the Savings Club costs $36, she subtracted $36 from $40.46 and alleged damages of $4.46.  (*Id*.)  As shown in Kroger's Motion to Dismiss, however, one of the two prescriptions was not covered under Plaintiff's drug plan and, therefore she was not damaged.  (Dkt. 26, pp. 10-12**.**)

Regardless of how the Court rules on the Motion to Dismiss, Plaintiff's Complaint establishes that, according to her own damage theory, to show injury, each putative class member will need to show that their out-of-pocket payments on covered drugs exceeded the Savings Club prices by at least $36/year.  And, as Plaintiff's claims demonstrate, that determination will require an examination of which drugs are covered by a putative class member's drug plan.  Moreover, a person who has an out-of-pocket maximum on their drug plan, after which the person pays $0 for all drugs, would not be injured, even if the person was overcharged on certain prescriptions, if the person would have hit their out-of-pocket maximum anyway.  Kroger certainly has a right to challenge any damage claim on these and other grounds.  In other words, each damages assessment

would require numerous individualized determinations.  There likely would be, at a minimum, tens of thousands of class members if an Ohio class were certified, and likely millions, if not hundreds of millions, of class members if a nationwide class were certified.  Under such a circumstance, mini-trials on damages (and justifiable reliance) would be unworkable.  *See, e.g.*, *Treviso v. Nat'l Football Museum, Inc.*, No. 1:17-CV-472, 2018 U.S. Dist. LEXIS 164259, at *33-34 (N.D. Ohio Sept. 25, 2018) (denying certification where damages could not be computed through a "mathematical or formulaic calculation" and, as a result, 3,000 mini-trials would need to be had, "defeating the purpose of a Rule 23 class action") (citing *Iba v. Jones*, 836 F.3d 516 (5th Cir. 2016) for the proposition that, "while individualized damages calculations will not preclude a finding of predominance," "class treatment may not be suitable where calculation of damages is not susceptible to a mathematical or formulaic calculation").[5]

Although Plaintiffs will surely argue that the size of any individual putative class member's recovery is small, as the *Hale* Court found, that would not "change the fact that the present lawsuit is a particularly weak candidate for class treatment.  Nothing permits the Court to overlook the predominance requirement of Rule 23(b)(3) because individual actions would probably not be litigated."  288 F.R.D. at 151.  Mini-trials of tens of thousands or millions of class members overwhelm any common issues and make a class action unmanageable.

> **b.    For Plaintiff's unjust enrichment claim, because individual questions of fact would overwhelm any common questions, a class under Rule 23(b)(3) would be inferior and unmanageable**

Individual factual issues will also predominate over Plaintiff's unjust enrichment claim, making certification inappropriate.  A claim for unjust enrichment requires:  "(1) a benefit

---

[5] *See also Smith v. Cash Am. Int'l, Inc.*, No. 1:15-CV-00760-MRB, 2019 U.S. Dist. LEXIS 92893, at *12-13 (S.D. Ohio June 4, 2019) (striking class allegations, in part, because "analyzing injury-in-fact alone on a classwide basis is impossible," because whether each class member was damaged would involve "individual inquiries," "and the Court simply cannot conduct mini-trials examining the specific circumstances of over 1,000,000" class members).

conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Hambleton v. R.G. Barry Corp.*, 465 N.E.2d 1298, 1302 (Ohio 1984). Proof hinges on "whether defendants' retention of a benefit conferred by the plaintiff would be unjust *under the circumstances*." *Carter v. PJS of Parma, Inc.*, No. 1:15 CV 1545, 2016 U.S. Dist. LEXIS 79747, at *12 (N.D. Ohio June 20, 2016) (emphasis in original). "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers," because unjust enrichment claims require evaluation of "each class member's individual circumstances." *Id.* at *10, 12 (citations omitted). As such, "common questions will rarely, if ever, predominate an unjust enrichment claim, the resolution of which turns on individualized facts." *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1274 (11th Cir. 2009).

