**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| JUDY KIRKBRIDE, PATRICA BERGER, | ) | |
| LESTER HATFIELD, MELODY | ) | |
| MACKERT and BEETA LEWIS, | ) | Case No 2:21-cv-00022-ALM-EPD |
| individually and on behalf of all others | ) | |
| similarly situated, | ) | Chief Judge Algenon L. Marbley |
| | ) | Magistrate Judge Elizabeth P. Deavers |
| Plaintiffs, | ) | |
| | ) | Oral Argument Requested |
| vs. | ) | |
| | ) | |
| THE KROGER CO., | ) | |
| | ) | |
| Defendant. | | |

**THE KROGER CO.'S MEMORANDUM OF LAW IN SUPPORT
OF ITS MOTION TO DISMISS PLAINTIFFS' AMENDED COMPLAINT**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................................1

II.    FACTUAL BACKGROUND ....................................................................................2

    A.    The Kroger Rx Savings Club ....................................................................... 2

    B.    The U&C Prices Kroger Submits ................................................................. 3

    C.    Plaintiffs' Prescription Drug Purchases ...................................................... 4

III.    LEGAL STANDARD..............................................................................................4

IV.    ARGUMENT ...........................................................................................................5

    A.    The Court Should Dismiss Plaintiffs' Claim For Fraud (Count I) ....................... 5

        1.    Plaintiffs Fail To Adequately Plead A Misrepresentation .......................... 6

        2.    To The Extent Plaintiffs Attempt To Plead That Kroger Concealed The True U&C Prices, They Fail To State A Claim Because Plaintiffs Do Not Have A Duty To Disclose Its U&C Prices And Because Kroger Published Both Its Retail And Club Prices .................... 10

        3.    Plaintiffs Fail To Plead Fraud With The Required Particularity .............. 12

    B.    The Court Should Dismiss Plaintiffs' Unjust Enrichment Claim (Count II)........ 13

        1.    Plaintiffs' Unjust Enrichment Claim Is Not Pled With Particularity........ 13

        2.    Plaintiff Kirkbride Has Not Pled A Benefit Conferred On Kroger .......... 13

        3.    In Texas, Unjust Enrichment Is A Remedy, Not A Cause Of Action, And, Therefore, The Texas Plaintiffs' Claim Should Be Dismissed........ 14

    C.    The Court Should Dismiss The Negligent Misrepresentation Claim (Count III) ................................................................................................................ 15

        1.    Under Texas Law, A Consumer Transaction Cannot Give Rise To A Claim For Negligent Misrepresentation................................................. 15

        2.    Plaintiffs Have Failed To Plead Negligent Misrepresentation With Sufficient Particularity .............................................................................. 16

        3.    Because Plaintiffs Plead A Misrepresentation To A Third Party, They Have Failed To State A Claim For Negligent Misrepresentation.................................................................................... 17

    D.    Because Plaintiffs Have Not Pled An Intent To Purchase Drugs From Kroger In The Future, They Lack Article III Standing To Seek Injunctive Relief....................................................................................................... 18

V.    CONCLUSION......................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Admiral Ins. Co., et al. v. Heath Holdings USA, Inc.*,
No. 3:03-CV-1634-G, 2004 U.S. Dist. LEXIS 9211 (N.D. Tex. May 21, 2004)....................10

*Andersons, Inc. v. Consol, Inc.*,
185 F. Supp. 2d 833 (N.D. Ohio 2002)......................................................................14

*Angelo v. Muskingum Cty. Child Protective Servs.*,
No. 2:20-cv-6421, 2021 U.S. Dist. LEXIS 21167 (S.D. Ohio Feb. 4, 2021) ...........................3

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)...................................................................................4, 5, 18

*BBX Operating, L.L.C. v. Bank of Am., N.A. (In re Connect Transp., L.L.C.)*,
825 F. App'x 150 (5th Cir. 2020) ...........................................................................15

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)........................................................................................4, 5

*Bryk v. Berry*,
No. 07CA0045, 2008 Ohio App. LEXIS 2049 (Ohio Ct. App., May 19, 2008) ......................5

*Bush Truck Leasing, Inc. v. Cummins, Inc.*,
Case No. 1:18-cv-871, 2020 U.S. Dist. LEXIS 120226 (S.D. Ohio July 9,
2020) ..............................................................................................................13, 17

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983)..............................................................................................19

*Coburn Supply Co. Inc. v. Kohler Co.*,
342 F.3d 372 (5th Cir. 2003) ................................................................................15

*Culy Constr. & Excavating, Inc. v. Laney Directional Drilling Co.*,
Case No. 2:12-cv-4, 2012 U.S. Dist. LEXIS 79575 (S.D. Ohio. June 8, 2012) ......................6

*Curtis v. Cerner Corp.*,
621 B.R. 141 (S.D. Tex. 2020) ..............................................................................14

*Eidson v. Tenn. Dep't. of Children's Servs.*,
510 F.3d 631 (6th Cir. 2007) ................................................................................16

*Elias v. Pilo*,
781 F. App'x 336 (5th Cir. 2019) ...........................................................................15

*Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*,
No. C2-85-1209, 1989 U.S. Dist. LEXIS 6726 (S.D. Ohio Jan. 6, 1989) ..............................20

*Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*,
51 S.W.3d 573 (Tex. 2001)....................................................................................................5

*Fisher v. Blue Cross & Blue Shield of Tex., Inc.*,
Civil Action No. 3:10-CV-2652-L, 2015 U.S. Dist. LEXIS 127297 (N.D. Tex.
Sep. 23, 2015) .....................................................................................................................15

*Fishon v. Mars Petcare US Inc.*,
No. 3:19-cv-00816, 2020 U.S. Dist. LEXIS 217864 (M.D. Tenn. Nov. 20,
2020) ..............................................................................................................................18, 19

*Fleming v. Tex. Coastal Bank of Pasadena*,
67 S.W.3d 459 (Tex. Ct. App. 2002) ....................................................................................15

*Gator Dev. Corp. v. VHH, Ltd.*,
No. C-080193, 2009 Ohio App. LEXIS 1525 (Ohio Ct. App. Apr. 17, 2009)................11, 12

*Guardian Underwriters Reassurance Ltd. v. Thompson, Coe, Cousins & Irons,
L.L.P.*,
No. 3:-03-CV-0133-H, 2004 U.S. Dist. LEXIS 862 (N.D. Tex. Jan. 26, 2004)....................17

*Hiles v. Edward Thomas Invest. Group, LLC*,
Franklin Cty. C.P. Nos. 16-CV-3704, 16-CV-3706, 16CV-3766, 16CV-4382,
16CV-4416, 2017 Ohio Misc. LEXIS 4045 (Ct. Com. Pl. Aug. 23, 2017)............................14

*Johnson v. Jos. A. Bank Clothiers, Inc.*,
No. 2:13-CV-756, 2015 WL 12698066 (S.D. Ohio June 9, 2015)........................................20

*Johnson v. Microsoft Corp.*,
834 N.E.2d 791 (Ohio S.C. 2005)...................................................................................13, 14

*Jordan v. Jordan*,
No. 05-98-01971-CV, 2001 Tex. App. LEXIS 5106 (Tex. Ct. App. July 30,
2001) ....................................................................................................................................10

*King v. Baylor Univ.*,
No. 6:20-CV-00504-ADA-JCM, 2021 U.S. Dist. LEXIS 63787 (W.D. Tex.
Jan. 29, 2021) .....................................................................................................................14

