IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**JUDY KIRKBRIDE,** *et al.,*

    **Plaintiffs,**

                              Civil Action 2:21-cv-22
                              Chief Judge Algenon L. Marbley
    v.                        Magistrate Judge Elizabeth P. Deavers

**THE KROGER CO.,**

    **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion to Stay Discovery (ECF No. 25), Plaintiff's Response (ECF No. 27), and Defendant's Reply (ECF No. 29). For the following reasons, the Court **GRANTS** Defendant's Motion to Stay Discovery.

**I.**

Plaintiff, Judy Kirkbride, individually and on behalf of herself and all others similarly situated, filed a Class Action Complaint on January 5, 2021, against Defendant The Kroger Co. ("Kroger"), arising from Kroger's alleged fraudulent and deceptive pricing scheme to overcharge customers with third-party insurance providers ("TPPs") on purchases of generic prescription medication (ECF No. 1, at ¶1.) According to the allegations:

> Specifically, in its submissions to TPPs, Kroger inflated the "usual and customary" ("U&C") prices at which it sold generic prescription drugs. Kroger should have listed its U&C prices at the lowest amounts at which it sold medications, including through its Rx Savings Club ("RxSC"), but it instead used highly inflated prices. Because TPPs use U&C prices to set copayment amounts, the result of Kroger's inflated U&C prices was that Plaintiff and other consumers paid far more for generic drugs than they should have.

1

(*Id.*)

On April 9, 2021, Kroger filed a motion to dismiss for failure to state a claim. (ECF No. 26.) The motion was accompanied by a motion to stay discovery. (ECF No. 25.) Plaintiff filed an Amended Complaint on April 29, 2021, naming additional Plaintiffs including Patricia Berger, Lester Hatfield, Melody Mackert, and Beeta Lewis and including similar allegations.[1] (ECF No. 30.) Kroger again moved to dismiss and its motion to stay discovery remained pending. (ECF No. 32.)

Kroger contends that a stay is necessary for several reasons. First, Kroger explains that responding to Plaintiff's requests for production would be very burdensome because the requested class, if certified, would include millions of people and the requests will require Kroger to pull and produce over 380 million lines of pharmacy data. Kroger asserts that this burden is exacerbated by the fact that it currently is on the front lines of responding to the COVID-19 pandemic and administering approximately one million vaccines a week. Kroger represents that in approximately three months, it will have significantly more resources to devote to responding to Plaintiffs' requests.

Kroger also argues that discovery will remain costly and burdensome even after this three-month period. In making this argument, Kroger asserts that its motion to dismiss has a strong likelihood of success and that it intends to file a motion to strike the class allegations.[2] Finally, Kroger contends that Plaintiff will not suffer any prejudice from a stay because, to the

---

[1] Plaintiff indicates in her Amended Complaint that Kroger inflated its U&C prices for generic prescription drugs in communications with Plaintiffs and in its submissions to the National Council for Prescription Drug Programs. (ECF No. 30 at ¶ 1.)
[2] Kroger moved to strike the class allegations of both the original and amended complaints. (ECF Nos. 28, 35.)

2

extent any injury has been alleged, it is only for $4.46 in damages.[3] On this point, Kroger also notes that Plaintiff is now aware of the Savings Club and may avoid future harm by choosing to participate in the Club or have her prescriptions filled elsewhere.

Kroger has attached to its motion a copy of Plaintiff's First Set of Requests for Production of Documents served upon it on March 11, 2021. (ECF No. 25-1.) Consistent with Kroger's description, a quick review of these requests reveals:

> The requests ask Kroger to produce thirteen categories of documents, with no date restrictions. Plaintiff seeks, among other requests: (1) data showing all "usual and customary" prices that Kroger reported on reimbursement claims to all third-party payors and pharmacy benefit managers for all prescription drugs included in the Savings Club; (2) transaction data for every purchase of a prescription drug by an insured customer who purchased a drug included in the Savings Club, which would require producing numerous data fields, (3) all contracts between Kroger and any third-party payor or pharmacy benefit manager that reference "usual and customary" prices, and (4) all documents regarding the "usual and customary" prices that Kroger reported to third-party payors or pharmacy benefit managers.