Because unjust enrichment claims require individualized showings, courts routinely deny class certification for unjust enrichment claims. For example, in *Chesner v. Stewart Title Guar. Co.*, No. 1:06-cv-00476, 2008 WL 553773, (N.D. Ohio Jan. 23, 2008), the plaintiff sought certification of all mortgagers in Ohio who refinanced, but paid a higher premium for title insurance than required by the company's filed rates. *Id.* at *1. The court declined to certify an unjust enrichment class, finding that:

> Even if Plaintiffs' case theory squares with the elements of unjust enrichment, and Plaintiffs can show that the rate discount was mandatory and that a particular purchaser was entitled to, but was not given the discount, Defendant nevertheless would be permitted to defend itself by introducing evidence regarding whether, in that specific transaction, the existence of the discount was disclosed. Therefore, the Court agrees with Defendant that certification of Plaintiffs' unjust enrichment claim is untenable. Accordingly, the Court declines to certify the unjust enrichment claim for class purposes[.]

*Id.* at *14. Moreover, in *In re Sears, Roebuck & Co. Tools Marketing and Sales Practices Lit'g*, Nos. 05 C 4742, 05 C 2623, 2007 WL 4287511, at *9 (N.D. Ill. Dec. 4, 2007), the court noted that

the unjust enrichment claim was based on alleged fraud and, therefore, "the bulk of the proof will relate to individual factual issues," such as "each class member's motivation for buying" the product." *Id*. According to the court, "regardless of what prices were paid, it will be necessary to show that each class member purchased the [product] and paid the price as a result of defendant's deception." *Id*.[6]

Here, the same considerations discussed with regard to the fraud and negligent misrepresentation claims apply to determining whether Kroger's retention of a benefit is just "under the circumstances." As one example, if the person was told or otherwise knew they could join the Savings Club and pay a lower price than using their insurance, but decided, for whatever reason, not to join, it is difficult to see how Kroger's retention of the difference between the price paid and the Savings Club price would be unjust. Certainly, Kroger would have a right to challenge each putative class member as to their knowledge and the reasons for their purchase. In addition, as discussed above, individual assessments will have to be made for each putative class member as to whether the person suffered a loss and, if so, how much.

C.    **In The Alternative, Under Sixth Circuit Precedent, Because The Standards For Fraud, Negligent Misrepresentation, And Unjust Enrichment Vary Significantly Among The States, Plaintiff's Allegations Regarding A Nationwide Class Should Be Stricken**

In *Pilgrim v. Universal Health Card, LLC*, the Sixth Circuit affirmed the district court's striking of a nationwide class allegation on claims for violation of consumer fraud and unjust

---

[6] *See also, e.g.*, *Krieger v. Gast*, 197 F.R.D. 310, 320 (W.D.Mich. 2000) (refusing to certify unjust enrichment claim "[b]ecause the fraud-related claims predominate[d]" and those claims would "likely provide the sole basis of liability on the unjust enrichment claim"); *Osuna v. Wal-Mart Stores, Inc.*, No. C20014319, 2004 WL 3255430, at *6 (Ariz. Super. Ct. Dec. 23, 2004) (denying certification of unjust enrichment claim because of necessity for individual inquiries to establish liability and damages); *Green v. McNeil Nutritionals*, *LLC*, No. 2004-0379-CA, 2005 WL 3388158, at *5 (Fla. Cir. Ct. Nov. 16, 2005) ("Logically, the circumstances necessary to establish the [unjust] element . . . must demonstrate that the plaintiff was harmed in some way . . . . Therefore . . . sustaining a cause of action for unjust enrichment requires individualized proof from each member of the class").

enrichment. 660 F.3d at 950. The Court held that each class member's claim would have to be analyzed under the laws of the person's home state and, given the variances in the laws among the states, individual issues would "dwarf" any common issues and make a class unmanageable. *Id*. at 945. In the event the Court does not strike all of Plaintiff's class allegations, the Court should follow the Sixth Circuit precedent in *Pilgrim* by striking Plaintiff's nationwide class allegations.

### 1. Under Ohio's choice-of-law rules, each putative class member's claims will be governed by the law of their home state

"Federal courts sitting in diversity must apply the choice-of-law rules of the forum state." *Muncie Power Prod., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003) "Under those rules, 'the law of the place of injury controls unless another jurisdiction has a more significant relationship to the lawsuit.'" *Pilgrim*, 660 F.3d at 946 (citation omitted). In balancing Ohio's choice-of-law factors, including the place of injury and the relative interests of the competing states, the Sixth Circuit found that "the consumer-protection laws of the potential class members' home States will govern their claims." *Pilgrim*, 660 F.3d at 947. The Court found that "the State with the strongest interest in regulating such conduct is the State where the consumers – the residents protected by *its consumer*-protection laws – are harmed by it." *Id*. (emphasis in original). To find otherwise, would allow companies to evade local consumer-protection laws "by locating in a State that demands the least." *Id*. at 947. Following this precedent, the law of the person's home state will apply to each putative class member's claims here.