*Langford v. Rite Aid of Ala., Inc.*,
231 F.3d 1308 (11th Cir. 2000) .....................................................................................11, 16

*Laurent v. Flood Data Servs.*,
766 N.E.2d 221 (Ohio Ct. App. Oct. 31, 2001) ....................................................................14

*Lennon II Family Ltd. P'ship v. Gideo*,
    No. 02-18-00250-CV, 2019 Tex. Ct. App. LEXIS 8018 (Tex. App. Aug. 29,
    2019) ...........................................................................................................................5

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992)...................................................................................................19

*Marrufo v. Ethicon, Inc.*,
    No. DR-20-CV-00043-AM, 2020 U.S. Dist. LEXIS 243197 (W.D. Tex. Nov.
    20, 2020) ...................................................................................................................15

*McCamish v. F. E. Appling Interests*,
    991 S.W.2d 787 (Tex. 1999)................................................................................15, 18

*Middlefield Banking Co. v Deeb*,
    Case No. 2011-G-3007, 2012 Ohio App. LEXIS 2829 (Ohio Ct. App. July 16,
    2012) .........................................................................................................................15

*Moses v. Sterling Commerce Am., Inc.*,
    No. 02AP-161, 2002 Ohio App. LEXIS 4347 (Ohio Ct. App. Aug. 15, 2002)...................8, 9

*Mosley v. Kohl's Dep't Stores, Inc.*,
    942 F.3d 752 (6th Cir. 2019) ....................................................................................19

*Muncie Power Prod., Inc. v. United Techs. Auto., Inc.*,
    328 F.3d 870 (6th Cir. 2003) ......................................................................................9

*Neuman v. L'Oreal USA S/D, Inc.*,
    No. 1:14-CV-01615, 2014 WL 5149288 (N.D. Ohio Oct. 14, 2014)......................................19

*Pattie v. Coach, Inc.*,
    29 F. Supp. 3d 1051 (N.D. Ohio 2014)...................................................................13

*Pilgrim v. Universal Health Card, LLC*,
    660 F.3d 943 (6th Cir. 2011) ......................................................................................9

*Rikos v. Procter & Gamble Co.*,
    782 F. Supp. 2d 522 (S.D. Ohio 2011) ...................................................................19

*Rikos v. Procter & Gamble Co.*,
    No. 1:11-cv-226, 2013 U.S. Dist. LEXIS 12405 (S.D. Ohio Jan. 30, 2013)..........................19

*Sanderson v. HCA-The Healthcare Co.*,
    447 F.3d 873 (6th Cir. 2006) ......................................................................................5

*Sergeant Oil Gas Co, Inc. v. Nat'l Maint. Repair, Inc.*,
    861 F. Supp. 1351 (S.D. Tex. 1994) .......................................................................17

*Smith v. Bank of Am. Corp.*,
    485 Fed. App'x 749 (6th Cir. 2012) ...................................................................13

*Smith v. Sneed*,
    938 S.W.2d 181 (Tex. Ct. App. 1997) ...............................................................18

*Sooy v. Ross Incineration Servs.*,
    C.A. NO. 98CA007031, 1999 Ohio App. LEXIS 4889 (Ohio Ct. App. Oct. 20,
    1999) ...............................................................................................................8, 9

*Steptoe v. True*,
    38 S.W.3d 213 (Tex. Ct. App. 2001) .................................................................15

*Taylor v. Trevino*,
    No. 3:20-CV-0393-D, 2021 U.S. Dist. LEXIS 19245 (N.D. Tex. Feb. 2, 2021) ...................14

*Total Benefits Planning Agency Inc. v. Anthem Blue Cross & Blue Shield*,
    630 F. Supp. 2d 842 (S.D. Ohio 2007) ...............................................................3

*TRANS-GULF v. Performance Aircraft Servs.*,
    82 S.W.3d 691 (Tex. Ct. App. 2002) .................................................................18

*Wash. Cty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*,
    431 F. Supp. 3d 698 (D. Md. 2020) ...................................................................18

*Wilken Partners, L.P. v. Champps Operating Corp.*,
    Civil Action No. SA-10-CV-562-XR, 2010 U.S. Dist. LEXIS 90808 (W.D.
    Tex. Sep. 1, 2010) ...........................................................................................11

*Zamora v. Wells Fargo Bank, N.A.*,
    No. H-19-3966, 2020 U.S. Dist. LEXIS 145336 (S.D. Tex. Aug. 13, 2020) ...................14

**Rules**

Fed. R. Civ. P. 9(b) ...................................................................................................5

Fed. R. Civ. P. 12(b)(6)...............................................................................................4

Fed. R. Civ. P. 12(b)(1)...............................................................................................19

Fed. R. Civ. P. 12(f)...................................................................................................20

## I.    INTRODUCTION

In this Amended Complaint, which Plaintiffs filed in lieu of responding to a motion to dismiss and a motion to strike the class allegations in the original Complaint, five consumers from Ohio and Texas allege that The Kroger Co. ("Kroger") defrauded customers who used insurance to buy generic drugs at the company's pharmacies.  Plaintiffs allege that Kroger caused insured customers not to receive the benefit of special prices Kroger makes available to customers who choose to enroll in, and pay the membership fee for, Kroger's Rx Savings Club (the "Savings Club").  As shown below, Plaintiffs have not corrected the deficiencies in their claims.

In the Amended Complaint, Plaintiffs now claim that Kroger fraudulently reported allegedly inflated "usual and customary" ("U&C") prices to both Plaintiffs and the National Council for Prescription Drug Programs ("NCPDP"), an industry organization that sets standards for the electronic transmission of pharmacy claims to third-party payors ("TPPs"), such as health insurers.  The claim, however, has numerous defects:

- The allegation that Kroger reported U&C prices to Plaintiffs is not supported by any facts.  Nor do Plaintiffs plead ***how*** the alleged representations were made, such as in writing or orally.  Accordingly, this allegation fails to meet the applicable heightened pleading requirements for fraud.

- The allegation that Kroger reported the U&C price to the NCPDP is not plausible, given that the NCPDP is merely a standard-setting organization.  Moreover, Ohio law does not recognize fraud based on an alleged misrepresentation made to a third party that indirectly causes injury to a plaintiff.  Plaintiffs also have not pled that Kroger intended the NCPDP to communicate (or that the NCPDP did communicate) the alleged misrepresentation to Plaintiffs, and thus have failed to plead indirect fraud under Texas law.

- To the extent Plaintiffs allege that Kroger "concealed the true U&C prices," not only does a seller lack any legal duty to a buyer to disclose the alleged "true U&C prices," but Plaintiffs' own Amended Complaint establishes that Kroger published on its website both the retail prices and the club prices of Savings Club program drugs.  In other words, the Amended Complaint itself establishes that Kroger publicly announced that its retail prices and Savings Club prices were not the same and, therefore, Kroger did not "conceal the true U&C prices."

Plaintiffs also have failed to plead a claim with regard to unjust enrichment or negligent misrepresentation for the following reasons:

- As with the fraud claim, neither is pled with the required specificity.

- Under Texas law, unjust enrichment is not an independent cause of action.

- In its original Motion to Dismiss, Kroger established that, under Ohio law, a consumer transaction cannot form the basis for a negligent misrepresentation claim.  For that reason, the Ohio Plaintiffs no longer bring a negligent misrepresentation claim.  A consumer transaction, however, cannot give rise to a negligent misrepresentation claim under Texas law either.