(ECF No. 25, at 11; ECF No. 25-1, at 6-7.)[4]

Kroger also has submitted a declaration from Jessica Paul, its Chief Financial Officer, attesting to the hardship Kroger would suffer if discovery were required to move forward. (ECF No. 25-2.) According to Ms. Paul, responding to Plaintiff's requests would require Kroger to provide hundreds of millions of lines of transactional data. (*Id*. at ¶ 5.) Approximately 84% of Kroger's prescriptions are purchased using insurance, and complying with the production request will require Kroger to pull and produce data for approximately 380.4 million prescriptions for the time period of approximately December 2018 (when the Savings Club launched) to the present. (*Id*.) Further, responding to the request for contracts and contract-related documents

---

[3] In the Amended Complaint, Kirkbride alleges an overcharge by Kroger in the amount of $1.97. The newly named Plaintiffs allege overcharges in the following amounts: Berger $287.10; Hatfield $237.96; Mackert $72.90; and Lewis $71.91. (ECF No. 30 at ¶¶ 4-8.)
[4] There are two categories labeled as "Request for Production No. 8.".

would require Kroger to notify, or obtain consent from, over eighty third parties. (*Id*. at ¶ 6.) Kroger is currently administering approximately one million COVID-19 vaccines a week utilizing resources that would otherwise be directed toward responding to litigation requests. (*Id.* at ¶ 7.) Only five individuals at Kroger have the training to perform data pulls and they currently are occupied with both pandemic response duties and the annual negotiation of Kroger's Medicare Part D contracts. (*Id.* at ¶ 8.) Pulling over 380.4 million claims would require eight months of time and additional time to design the data queries, validate the results of those queries, combine the results, and coordinate on the export of the data, and the age of the data would increase the amount of time and resources required. (*Id*. at ¶¶ 10, 11.)

In response, Plaintiff argues that Kroger's motion to dismiss is "garden-variety" and therefore insufficient to warrant a stay. Further, Plaintiff characterizes her discovery requests as "focused and narrowly tailored" and notes that she has not served interrogatories or requests for admission. Plaintiff also opines, with no evidentiary support, that "[m]any of these requests can be easily satisfied without much effort"; certain documents "should be few in number"; producing contracts "should be easy as well'" and "sending out 80 notice letters is easily accomplished with a mail merge." (ECF No. 27, at 7.) However, Plaintiff represents that she is willing to temporarily forego "the most burdensome discovery so that the parties can focus on low-hanging fruit and get discovery started." (*Id*. at 5.) According to Plaintiff, this discovery includes the "transactional data requested." (*Id*. at 7.) Finally, Plaintiff disputes that Kroger is likely to succeed on its motion to dismiss.

In reply, Kroger argues that Plaintiff has failed to address the evidence it presented or to argue that she would be harmed by a stay. Kroger contends that Plaintiff's offer to set aside the request for transactional data suggests that Plaintiff recognizes the burden Kroger faces. Kroger

4

also explains that Plaintiff mischaracterizes Ms. Paul's testimony to the extent Plaintiff contends that a "mail merge" would be sufficient to notify third parties. According to Kroger, the contracts require the consent of the third-party and the process of obtaining that consent and coordinating with third parties is extremely time consuming, including review and redactions. Moreover, Kroger maintains that there are often amendments, state-specific agreements, agreements specific to certain federal programs, and additional documents that comprise the parties' agreement such that there likely would be thousands of contracts and contract-related documents responsive to the discovery requests. As a result, Kroger explains, Plaintiff's concession here "is not sufficient." (ECF No. 29, at 7.)

## II.

"A district court has the inherent power to stay proceedings based on its authority to manage its docket efficiently." *Ferrell v. Wyeth-Ayerst Labs., Inc.*, No. 1:01-CV-447, 2005 WL 2709623, at *1 (S.D. Ohio Oct. 21, 2005) (citing *In re Airline Pilots Ass'n v. Miller*, 523 U.S. 866, 880 (1998) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254–55 (1936))). The Court, however, "must tread carefully in granting a stay of proceedings since a party has a right to a determination of its rights and liabilities without undue delay." *Ohio Envtl. Council v. U.S. Dist. Ct.*, 565 F.2d 393, 396 (6th Cir. 1977) (citing *Landis*, 299 U.S. at 254–55).

In deciding whether to grant a stay, courts commonly consider the following factors: (1) the stage of litigation; (2) whether the non-moving party will be unduly prejudiced or tactically disadvantaged; (3) whether a stay simplifies the issues; and (4) whether the burden of litigation on the parties and on the court is reduced. *Grice Eng'g, Inc. v. JG Innovations, Inc.*, 691 F. Supp. 2d 915, 920 (W.D. Wis. 2010) (citations omitted). The movant bears the burden of

showing both a need for delay and that "neither the other party nor the public will suffer harm from entry of the order." *Ohio Envtl. Council*, 565 F.2d at 396.