### 2. Because the elements of fraud and negligent misrepresentation vary significantly between the states, a nationwide class is not manageable

In *Pilgrim*, the Sixth Circuit found that, because the consumer-protection laws of the states "vary in material ways," "no common legal issues favor a class-action approach to resolving" the

case. *Pilgrim*, 660 F.3d at 946.[7] The Sixth Circuit affirmed the district court's striking of the class allegations because "[t]he key reality remains: Their claims are governed by different States' laws, a largely legal determination, and no proffered or potential factual development offers any hope of altering that conclusion." *Id*. at 949. The same rationale applies to Plaintiff's fraud and negligent misrepresentation claims.

Attached as Exhibit A.1 is a chart that shows the differences between the fraud and negligent misrepresentation laws of each of the 34 states in which Kroger operates. (Leib Decl. (Ex. A), at Ex. 1.) Some of the differences shown by the chart are:

- Knowing misrepresentation v. reckless disregard: Some states (*e.g.*, AK, CA, CO, IL) require a knowing misrepresentation for intentional fraud, whereas others, including Ohio, do not have such a requirement.

- Standard of proof: Some states require the plaintiff to prove fraud by clear and convincing evidence (*e.g.*, AZ, CO, KY, IL, OH), whereas others only require preponderance of the evidence (*e.g.*, CA, DE, IN, NC, TX). One state, Kentucky, require clear and convincing evidence for negligent misrepresentation.

- Intent to induce reliance: Although most states require a plaintiff to prove intent to induce reliance for fraud, some states (*e.g.*, AL, CO, TN, WV) do not.

- Statutes of Limitations: Statutes of limitations vary greatly between the states for both intentional and negligent misrepresentation, ranging from one to six years. For example, Louisiana only has a one-year limitations period for fraud. Other states have a two-year limitations period for fraud (*e.g.* AL, KS). Still others have a four-year period (*e.g.* NM, OH). At least two states (IL, MO) have a five-year limitations period, while at least one (IN) has a six-year period. Texas has a two-year limitations period for negligent misrepresentation and a four-year period for intentional misrepresentation.

- Damages: Some states apply the "benefit of the bargain" test (*e.g.*, AZ, CO, KS), while others use the "out of pocket" test (*e.g.*, LA). Some use a "flexible" test (*e.g.* ID, MD, WA). California allows for both "out of pocket" and "benefit of the

---

[7] Citing, among others, *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1085 (6th Cir. 1996) ("[i]f more than a few of the laws of the fifty states differ . . . the district judge would face an impossible task of instructing a jury on the relevant law"); *In re Bridgestone/Firestone, Inc.*, 288 F.3d 1012, 1015, 1018 (7th Cir. 2002) ("Because these claims must be adjudicated under the law of so many jurisdictions . . . a single nationwide class is not manageable."); *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 741 (5th Cir. 1996) ("In a multi-state class action, variations in state law may swamp any common issues and defeat predominance.").

bargain" damages. Some states, like Delaware and Texas, provide different for damages for intentional and negligent misrepresentation.

- <u>Punitive Damages</u>: Many states allow punitive damages for intentional fraud, but the standards for when punitive damages may be recovered vary significantly. For example, in Alabama, the plaintiff must show by clear and convincing evidence that the defendant consciously or deliberately engaged in oppression, fraud, wantonness, or malice. In Alaska, the plaintiff must show by clear and convincing evidence that the defendant's intentional conduct was outrageous. In Arkansas, punitive damages are available if: "(1) The defendant knew or ought to have known, in light of the surrounding circumstances, that his or her conduct would naturally and probably result in injury or damages and that he or she continued the conduct with malice or in reckless disregard of the consequences, from which malice may be inferred; or (2) The defendant intentionally pursued a course of conduct for the purpose of causing injury or damage." Ark. Code Ann. § 16-55-206.

- <u>The Existence of Negligent Misrepresentation</u>: Three states (AK, ID, IN) do not recognize negligent misrepresentation.