Finally, while Plaintiffs request injunctive relief, because they each plead they would not have purchased the drug had they known of Kroger's allegedly wrongful conduct, and because none of them plead they will purchase generic drugs at Kroger in the future, they have failed to plead a likely threat of future injury.  As such, they lack standing to seek injunctive relief.

## II.    FACTUAL BACKGROUND[1]

### A.    The Kroger Rx Savings Club

Since 2018, Kroger has offered its customers the opportunity to join the Savings Club. (Am. Compl. ¶ 21.)  Customers who choose to join must pay an annual fee of $36 for individuals or $72 for families.[2]  In return, members receive access to prices lower than Kroger's retail prices

---

[1] For purposes of this Motion only, Kroger bases its arguments on the well-pled facts in the Amended Complaint.

[2] The fact regarding annual fees appeared in Plaintiff Kirkbride's original Complaint (Compl. ¶ 17), but disappeared from the Amended Complaint after Defendants used the fact that there is a fee as a basis for certain arguments in their Motion to Dismiss and Motion to Strike Class Allegations.  (*See* Mot. to Dismiss (ECF No. 26), at 10-12; Mot. to Strike (ECF No. 28) at 4.)  The Court, however, can take judicial notice of the membership fee because it is mentioned in a December 12, 2018 Kroger press release (http://ir.kroger.com/CorporateProfile/press-releases/press-release/2018/Kroger-and-GoodRx-Launch-the-Kroger-Rx-Savings-Club-to-Redefine-the-Customer-Experience/default.aspx) and SEC filings by GoodRx, which administers aspects of the program.  See https://www.sec.gov/Archives/edgar/data/1809519/000119312520234662/d949310ds1.htm, at 120; https://www.sec.gov/Archives/edgar/data/1809519/000095012320006632/filename1.htm#rom949310_11, at 107; https://www.sec.gov/Archives/edgar/data/1809519/000095012320008092/filename1.htm, at 115; https://www.sec.gov/Archives/edgar/data/1809519/000119312520234662/d949310ds1.htm, at 120; https://www.sec.gov/Archives/edgar/data/1809519/000119312520244628/d949310ds1a.htm, at 129; https://www.sec.gov/Archives/edgar/data/1809519/000119312520250579/d949310ds1a.htm, at 129; https://www.sec.gov/ix?doc=/Archives/edgar/data/1809519/000156459021012614/gdrx-10k_20201231.htm, at 12.

for many commonly prescribed generic drugs. (*Id.*) Any customer can determine whether the Savings Club covers a prescription drug through the Kroger website, www.krogersc.com (available at www.kroger.com/health/pharmacy), where Kroger provides a lookup feature that allows customers to see the difference between the retail prices and the Savings Club prices of the covered drugs. Indeed, Plaintiffs' Amended Complaint includes examples of the lookup feature for two prescription drugs in the Savings Club. (*See* Am. Compl. ¶¶ 24-25.)

Uninsured customers who do not join the Savings Club or present any other kind of benefit pay Kroger's retail prices for prescription medications. (Am. Compl. ¶¶ 20-21.) Insured customers, like Plaintiffs, have the option of either using their insurance benefits for a particular prescription or, after enrolling in the Savings Club and paying the enrollment fee, using their Savings Club benefits to receive the Savings Club price. (*Id.* ¶¶ 13, 21-22.)

### B. The U&C Prices Kroger Submits

Plaintiffs claim that, for drugs in the Savings Club, Kroger should have reported its Savings Club prices as its U&C prices, and that, if it had, some insured customers, including Plaintiffs, would have paid less for some prescription fills. (Am. Compl. ¶¶ 22-25.)

When a customer uses their insurance to purchase a prescription drug, the plan pays a portion of the cost and the customer pays a copay and/or deductible. (Am. Compl. ¶ 13.) Plaintiffs allege that "the pharmacist or pharmacy technician enters the prescription information and any applicable insurance or benefit information into Kroger's computerized claims processing

---

Under Federal Rules of Evidence 201(b)(2) and (c)(1), a court "may take judicial notice on its own" of facts "not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy [cannot] reasonably be questioned." *See Angelo v. Muskingum Cty. Child Protective Servs.*, No. 2:20-cv-6421, 2021 U.S. Dist. LEXIS 21167, at *1, *4 n.2 (S.D. Ohio Feb. 4, 2021); *see also Total Benefits Planning Agency Inc. v. Anthem Blue Cross & Blue Shield*, 630 F. Supp. 2d 842, 849 (S.D. Ohio 2007) (taking judicial notice of information found on the defendant's parent company's website, finding that the website is a "source whose accuracy cannot reasonably be questioned," as well as information in publicly-filed annual and corporate disclosure statements").

system." (*Id.* ¶ 16.) According to Plaintiffs, the pharmacist or pharmacy technician "then submits the claim" to the NCPDP, "a non-profit organization that develops industry standards for electronic healthcare transactions" and "sets the industry standards for the electronic transmission of pharmacy claims to third-party payors." (*Id.* ¶¶ 1, 15, 15 n.1, 16-17.) In the original Complaint, Plaintiff Kirkbride alleged that "TPPs use U&C prices to set copayment amounts." (Compl. ¶ 1.) Plaintiffs now merely allege that "U&C prices are used to calculate copayment amounts" without identifying who calculates the copayment. (Am. Compl. ¶ 1.) On the other hand, the Amended Complaint alleges that, when submitting the claim to the TPP, Kroger reports certain data, one of which is the U&C price for the drug. (*Id.* ¶¶ 1, 17.)

Although Plaintiffs do not plead any facts about the contracts relevant to their claims, Plaintiffs do allege that at least some contracts between Kroger and TPPs provide that "the amount of the [customer's] copayment cannot exceed the U&C price." (Am. Compl. ¶ 20.) Plaintiffs allege that Kroger submits its retail prices as its U&C prices. (*Id.* ¶¶ 17, 24-25.) They also allege that, if Kroger reported its Savings Club prices as its U&C prices, those insured customers whose TPPs have contracts with Kroger that provide that customer copayments cannot exceed the U&C price would pay no more than the Savings Club price for Savings Club drugs, even if the customers had not joined the Savings Club and paid the membership fee. (*Id.* ¶¶ 1, 20.)

### C. Plaintiffs' Prescription Drug Purchases

Plaintiffs allege that they filled prescriptions at Kroger using their insurance benefits and paid copayments that were higher than the Savings Club prices. (Am. Compl. ¶¶ 4-8.)

## III. LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal if a plaintiff "fail[s] to state a claim upon which relief can be granted." *See* Fed. R. Civ. P. 12(b)(6); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 667-79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). "To

survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when the facts pleaded "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). The plaintiff must make "a 'showing,' rather than a blanket assertion, of entitlement to relief." *Twombly*, 550 U.S. at 555 n.3.

Rule 9(b) requires allegations of fraud to state the circumstances that constitute the alleged fraud with greater particularity. *See* Fed. R. Civ. P. 9(b). "[A]t a minimum, Rule 9(b) requires that the plaintiff specify the 'who, what, where, and how' of the alleged fraud." *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (citation omitted).