In exercising its discretion, the Court has found that filing a case-dispositive motion is insufficient to grant a stay of discovery. *Bowens v. Columbus Metro. Library Bd. of Trs.*, No. 2:10-CV-00219, 2010 WL 3719245, at *2 (S.D. Ohio Sept. 16, 2010) (citing *Ohio Bell Tele. Co., Inc. v. Global NAPs Ohio, Inc.*, No. 2:06-CV-0549, 2008 WL 641252, at *1 (S.D. Ohio Mar. 4, 2008)) (denying the defendants' motion to stay discovery despite their pending summary judgment motion). Indeed, if a motion does not raise an issue "which would be substantially vitiated absent a stay" and there is no showing that the case will "certainly be dismissed" then "a stay should not ordinarily be granted to a party who has filed a garden-variety Rule 12(b)(6) motion." *Williams v. New Day Farms, LLC*, No. 2:10-CV-0394, 2010 WL 3522397, at *2 (S.D. Ohio Sept 7, 2010).

Nevertheless, the United States Court of Appeals for the Sixth Circuit has recognized that "[l]imitations on pretrial discovery are appropriate where claims may be dismissed 'based on legal determinations that could not have been altered by any further discovery.'" *Gettings v. Bldg. Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 304 (6th Cir. 2003) (quoting *Muzquiz v. W.A. Foote Memorial Hosp., Inc.*, 70 F.3d 422, 430 (6th Cir. 1995)). This Court, however, retains broad discretion in determining whether to "stay discovery until preliminary questions which may dispose of the case are answered." *Bangas v. Potter*, 145 F. App'x 139, 141 (6th Cir. 2005) (citing *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999)).

## III.

Applying the above factors, the Court concludes that Kroger has demonstrated that a stay of discovery is justified here. First, contrary to Plaintiff's characterization, the basis for Kroger's

motion is not solely the pendency of potentially dispositive motions. Rather, consistent with the standard set forth above, the focus of Kroger's motion is the burden it will face if required to respond to Plaintiff's discovery requests and the lack of prejudice faced by Plaintiff if discovery is stayed. Significantly, Kroger has not simply claimed burden but has provided evidentiary support.

Through Ms. Paul's declaration, Kroger has demonstrated the extent of its burden arising from both the breadth of the requests themselves and the backdrop of societal circumstances under which it currently is being asked to respond. Kroger also has explained that, while the burden is particularly acute right now, it will remain significant to the extent it will be required to coordinate contract matters with approximately eighty third parties. Additionally, despite Plaintiff's suggestion to the contrary, Ms. Paul's detailed averments underscore that Plaintiff's offer to set aside the transactional data request will not sufficiently minimize this burden.

As Kroger points out, Plaintiff has failed to address the substance of its burden argument in any meaningful way. At most, Plaintiff has dismissed Kroger's documented concerns out of hand, offering nothing more than unsupported and wholly conclusory assertions of ease. Moreover, in the cursory treatment of Kroger's demonstrated burden, Plaintiff has not pointed to any hardship she will suffer as a result of a short stay of discovery. Beyond this circumstance, this case remains in the very early litigation stage and a stay likely will reduce the burden on the Court. Additionally, the motions to dismiss and to strike are fully briefed and there should not be a lengthy delay in their resolution. Accordingly, relying on Kroger's uncontroverted evidence and weighing the additional factors, the Court concludes that a stay of all discovery pending resolution of the motions to dismiss and to strike the class allegations is warranted.

## IV.

For the foregoing reasons, the Court finds that Defendant Kroger has carried its burden to show that a stay of discovery is warranted. The Court, therefore, exercises its discretion to conclude that a temporary stay is appropriate in this case. Accordingly, the Motion to Stay Discovery is **GRANTED**. (ECF No. 25.) All discovery in this case is **STAYED** pending resolution of the motions to dismiss and to strike the class allegations. Defendant's request for oral argument is **DENIED.**

**IT IS SO ORDERED.**

Date: June 28, 2021	/s/ *Elizabeth A. Preston Deavers*
ELIZABETH A. PRESTON DEAVERS
UNITED STATES MAGISTRATE JUDGE