(*See* Leib Decl., Ex. 1.) As for fraudulent concealment, among other differences, there are varying standards for finding the existence of a duty to disclose.[8]

Because of these differences, courts have consistently rejected nationwide class actions for fraud. *See, e.g.*, *Hale*, 288 F.R.D. at 147 ("The Court thus looks with a skeptical eye at the manageability of the proposed nationwide class, particularly because 'such a class is rarely, if ever appropriate where each plaintiff's claim will be governed by the law of his own State'") (quoting *Pilgrim*, 660 F.3d at 948)); *Gianino v. Alacer Corp.*, 846 F. Supp. 2d 1096, 1101-04 (C.D. Cal. 2012) (denying certification of nationwide fraud class and summarizing "material variations" in fraud and negligent misrepresentation laws).[9] This Court should do the same here.

---

[8] *Compare, e.g.*, *Brae Asset Fund, L.P. v. Adam*, 661 A.2d 1137, 1140 (Me. 1995) (no duty absent fiduciary or confidential relationship); *Lubore v. R.P.M. Assoc.*, 674 A.2d 547, 555 (Md. Ct. Spec. App. 1996) (same), *L. Amundson v. Wortman*, 777 P.2d 315, 317 (Mont. 1989) (duty can arise where "special circumstances" exist); *Ceribelli v. Elghanayan*, 990 F.2d 62, 64 (2d Cir. 1993) (holding that New York law recognizes duty when one party has superior knowledge); *Urman v. South Boston Sav. Bank*, 674 N.E.2d 1078, 1081 (Mass. 1997) (silence cannot be the basis for fraud even if one party has superior knowledge); *see also In Re Ford Motor Co. Vehicle Paint Lit'g*, 182 F.R.D. 214, 223 (E.D. La 1998) (summarizing the differences in fraudulent concealment law among the states).

[9] *See also, e.g.*, *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 674 (7th Cir. 2001) (reversing certification of nationwide fraud class and noting that differences in fraud laws "cut strongly against nationwide classes"); *In re Ford Motor Co.*, 182 F.R.D. at 224 ("states have adopted at least three different standards on the question of reliance . . . .

### 3. Because the elements of unjust enrichment vary significantly between the states, a nationwide class is not manageable

Courts have consistently found that variations in state laws make a nationwide unjust enrichment class inappropriate and unmanageable. In *Pilgrim*, the Sixth Circuit affirmed the striking of a nationwide class for unjust enrichment, upholding the district court's finding that a nationwide unjust enrichment class could not be had because of variances in state unjust enrichment laws. *Pilgrim*, 660 F.3d at 950. Similarly, in *Colley*, Judge Black struck a nationwide unjust enrichment class, finding that "[v]arying state laws preclude Plaintiff from pursuant an unjust enrichment claim on behalf of a nationwide class." 2016 WL 5791658, at *7.[10] For example, some states do not recognize unjust enrichment as an independent cause of action.[11] Some states require an inadequate remedy at law.[12] In addition, states have different standards as to what constitutes unjust enrichment. *See Vista Healthplan, Inc. v. Cephalon, Inc.*, No. 2:06-cv-1833, 2015 U.S. Dist. LEXIS 74846, at *85-86 (E.D. Pa. June 10, 2015) (identifying

---

An accurate jury charge would have to reflect the proper definition and tests for each type of reliance under each state's laws"); *Castana*, 84 F.3d at 742 n.15 ("States impose varying standards to determine when there is a duty to disclose facts"); *Cooly v. Lincoln Elec. Co.*, 776 F. Supp. 2d 511, 522 (N.D. Ohio 2011) (noting that not all states allow punitive damages for fraud and "the degree of culpability to justify an award varies from state to state") (citing L. Nugent, R. Hammesfahr & R. Blatt, Punitive Damages: A State-By-State Guide to Law and Practice § 3:2 (2009 ed.)).