## IV. ARGUMENT

### A. The Court Should Dismiss Plaintiffs' Claim For Fraud (Count I)

To plead a claim for fraud under Ohio law, a plaintiff must allege: "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Bryk v. Berry*, No. 07CA0045, 2008 Ohio App. LEXIS 2049, at **3 (Ohio Ct. App., May 19, 2008). Although the elements for fraud in Texas differ from those under Ohio law, except as stated below those differences are not relevant to this Motion. *See Ernst & Young, L.L.P. v. Pacific Mut. Life Ins. Co.*, 51 S.W.3d 573, 577 (Tex. 2001) (intentional fraud); *Lennon II Family Ltd. P'ship v. Gideo*, No. 02-18-00250-CV, 2019 Tex. Ct. App. LEXIS 8018, at *30-31 (Tex. App. Aug. 29, 2019) (fraud by nondisclosure).

Under Ohio and Texas fraud law, Plaintiffs' fraud claim fails for the following reasons:

- The allegation that Kroger reported U&C prices to Plaintiffs and the NCPDP are not supported by well-pled factual allegations and do not satisfy Rule 9(b);

- To the extent Plaintiffs allege Kroger made misrepresentations to the NCPDP, under Ohio law, a misrepresentation made to a third party does not support a claim for fraud, and in Texas, a misrepresentation made to a third party that is not intended to reach Plaintiffs does not support a claim for fraud; and

- To the extent Plaintiffs allege concealment, Kroger had no duty to disclose its U&C prices to Plaintiffs and, moreover, Kroger publishes both the retail prices and Savings Club prices for all Savings Club drugs and, therefore, did not conceal the retail prices that Plaintiffs allege Kroger reported as its U&C prices.

### 1. Plaintiffs Fail To Adequately Plead A Misrepresentation

#### a. Plaintiffs Have Not Sufficiently Alleged That Kroger Made Misrepresentations To Them

In the original Complaint, Plaintiff Kirkbride did not plead that Kroger ever mentioned the term "U&C" or "usual and customary" to her. Instead, Kirkbride alleged that, by reporting allegedly inflated U&C prices to the TPP that determined her copayment, she overpaid for drugs. In response to Kroger's original Motion to Dismiss, Plaintiffs now allege that Kroger reported the U&C prices of purchased drugs directly to Plaintiffs. (Am. Compl. ¶¶ 4-8.) In making this allegation, however, Plaintiffs have failed to meet the requirements of Rule 9(b).

Specifically, while Plaintiffs include the conclusory allegation that Kroger "reported to [Plaintiffs] . . . the U&C price" for purchased drugs (Am. Compl. ¶¶ 4-8), they do not plead *how* the pharmacist or pharmacy technician conveyed the U&C prices to them. Was the U&C price communicated orally or in writing? If in writing, how was it communicated and in what type of document? Plaintiffs' conclusory allegation is insufficient under Rule 9(b). *See Culy Constr. & Excavating, Inc. v. Laney Directional Drilling Co.*, Case No. 2:12-cv-4, 2012 U.S. Dist. LEXIS 79575, at *18-21 (S.D. Ohio June 8, 2012) (holding that, because the plaintiff failed to plead "how the representation was communicated," the plaintiff's claim failed under Rule 9(b)). Plaintiffs have failed to sufficiently plead that Kroger made any misrepresentations to them directly.

- 6 -

### b. Plaintiffs Have Not Sufficiently Alleged That Kroger Misrepresented the U&C Price To The NCPDP

As noted above, in the original Complaint, Plaintiff Kirkbride alleged that Kroger reported allegedly inflated U&C prices to the TPP that determined her copayments. Oddly, Plaintiffs have eliminated that allegation and, instead, allege that Kroger reported the U&C prices to a standards organization, the NCPDP. (Am. Compl. ¶¶ 4, 8.) This allegation, however, is not plausible.

Plaintiffs allege that the "NCPDP is a non-profit . . . that develops industry standards for electronic healthcare transactions used in prescribing, dispensing, monitoring, managing, and paying for medications and pharmacy services." (Am. Compl. ¶ 15 n.1.) Among other things, "[t]he NCPDP provides a standardized form for Kroger to fill out and send to TPPs when filling prescriptions" that requires Kroger to report the U&C price. (*Id.* ¶ 17.) Moreover, the NCPDP "sets the industry standards for the electronic transmission of pharmacy claims *to third-party payors*." (*Id.* ¶ 15 (emphasis added).) Plaintiffs also plead that, "[p]ursuant to contracts between Kroger and TPPs, the amount of the copayment cannot exceed the U&C price." (*Id.* ¶ 20.) In other words, the NCPDP sets standards for how pharmacies should submit claims to TPPs, the NCPDP form requires Kroger to report the U&C price to TPPs, and the customer's copayment is determined, at least in part, by the contract between the pharmacy and the TPP. Given these allegations, it is not plausible that Kroger reports the U&C price of the drug to a non-profit industry standard-setting organization as opposed to the TPPs, which is what Kirkbride alleged in the original Complaint. This allegation, therefore, fails under the *Iqbal/Twombly* requirements. Plaintiffs also fail to plead with particularity "how the representation was communicated" by Kroger to the NCPDP and, thus, fail to plead sufficiently under Rule 9(b).

        **c.**      **To The Extent Plaintiffs Allege Kroger Made Misrepresentations To A Third-Party, The Claim Fails**

           **(1)**    *Under Ohio Law, An Indirect Misrepresentation Cannot Form The Basis For A Fraud Claim*

To the extent Plaintiffs allege Kroger made misrepresentations by allegedly reporting inflated U&C prices to the NCPDP, under Ohio law, which applies to the claims brought by Ohio Plaintiffs Kirkbride, Berger, and Hatfield, the claim fails. Misrepresentations made to a third party, even those that result in injury to the plaintiff, cannot form the basis for a fraud claim:

> The Ohio Supreme Court has held that a party cannot maintain an action for fraud when the fraudulent representations were not made to him to induce him to act upon them in any matter affecting his own interests. . . . . *[A] plaintiff claiming that a third party relied on a misrepresentation made by the defendant and that the plaintiff suffered injury thereby does not state a valid cause of action for fraud*.

*Sooy v. Ross Incineration Servs.*, C.A. NO. 98CA007031, 1999 Ohio App. LEXIS 4889, at \*28 (Ohio Ct. App. Oct. 20, 1999) (emphasis added); *see also Moses v. Sterling Commerce Am., Inc.*, No. 02AP-161, 2002 Ohio App. LEXIS 4347, at \*8-9 (Ohio Ct. App. Aug. 15, 2002) (same).