[10] *See also, e.g., Casa Orlando Apartments, Ltd v. Fed Nat 'l Mortgage Ass 'n.*, 624 F.3d 185, 195-96 (5th Cir. 2010) (affirming the denial of class certification because unjust enrichment law varies among states); *Siegel v. Shell Oil Co.*, 256 F.R.D. 580, 584 (N.D. Ill. 2008) *aff'd* 612 F.3d 932 (7th Cir. 2010) (citations omitted) (denying certification for nationwide class alleging unjust enrichment because "the elements of unjust enrichment vary across jurisdictions" and "unjust enrichment is a tricky type of claim that can have varying interpretations even by courts within the same state, let alone among the fifty states") (citation omitted); *In re Currency Conversion Fee Antitrust Litigation*, 230 F.R.D. 303, 311-12 (S.D.N.Y. 2004), *modified on other grounds*, 2005 WL 1705285 (S.D.N.Y. 2005) (denying certification for nationwide class alleging fraud and unjust enrichment; "courts routinely deny class certification because plaintiffs' claims would require application of the substantive law of multiple states").

[11] *See, e.g., Baxter v. PNC Bank Nat'l Ass'n*, 541 F.App'x 395, 397 n.2 (5th Cir. 2013) (Texas law); *Blystra v. Fiber Tech Gr., Inc.*, 407 F. Supp. 2d 636, 644 n. 11 (D.N.J. 2005); *Gen. Insulation Co. v. Eckman Constr.*, 992 A.2d 613, 611 (N.H. 2010); *McKell v. Wash Mut., Inc.*, 142 Cal. App. 4th 1457, 1490 (Cal. Ct. App. 2006).

[12] *See, e.g. Trustmark Ins. Co. v. Bank One, Ariz., NA*, 48 P.3d 485, 492 (Ariz. Ct. App. 2002); *Sean O'Kane A.I.A. Architect, P.C. v. Puljic*, 87 A.3d 1124, 1132 (Conn. App. Ct. 2014); *Santagate v. Tower*, 833 N.E.2d 171, 176 (Mass App. Ct. 2005); *ServiceMaster of St. Cloud v. GAB Bus. Servs, Inc.*, 544 N.W.2d 302, 305 (Minn. 1996); *Seattle Prof'l Eng'g Emps. Ass'n v. Boeing Co.*, 991 P.2d 1126, 1134 (Wash. 2000).

cases from different jurisdictions). States also vary as to whether laches and unclean hands are allowed as defenses to unjust enrichment.[13] Recognizing the differences in laws among the states, the Court should strike Plaintiff's nationwide unjust enrichment class allegations.

## IV. CONCLUSION

For the reasons stated above, Kroger respectfully requests that the Court strike the class allegations in Plaintiff's Complaint in their entirety.

Dated: April 16, 2021

Respectfully submitted,

  /s/ Nathaniel Lampley Jr.
Nathaniel Lampley Jr. (BPR #004 1543)
(NLampley@vorys.com) (trial attorney)
VORYS, SATER, SEYMOUR AND PEASE LLP
Atrium Two, Suite 2000 221 East Fourth Street
Cincinnati, OH 45202
Telephone: (513) 723-4000
Facsimile: (513) 852-7869

Robert Webner (BPR #0029984)
(rnwebner@vorys.com)
VORYS, SATER, SEYMOUR AND PEASE LLP
52 East Gay Street
Columbus, OH 43215
Telephone: (614) 464-6400
Facsimile: (614) 464-6350

Frederick Robinson (*pro hac vice*)
(frobinson@reedsmith.com)
Selina Coleman (*pro hac vice*)
(scoleman@reedsmith.com)
REED SMITH LLP
1301 K Street, N.W.
Suite 1000 – East Tower
Washington, D.C. 20005
Telephone: (202) 414-9200
Facsimile: (202) 414-9299

---

[13] *See, e.g.*, *Sundance Homes, Inc. v. Cnty. of DuPage*, 746 N.E.2d 254, 263, 287 (Ill. 2001) (laches not allowed as a defense); *Clay v. Am. Tobacco Co.*, 188 F.R.D. 483, 501 (S.D. Ill. 1999) ("Many states, but not all, permit an equitable defense of unclean hands. Those states that permit a defense of unclean hands vary significantly in the requirements necessary to establish the defense.").

Michael S Leib (*pro hac vice)*
(mleib@reedsmith.com)
REED SMITH LLP
10 S. Wacker Drive, Suite 4000
Chicago, IL 60606
Telephone: (312) 207-1000
Facsimile: (312) 207-6400

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

This certifies that all counsel of record were served via the Electronic Case Filing (ECF) System on April 16, 2021.

_/s/ Nathaniel Lampley Jr._
Nathaniel Lampley Jr.