Plaintiffs also allege that "Kroger made a false representation every time it charged Plaintiff[s] . . . for copays that were calculated based on inflated U&C prices." (Am. Compl. ¶ 34.) That, allegation, however, suffers from the same defect. In her original Complaint, Kirkbride pled that her TPP, not Kroger, set her copayment. (Compl., ¶ 4 ("Anthem set Ms. Kirkbride's copayments at . . .."). While not a model of clarity, Plaintiffs allege in the Amended Complaint that Kroger submitted the claims to the NCPDP, and that, "[b]ased on the U&C price that Kroger reports on the NCPDP's standard form, the appropriate copayment is calculated" – by whom is unsaid – "and Kroger charges that amount to the customer directly for that portion of the transaction." (Am. Compl. ¶¶ 4-8, 16, 19.) As stated above, these allegations are not plausible because Plaintiffs also plead that the standardized NCPDP form is "for Kroger to fill out and send to the TPPs when filling prescriptions" and that the amount of the copayment cannot exceed the

U&C price according to contracts between Kroger and TPPs. (*Id.* ¶¶ 17, 19-20.) A better reading of the Amended Complaint may be that the allegation has not changed from the original Complaint and that Kroger submits the claim and U&C price to TPPs for the TPPs to determine the copayments. Either way, as alleged, Kroger does not determine the copayment – either the NCPDP or the TPP does. In fact, Plaintiffs do not plead that Kroger has sufficient information regarding a customer's plan (*e.g.*, the plan's copayments, deductibles, out-of-pocket maximums, covered drugs, plan tiers for each drug) to allow Kroger to compare the copayment required under the plan with the U&C price. As a result, a third party must be the entity that sets the copayments. Any other conclusion would not be plausible and would fail under *Iqbal/Twombly*. Because it is a third party that determines the copayment amount, this is the same indirect fraud allegation referenced above; that is, that Kroger allegedly made misrepresentations to the NCPDP or the TPPs and, as a result of the third party relying on those alleged misrepresentations, the Plaintiffs' copayments were set higher than they otherwise would have been.

Because Plaintiffs cannot plead a fraud claim based on a third party relying on an alleged misrepresentation, the Ohio Plaintiffs fail to state a claim for fraud. *Sooy*, 1999 Ohio App. LEXIS 4889, at *28; *Moses*, 2002 Ohio App. LEXIS 4347, at *8-9.

### (2) *Plaintiffs Have Not Sufficiently Pled Liability For An Indirect Misrepresentation Under Texas Law*

The fraud claims asserted by the Texas Plaintiffs – Mackert and Lewis – fare no better. Under Texas law,[3] unlike Ohio law, a misrepresentation made to a third party can support a claim

---

[3] "Federal courts sitting in diversity must apply the choice-of-law rules of the forum state." *Muncie Power Prod., Inc. v. United Techs. Auto., Inc.*, 328 F.3d 870, 873 (6th Cir. 2003). "Under those rules, 'the law of the place of injury controls unless another jurisdiction has a more significant relationship to the lawsuit.'" *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 946 (6th Cir. 2011) (citation omitted). In balancing Ohio's choice-of-law factors, including the place of injury and the relative interests of the states, the Sixth Circuit has held that "the consumer-protection laws of the potential class members' home States will govern their claims." *Pilgrim*, 660 F.3d at 947. To find otherwise would allow companies to evade local consumer-protection laws "by locating in a State that demands the least." *Id.* at 947. Accordingly, the law of the person's home state applies to each putative class member's claims here.

of fraud, but only if "the misrepresentation was intended to reach [the plaintiff] and induce reliance." *Admiral Ins. Co., et al. v. Heath Holdings USA, Inc.*, No. 3:03-CV-1634-G, 2004 U.S. Dist. LEXIS 9211, at *13-14 (N.D. Tex. May 21, 2004). "[A] complainant cannot assert another's reliance, even if the action taken [by the third party] in reliance on a misrepresentation," *i.e.*, the determination of Plaintiffs' copayments, "causes injury." *Jordan v. Jordan*, No. 05-98-01971-CV, 2001 Tex. App. LEXIS 5106, at *10-11 (Tex. Ct. App. July 30, 2001) (citation omitted). Plaintiffs, however, do not plead that Kroger intended that the NCPDP (or the TPPs) forward the U&C prices to Plaintiffs. Nor do they plead that the NCPDP (or any TPPs) ever communicated with Plaintiffs, let alone informed Plaintiffs of the U&C prices Kroger reported. Without such an allegation, Plaintiffs have failed to allege that Kroger intended the alleged misrepresentations to reach Plaintiffs and for Plaintiffs to rely on those alleged misrepresentations.

Similarly, Plaintiffs' allegation that "Kroger made a false representation every time it charged Plaintiff[s] . . . for copays that were calculated based on inflated U&C prices" (Am. Compl. ¶ 34) does not create a cause of action under Texas law. As stated above, a third party must be the one that determines Plaintiffs' copayments and, therefore, this is the same indirect fraud allegation referenced above. Accordingly, the Texas Plaintiffs fail to state a claim for fraud.

> **2.    To The Extent Plaintiffs Attempt To Plead That Kroger Concealed The True U&C Prices, They Fail To State A Claim Because Plaintiffs Do Not Have A Duty To Disclose Its U&C Prices And Because Kroger Published Both Its Retail And Club Prices**

To the extent Plaintiffs allege an omission, that claim also fails. Based on their Amended Complaint, the only possible omission that Plaintiffs could be claiming is that "Kroger materially . . . concealed the true U&C prices of generic prescription drugs that are included in the [Savings Club] program." (Am. Compl. ¶ 40.) Kroger, however, did not have a duty to disclose the alleged

"true U&C prices" to Plaintiffs and, even if it did, Plaintiffs' allegations show that Kroger did not conceal its retail prices, which are the prices Plaintiffs allege Kroger reported as its U&C prices.

Under Ohio law, a duty to disclose information in a business transaction arises only where "(1) the parties are in a fiduciary relationship; (2) both parties to the transaction understand that a special trust or confidence has been reposed; or (3) full disclosure is necessary to dispel misleading impressions that are or might have been created by partial revelation of the facts." *Gator Dev. Corp. v. VHH, Ltd.*, No. C-080193, 2009 Ohio App. LEXIS 1525, at *17 (Ohio Ct. App. Apr. 17, 2009). Under Texas law, the duty arises where, "(1) a fiduciary or other special relationship between the parties gives rise to a duty to disclose; (2) new information makes a defendant's earlier representation misleading or untrue; (3) a defendant conveys a false impression by making a partial disclosure; and (4) a defendant who voluntarily discloses information has a duty to disclose the whole truth." *Wilken Partners, L.P. v. Champps Operating Corp.*, Civil Action No. SA-10-CV-562-XR, 2010 U.S. Dist. LEXIS 90808, at *5 n.1 (W.D. Tex. Sep. 1, 2010) (citations omitted). Here, Plaintiffs have not pled the existence of a fiduciary relationship, nor did one exist. Moreover, while Plaintiffs plead that "[t]he relationship between a pharmacy and its customers is unique, special and important," because "[p]harmacists discuss with customers how they should take medications . . . and advise customers on general health topics" (Am. Compl. ¶ 26), this case relates to the ***price*** of a product, not Plaintiffs' health or use of medication. No special trust or confidence was reposed with regard to a Kroger pharmacist charging the prices determined by third parties. *See Langford v. Rite Aid of Ala., Inc.*, 231 F.3d 1308, 1314 (11th Cir. 2000) (stating that "[p]harmacists owe duties to their patients ranging from diligence in recommending medication to confidentiality in maintaining patient's records; however, nothing in their professional code of conduct suggests, even obliquely, that pharmacists violate that duty by not disclosing the pricing

policies of their pharmacy"). In addition, as discussed above, because the Amended Complaint does not contain a well-pled allegation that any Plaintiff had a conversation with a Kroger employee regarding the U&C prices of the prescription drugs at issue, Plaintiffs have failed to plead a misleading disclosure through a "partial revelation of the facts." *See Gator Dev. Corp.¸* 2009 Ohio App. LEXIS 1525, at *17. Without a duty, any claim for omission fails.

Moreover, Plaintiffs' Amended Complaint establishes conclusively that Kroger did not conceal "the true U&C prices of generic prescription drugs that are included in the [Savings Club] program." (Am. Compl. ¶ 40.) Indeed, Plaintiffs plead that Kroger publishes both the "retail price" and the "Kroger Rx Savings Club price" for drugs in the Savings Club. (Am. Compl. ¶¶ 24-25.) The retail price and the Savings Club price for all covered drugs, including the drugs purchased by Plaintiffs, can be found on Kroger's website. In fact, the images Plaintiffs inserted in Paragraphs 24 and 25 of the Amended Complaint show that Plaintiffs found those price comparisons on Kroger's website. Because Kroger publishes its "retail price" – or what Plaintiffs call in Paragraphs 24 and 25 of the Amended Complaint "the U&C price" – as well as the Savings Club price for all drugs in the Club, Plaintiffs have failed to state a claim as to alleged omissions.

### 3. Plaintiffs Fail To Plead Fraud With The Required Particularity

Plaintiffs fail to plead what the alleged misrepresentation/omission is, which deprives Kroger of the information it needs to defend itself. In Paragraph 40, Plaintiffs allege that "Kroger materially misrepresented and concealed the true U&C prices of generic prescription drugs that are included in the [Savings Club] program." But it cannot be both; either Kroger misrepresented the alleged true U&C price or it concealed it somehow. Plaintiffs then go on to allege that "Kroger made misrepresentations to Plaintiffs and class members each time it charged them for copays that were calculated based on its inflated U&C prices." (Am. Compl. ¶ 40.) This begs the question: are Plaintiffs alleging misrepresentations through Kroger misrepresenting the U&C price to them,

or are they alleging misrepresentations through Kroger charging them "copays that were calculated based on its inflated U&C prices"? (*Id.*) In other words, Kroger cannot know what Plaintiffs are claiming is the fraud. "The main purpose behind Rule 9(b) is to provide the defendant with notice of the plaintiff's claim so that the defendant may prepare an informed responsive pleading." *Allen*, 13 F. Supp. 2d at 499. By failing to make clear what the alleged misrepresentation or omission is that they are claiming, Plaintiffs have failed to plead with the specificity required by Rule 9(b).

### B. The Court Should Dismiss Plaintiffs' Unjust Enrichment Claim (Count II)

#### 1. Plaintiffs' Unjust Enrichment Claim Is Not Pled With Particularity

"[A]ny claim sounding in fraud – not just those alleging a claim of fraud – must meet Rule 9(b)'s pleading standard." *Bush Truck Leasing, Inc. v. Cummins, Inc.*, Case No. 1:18-cv-871, 2020 U.S. Dist. LEXIS 120226, at *12-13 (S.D. Ohio July 9, 2020) (citation omitted). For that reason, a claim for unjust enrichment "grounded in fraud" must meet the pleading requirements of Rule 9(b). *Smith v. Bank of Am. Corp.*, 485 Fed. App'x 749, 755 (6th Cir. 2012) (affirming dismissal of unjust enrichment claim "grounded in fraud" for failing to plead "with sufficient particularity"); *Pattie v. Coach, Inc.*, 29 F. Supp. 3d 1051, 1059 (N.D. Ohio 2014) (dismissing unjust enrichment claim based on fraud "because it is also subject to the particularity requirement in Rule 9(b)"). Here, Plaintiffs' unjust enrichment claim is based on the same allegations as their fraud claim. (Am. Compl. ¶ 46.) Accordingly, for the reasons stated in Sections IV.A.1 and IV.A.3, the unjust enrichment claim fails to meet the Rule 9(b) pleading requirements and should be dismissed.

#### 2. Plaintiff Kirkbride Has Not Pled A Benefit Conferred On Kroger

To prove unjust enrichment, a plaintiff must show: "(a) a benefit conferred by a plaintiff upon a defendant; (2) knowledge by the defendant of the benefit; and (3) retention of the benefit by the defendant under circumstances where it would be unjust to do so without payment." *Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio S.C. 2005) (citation omitted). "[J]ust

because one party may have been indirectly benefitted by another does not alone support a claim for unjust enrichment." *Hiles v. Edward Thomas Invest. Group, LLC*, Franklin Cty. C.P. Nos. 16-CV-3704, 16-CV-3706, 16CV-3766, 16CV-4382, 16CV-4416, 2017 Ohio Misc. LEXIS 4045, at *24 (Ct. Com. Pl. Aug. 23, 2017). Rather, a plaintiff must show that, "under the circumstances [it has] a superior equity so that . . . it would be unconscionable for the defendants to retain the benefit." *Andersons, Inc. v. Consol, Inc.*, 185 F. Supp. 2d 833, 842 (N.D. Ohio 2002) (citation omitted). In addition, "there must be a tie of causation between the plaintiff's loss and the defendant's benefit." *Laurent v. Flood Data Servs.*, 766 N.E.2d 221, 226 (Ohio Ct. App. Oct. 31, 2001) (citation omitted).

Here, Kirkbride pleads that she was overcharged by $1.97. (Am. Compl. ¶ 4.) The Savings Club membership fee, however, is $36. Because she was not allegedly overcharged by more than $36, Kirkbride has suffered no loss and her unjust enrichment claim fails.

### 3. In Texas, Unjust Enrichment Is A Remedy, Not A Cause Of Action, And, Therefore, The Texas Plaintiffs' Claim Should Be Dismissed

Two of the four new Plaintiffs, Mackert and Lewis, reside in Texas and purchased prescription drugs from Kroger in Texas. (Am. Compl. ¶¶ 7-8.) As a result, Texas law applies to their claims. (*See* n.3 on pp. 9-10, above.) Recent Texas federal case law has found, however, that "Texas law does not recognize an independent cause of action for unjust enrichment." *Taylor v. Trevino*, No. 3:20-CV-0393-D, 2021 U.S. Dist. LEXIS 19245, at *11 (N.D. Tex. Feb. 2, 2021) (citations omitted); *see also King v. Baylor Univ.*, No. 6:20-CV-00504-ADA-JCM, 2021 U.S. Dist. LEXIS 63787, at *16 (W.D. Tex. Jan. 29, 2021); *Curtis v. Cerner Corp.*, 621 B.R. 141, 176-77 (S.D. Tex. 2020); *Zamora v. Wells Fargo Bank, N.A.*, No. H-19-3966, 2020 U.S. Dist. LEXIS 145336, at *14 (S.D. Tex. Aug. 13, 2020). Indeed, one court in the Northern District of Texas found that "the vast majority of courts, including this court, now hold that unjust enrichment is not

a separate cause of action." *Fisher v. Blue Cross & Blue Shield of Tex., Inc.*, Civil Action No.

3:10-CV-2652-L, 2015 U.S. Dist. LEXIS 127297, at \*32 (N.D. Tex. Sep. 23, 2015).[4] Accordingly,

the unjust enrichment claim should be dismissed as to Mackert and Lewis.

### C. The Court Should Dismiss The Negligent Misrepresentation Claim (Count III)

In Plaintiff Kirkbride's original Complaint, she brought a claim for negligent

misrepresentation. Kroger, however, showed that negligent misrepresentation does not apply to

consumer transactions under Ohio law. *Middlefield Banking Co. v Deeb*, Case No. 2011-G-3007,

2012 Ohio App. LEXIS 2829, at \*16 (Ohio Ct. App. July 16, 2012). Thus, in the Amended

Complaint, only the newly added Texas Plaintiffs, Mackert and Lewis, bring the claim. The claim,

however, cannot survive under Texas law either and, as a result, should be dismissed.

### 1. Under Texas Law, A Consumer Transaction Cannot Give Rise To A Claim For Negligent Misrepresentation

Under Texas law, to state a claim for negligent misrepresentation, a plaintiff must allege

facts establishing that the defendant has "a duty to disclose." *Coburn Supply Co. Inc. v. Kohler

Co.*, 342 F.3d 372, 377 (5th Cir. 2003) (citing *Fleming v. Tex. Coastal Bank of Pasadena*, 67

S.W.3d 459, 461 (Tex. Ct. App. 2002); *Steptoe v. True*, 38 S.W.3d 213, 219-20 (Tex. Ct. App.

2001)). "Generally, a duty of disclosure arises only in confidential or fiduciary relationships."

*Fleming*, 67 S.W.3d at 461. For that reason, every Texas negligent misrepresentation case Kroger

has been able to locate has involved a relationship of trust. *See McCamish v. F. E. Appling

Interests*, 991 S.W.2d 787, 791 (Tex. 1999) (listing examples of cases in which negligent

---

[4] Some courts have claimed that the Fifth Circuit has held that unjust enrichment is a cause of action in Texas. *See, e.g.*, *Marrufo v. Ethicon, Inc.*, No. DR-20-CV-00043-AM, 2020 U.S. Dist. LEXIS 243197, at \*10 (W.D. Tex. Nov. 20, 2020) (*citing Elias v. Pilo*, 781 F. App'x 336, 338 (5th Cir. 2019)). This is incorrect. In *Elias*, the Fifth Circuit, after noting a split among Texas appellate courts on the issue and that the Texas Supreme Court has not yet resolved the issue, merely assumed for purposes of that appeal "that unjust enrichment is an independent cause of action" before dismissing the claim on other grounds. *Id.*, at 338-39, 338 n.3; *see also BBX Operating, L.L.C. v. Bank of Am., N.A. (In re Connect Transp., L.L.C.)*, 825 F. App'x 150, at 154, 154 n.2 (5th Cir. 2020) (same).

misrepresentation has been applied).  Given the arms-length relationship that exists between a buyer and a seller, there is no reason to believe that the Texas Supreme Court would apply the tort to a consumer transaction.  Indeed, Kroger has not been able to locate any case in which a Texas court has applied the tort of negligent misrepresentation to a consumer sales transaction.

The Texas Plaintiffs plead that, '[u]nder the circumstances alleged, Kroger owed a duty to Plaintiffs, and Members of the Class and Subclass, to provide them with accurate information regarding the prices of its generic prescription drugs."  (Am. Compl. ¶ 58.)  This, however, is a conclusory allegation that the Court need not accept as true.  *See, e.g., Eidson v. Tenn. Dep't. of Children's Servs.*, 510 F.3d 631, 634 (6th Cir. 2007) (holding that, on a motion to dismiss, a court is not required to accept as true "[c]onclusory allegations or legal conclusions masquerading as factual allegations").  Plaintiffs further plead that "[t]he relationship between a pharmacy and its customers is unique, special and important," because "[p]harmacists discuss with customers how they should take medications . . . and advise customers on general health topics."  (*Id*. ¶ 22.)  But Plaintiffs' case has nothing to do with their health, or how Plaintiffs should take their medications.  Instead, this case relates solely to the prices of products.  The Amended Complaint does not cite any Texas authority that imposes or recognizes a duty on the part of pharmacists to disclose accurate pricing information.  Indeed, no such duty exists.  *See Langford*, 231 F.3d at 1314 (stating that "nothing in their professional code of conduct suggests, even obliquely, that pharmacists violate [a] duty by not disclosing the pricing policies of their pharmacy").  In other words, the Amended Complaint describes a classic buyer-seller relationship in a consumer transaction.  As such, under Texas law, Plaintiffs cannot state a claim for negligent misrepresentation.

## 2. Plaintiffs Have Failed To Plead Negligent Misrepresentation With Sufficient Particularity

Plaintiffs also have failed to plead negligent misrepresentation with the requisite

particularity. "[A]ny claim sounding in fraud – not just those alleging a claim of fraud – must meet Rule 9(b)'s pleading standard." *Bush Truck*, 2020 U.S. Dist. LEXIS 120226, at *12-13 (citation omitted). "Thus, 'when a party brings both fraud and negligent misrepresentation claims but fails to plead an independent basis of liability for each of the clams, courts will apply Rule 9(b)'s standard to both claims.'" *Id.*, at *13 (citation omitted). Plaintiffs bring their fraud and negligent misrepresentation claims based on the same conduct and, thus, Rule 9(b) applies to both.

For Plaintiffs to plead a claim for negligent misrepresentation, Plaintiffs must plead that the defendant supplied false information. Concealment cannot form the basis for a negligent misrepresentation claim; it must be an actual misrepresentation. *See, e.g.*, *Guardian Underwriters Reassurance Ltd. v. Thompson, Coe, Cousins & Irons, L.L.P.*, No. 3:-03-CV-0133-H, 2004 U.S. Dist. LEXIS 862, at *7 (N.D. Tex. Jan. 26, 2004) ("For a negligent misrepresentation cause of action to lie in Texas, the defendant must make affirmative misrepresentations") (citing *Sergeant Oil Gas Co, Inc. v. Nat'l Maint. Repair, Inc.*, 861 F. Supp. 1351, 1360 (S.D. Tex. 1994)). As shown in Section IV.A.1 and IV.A.3 above, however, Plaintiffs have failed to plead a misrepresentation with the particularity required under Rule 9(b).

### 3. Because Plaintiffs Plead A Misrepresentation To A Third Party, They Have Failed To State A Claim For Negligent Misrepresentation

As shown in Sections IV.A.1.a above, Plaintiffs' allegation that Kroger reported the U&C prices directly to Plaintiffs does not satisfy Rule 9(b). Moreover, Plaintiffs do not allege that any alleged misrepresentation Kroger made to the NCPDP with regard to the U&C price – which itself is not well pled – was then passed on to the Plaintiffs or that Kroger intended for the NCPDP to pass on the alleged misrepresentation to the Plaintiffs. In fact, Plaintiffs do not allege that the NCPDP had any communication with the Plaintiffs. Under Texas law, negligent misrepresentation may only be asserted by parties to whom information is supplied or to whom the defendant "knows

that the recipient intends to supply it." *McCamish*, 991 S.W.2d at 794. In other words, "a negligent misrepresentation cause of action is available only when information is transferred to a known party for a known purpose." *TRANS-GULF v. Performance Aircraft Servs.*, 82 S.W.3d 691, 696 (Tex. Ct. App. 2002) (citing *McCamish*, 991 S.W.2d at 794); *see also Smith v. Sneed*, 938 S.W.2d 181, 185 (Tex. Ct. App. 1997) (holding that the plaintiff could not have relied on an alleged negligent misrepresentation where the representation was made to a third party and the plaintiff was unaware of the statement); *Wash. Cty. Bd. of Educ. v. Mallinckrodt ARD, Inc.*, 431 F. Supp. 3d 698, 716 (D. Md. 2020) (holding that, if the plaintiff never received the alleged misstatement, "its conclusory assertion that it relied on the misstatement . . . is implausible and the Court need not accept it as true") (citing *Iqbal*, 556 U.S. at 678). Because Plaintiffs do not plead that Kroger knew the NCPDP would pass on the U&C prices to Plaintiffs (or even that the NCPDP actually did pass on the information to Plaintiffs), Plaintiffs have failed to state a claim for negligent misrepresentation.

### D. Because Plaintiffs Have Not Pled An Intent To Purchase Drugs From Kroger In The Future, They Lack Article III Standing To Seek Injunctive Relief

In Plaintiff Kirkbride's original Complaint, she pled that, "[d]ue to the need for continuity of access to care, Plaintiff anticipates filling future prescriptions for generic drugs at Kroger." (Compl. ¶ 4.) In response to Kroger's Motion to Dismiss, however, Kirkbride eliminated that allegation and none of the new Plaintiffs included that allegation. As a result, Plaintiffs have not pled a risk of future injury and, therefore, they lack Article III standing to seek injunctive relief. Thus, even if the Court does not dismiss all of Plaintiffs' claims, the Court should still dismiss Plaintiffs' request for injunctive relief. (*See* Am. Compl., WHEREFORE cl. §§ (g), (h), at 21-22.)

"A motion to dismiss for lack of standing is properly characterized as a motion for lack of subject-matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1)." *Fishon v. Mars*

- 18 -

*Petcare US Inc.*, No. 3:19-cv-00816, 2020 U.S. Dist. LEXIS 217864, at *4 (M.D. Tenn. Nov. 20, 2020) (citation omitted).  In such a motion, "the *plaintiff* has the burden of proving jurisdiction in order to survive the motion."  *Id*. (emphasis in original) (citation omitted).  In Kroger's challenge to the sufficiency of this pleading, the Court must accept all well-pled allegations as true "to determine 'whether the plaintiff has *alleged* a basis for subject matter jurisdiction.'"  *Id*. (emphasis in original) (citation omitted).  And in a putative class action, "[i]f no named plaintiff has standing, the Court lacks subject-matter jurisdiction to hear the case."  *Id*.; *Rikos v. Procter & Gamble Co.*, 782 F. Supp. 2d 522, 532 (S.D. Ohio 2011) ("Unless the named plaintiffs are themselves entitled to seek injunctive relief, they may not represent a class seeking that relief") (citation omitted).

Here, Plaintiffs lack standing to request injunctive relief because they have not pled any threat of future harm.  Although courts have split on Article III standing as to injunctive relief when a consumer discovers alleged fraud and, thus, is unlikely to purchase the defendant's product again, courts in the Sixth Circuit have found that a plaintiff lacks standing under such circumstances.  *See, e.g.*, *Rikos v. Procter & Gamble Co.*, No. 1:11-cv-226, 2013 U.S. Dist. LEXIS 12405, at *10-11 (S.D. Ohio Jan. 30, 2013) (a plaintiff aware of false advertising "cannot allege a threat of future injury, which is a required element of Article III standing") (*citing Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 (1992) and *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)); *Neuman v. L'Oreal USA S/D, Inc.*, No. 1:14-CV-01615, 2014 WL 5149288, at *2 (N.D. Ohio Oct. 14, 2014) ("[t]he result that a plaintiff who suffers no risk of future injury cannot obtain an injunction furthers the purpose of the . . . standing inquiry – to ensure that there is a live case or controversy"); *Fishon*, 2020 U.S. Dist. LEXIS 217864, at *18 and *19 n.9 (finding that *Mosley v. Kohl's Dep't Stores, Inc.*, 942 F.3d 752, 756 (6th Cir. 2019) and *Lyons*, 461 U.S. 102-03, compel a finding that, because the plaintiffs did not allege they will purchase the product or suffer future

harm from the alleged misrepresentations, they "lack Article III standing to seek injunctive relief," individually or on behalf of a class).

In *Johnson v. Jos. A. Bank Clothiers, Inc.,* No. 2:13-CV-756, 2015 WL 12698066 (S.D. Ohio June 9, 2015), the plaintiffs alleged that, but for the defendant's alleged misrepresentation of the "regular price" of suits, they would not have purchased the suits. *Id.*, at *4. The Court found that, "[i]n light of . . . plaintiffs' specific allegations, it simply cannot be said that these plaintiffs will in the future once again rely on the alleged misrepresentation in defendant's advertisements in their purchase of defendant's suits." *Id.* The Court further noted that plaintiffs did not allege that they were likely to purchase defendant's suits again or suffer future harm. *Id.* As a result, the Court found that "plaintiffs lack Article III standing to seek injunctive relief." *Id.* Similarly, here, Plaintiffs not only fail to allege that they are likely to buy the product in the future or suffer future harm from Kroger's practices, but they actually plead that they would not have "paid the inflated copayment" – or, in other words, purchased the prescriptions in question – "but for Kroger's wrongful conduct." (Am. Compl. ¶¶ 4-8.) As a result, on its face, Plaintiffs' Amended Complaint establishes that Plaintiffs do not have standing to pursue injunctive relief, and the Court should dismiss the injunctive relief claim.[5]

## V. CONCLUSION

For the reasons stated above, Kroger respectfully requests that the Court dismiss Plaintiffs' Amended Complaint in its entirety and grant Kroger all further relief as the Court deems just.

---

[5] If the Court finds that a motion to dismiss is not the proper vehicle for dismissing Plaintiffs' claim for injunctive relief, it can strike the allegations pursuant to Rule 12(f). Rule 12(f) provides for "the elimination of issues where, as a matter of law, no set of facts will support the issues subject to a motion to strike." *Enterprise Energy Corp. v. Columbia Gas Transmission Corp.*, No. C2-85-1209, 1989 U.S. Dist. LEXIS 6726, at *5 (S.D. Ohio Jan. 6, 1989).

Dated: May 13, 2021                    Respectfully submitted,

                                       /s/ *Nathaniel Lampley Jr.*
                                       Nathaniel Lampley Jr. (BPR #0041543)
                                       (NLampley@vorys.com) (trial attorney)
                                       VORYS, SATER, SEYMOUR AND PEASE LLP
                                       Atrium Two, Suite 2000 221 East Fourth Street
                                       Cincinnati, OH  45202
                                       Telephone: (513) 723-4000
                                       Facsimile: (513) 852-7869

                                       Robert Webner (BPR #0029984)
                                       (rnwebner@vorys.com)
                                       VORYS, SATER, SEYMOUR AND PEASE LLP
                                       52 East Gay Street
                                       Columbus, OH  43215
                                       Telephone: (614) 464-6400
                                       Facsimile: (614) 464-6350

                                       Frederick Robinson (*pro hac vice*)
                                       (frobinson@reedsmith.com)
                                       Selina Coleman (*pro hac vice*)
                                       (scoleman@reedsmith.com)
                                       REED SMITH LLP
                                       1301 K Street, N.W.
                                       Suite 1000 – East Tower
                                       Washington, D.C.  20005
                                       Telephone: (202) 414-9200
                                       Facsimile: (202) 414-9299

                                       Michael S. Leib (*pro hac vice)*
                                       (mleib@reedsmith.com)
                                       REED SMITH LLP
                                       10 S. Wacker Drive, Suite 4000
                                       Chicago, IL  60606
                                       Telephone: (312) 207-1000
                                       Facsimile: (312) 207-6400

                                       *Counsel for Defendant*

**CERTIFICATE OF SERVICE**

This certifies that all counsel of record were served via the Electronic Case Filing ("ECF")

System on May 13, 2021.

*/s/ Nathaniel Lampley Jr.*
Nathaniel Lampley Jr.