# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| **JUDY KIRKBRIDE,** *et al.*, | : | |
| | : | |
| *individually, and on behalf of* | : | |
| *all others similarly situated,* | : | **Case No. 2:21-cv-0022** |
| | : | |
| **Plaintiffs,** | : | **Chief Judge Algenon L. Marbley** |
| | : | |
| v. | : | **Magistrate Judge Elizabeth P. Deavers** |
| | : | |
| **THE KROGER CO.,** | : | |
| | : | |
| **Defendant.** | : | |

## OPINION & ORDER

This matter is before the Court on Defendant's Motion to Dismiss (ECF No. 32) and Defendant's Motion to Strike Class Allegations (ECF No. 35). For the reasons that follow, Plaintiffs' request for injunctive relief is **STRICKEN**, as are their class allegations under Rule 23(b)(1) and (b)(2). Defendant's Motions are **DENIED** in all other respects.

## I.  BACKGROUND

### A.  Factual Allegations and Procedural Posture

Named Plaintiffs, residents of Ohio and Texas, bring this case on behalf of a putative class "defined as all persons in the United States who paid for, in full or in part, a prescription generic drug that Kroger included in its Rx Savings Club, and who were insured for the purchase through a third-party payor." (ECF No. 30 ¶ 28). Plaintiffs also define subclasses in Ohio and Texas, with otherwise identical parameters to the nationwide class. (*Id.* ¶¶ 29–30). As alleged, Defendant Kroger harmed Plaintiffs and the class through "a fraudulent and deceptive pricing scheme to overcharge customers with third-party insurance providers . . . on purchases of generic prescription

medication." (*Id.* ¶ 1). Plaintiffs seek recovery under theories of fraud, unjust enrichment, and negligent misrepresentation.

At its core, Plaintiffs' case concerns Kroger's definition of its "usual and customary" prices, which are used to calculate copayments for insured customers. (*Id.*). According to the National Council for Prescription Drug Programs ("NCPDP"),[1] "usual and customary" means the "[a]mount charged cash customers for the prescription exclusive of sales tax or other amounts claimed." (*Id.* ¶ 17 (quoting NCPDP Reference Manual)). Plaintiffs allege that pharmacy benefit managers, following the NCPDP definition, include "any discounts or special promotions," such as "senior discounts, frequent shopper discounts and other special discounts offered to attract customers," and exclude any membership fees for savings clubs. (*Id.* ¶ 18 (quoting Express Scripts Pharmacy Network Manual and Prime Therapeutics LLC Pharmacy Provider Manual)).

Since 2018, Kroger has offered an "Rx Savings Club" that "provides deep discounts to cash purchasers on many commonly prescribed generic drugs." (*Id.* ¶ 21). Membership costs $36 per year for individuals or $72 per year for families.[2] That cost, however, is quickly eclipsed by

---

[1] The NCPDP "is a non-profit organization that develops industry standards for electronic healthcare transactions used in prescribing, dispensing, monitoring, managing, and paying for medications and pharmacy services." (*Id.* ¶ 15 n.1). Per the Amended Complaint, "Kroger follows [the NCPDP's] uniform process at its pharmacies for each prescription drug transaction." (*Id.* ¶ 15).

[2] Despite being pled in the Original Complaint (*see* ECF No. 1 ¶ 17), the existence and amount of the membership fee are not alleged in the Amended Complaint. At Kroger's request (ECF No. 32-1 at 2 n.2), the Court takes judicial notice of the membership fee, which is "accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). Such sources include Kroger's December 12, 2018 press release (linked in their Motion), as well as the public website (krogersc.com) from which Plaintiffs collected their pricing samples. (*See* ECF No. 30 ¶¶ 24–25). The membership fee appropriately may be considered at this stage without converting the Motion to Dismiss into one for summary judgment. *See Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir. 1997) ("In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although *matters of public record*, orders, *items appearing in the record of the case*, and exhibits attached to the complaint,

discounts as high as 80 or 90%. (*Id.* ¶¶ 24–25). Some prescriptions even are free. (*Id.* ¶ 21). "Because these discounts are so attractive, most of Kroger's cash-paying customers now pay the [Savings Club] price. In other words, the [Savings Club] price is now the price at which Kroger sells generic prescriptions to cash-paying customers as a usual and customary matter." (*Id.* ¶ 22). Yet, for customers with third-party insurance, Kroger allegedly has failed to factor the Savings Club discounts into its "usual and customary" prices, contrary to industry standards. (*Id.* ¶¶ 22–23).

As a result, Kroger charged copayments to each named Plaintiff that exceeded the Savings Club price of the prescription. Plaintiff Kirkbride was overcharged by $1.97 on one purchase, Plaintiff Berger by $287.10 across 40 purchases, Plaintiff Hatfield by $237.96 across 18 purchases, Plaintiff Mackert by $72.90 across 24 purchases, and Plaintiff Lewis by $71.91 across 5 purchases. (*Id.* ¶¶ 4–8). Each named Plaintiff alleges that he or she "paid the inflated copayments with the understanding that the U&C [usual and customary] price that Kroger reported to [Plaintiff] and the NCPDP were the actual U&C prices paid by cash-paying customers, and that the copayments that Kroger charged [Plaintiff] were based on an accurate U&C [price]." (*Id.*). Each also alleges they "would not have paid the inflated copayments but for Kroger's wrongful conduct." (*Id.*). "Put another way, the gravamen of this action . . . is that, contrary to industry standards, Kroger deceived Plaintiffs and class members by reporting U&C prices above the prices available to members of the [Savings Club] program (who are, by definition, cash-paying customers), and then charging Plaintiffs and class members inflated copayments." (*Id.* ¶ 2).

---

also may be taken into account." (emphasis added) (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990))).

Kroger moves to dismiss the Amended Complaint under Rules 9(b) and 12(b)(6). (ECF No. 32). In the alternative, Kroger moves to dismiss or strike the request for injunctive relief under Rules 12(b)(1) or 12(f), and to strike the class allegations under Rule 23(d)(1)(D). (ECF Nos. 32, 35). After full briefing (ECF Nos. 37 & 39; Nos. 38 & 40), these matters stand ripe for adjudication.

### B. Parallel Litigation

In their response brief opposing dismissal, Plaintiffs identify three other class actions pending against national pharmacy chains (not including Kroger) in federal courts across the country, all concerning similar allegations of inflating "usual and customary" prices relative to savings club prices. (ECF No. 37 at 2). As summarized below, each of these cases has proceeded beyond the pleadings stage:

1. *Corcoran v. CVS Health Corp.*, Case No. 4:15-cv-03504 (N.D. Cal.) partly survived dismissal on March 14, 2016. *See* 169 F. Supp. 3d 970 (ECF No. 96 on case docket). The case went to trial in 2021, with a verdict for CVS. (ECF No. 611 on case docket).

2. *Forth v. Walgreen Co.*, Case No. 1:17-cv-02246 (N.D. Ill.) largely survived dismissal on March 9, 2018. *See* 2018 WL 1235015 (ECF No. 91 on case docket). The case remains pending.

3. *Stafford v. Rite Aid Corp.*, Case No. 3:17-cv-01340 (S.D. Cal.) fully survived dismissal on September 28, 2018. *See* 2018 WL 4680043 (ECF No. 41 on case docket). The case is stayed for mediation. (ECF No. 212 on case docket).

These cases are discussed in further detail in the sections that follow.[3]

---

[3] Plaintiffs also name eight non-class action cases brought by health insurers, unions, the federal government, and third-party payors, on similar allegations. (ECF No. 37 at 2 n.2). These uniformly survived dismissal:
  1. *BCBSM, Inc. v. Walgreen Co.*, Case No. 1:20-cv-01853 (N.D. Ill.) largely survived dismissal on January 8, 2021. (ECF No. 121 on case docket). The case remains pending.
  2. *Blue Cross & Blue Shield of N. Carolina v. Rite Aid Corp.*, Case No. 0:20-cv-01731

## II.   STANDARD OF REVIEW

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). When evaluating such a motion, "[a]ll factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party." *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008). But the court "need not . . . accept unwarranted factual inferences." *Id.* Complaints must state "more than a bare assertion of legal conclusions to survive a motion to dismiss." *Horn v. Husqvarna Consumer Outdoor Prods. N.A., Inc.*, 2013 WL 693119, at *1 (S.D. Ohio Feb. 26, 2013) (citing *Allard v. Weitzman*, 991 F.2d 1236, 1240 (6th Cir. 1993)). Rather, a plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550

---

(D. Minn.) largely survived dismissal on February 9, 2021. (ECF No. 66 on case docket). The case remains pending.

3.  *United States ex rel. Strauser v. Stephen L. LaFrance Holdings, Inc.*, Case No. 4:18-cv-00673 (N.D. Okla.) fully survived dismissal on March 7, 2019. (ECF No. 144 on case docket). The case remains pending.

4.  *Sheet Metal Workers Loc. No. 20 Welfare & Benefit Fund v. CVS Health Corp.*, Case No. 1:16-cv-00046 (D.R.I.) fully survived dismissal on November 1, 2016. (ECF No. 37 on case docket). The case remains pending.

5.  *United States ex rel. Garbe v. Kmart Corp.*, Case No. 3:12-cv-0881 (S.D. Ill.) fully survived dismissal on September 18, 2013. (ECF No. 118 on case docket). The case later settled. (ECF No. 506 on case docket).

6.  *United States ex rel. Rahimi v. Rite Aid Corp.*, Case No. 2:11-cv-11940 (E.D. Mich.) largely survived dismissal on April 11, 2018. (ECF No. 70 on case docket). The case later was dismissed due to the "public disclosure bar" of the False Claims Act. (ECF No. 120 on case docket).

7.  *United States ex rel. Proctor v. Safeway Inc.*, Case No. 3:11-cv-03406 (C.D. Ill.) fully survived dismissal on December 1, 2016. (ECF No. 71 on case docket). Safeway won the case on summary judgment. (ECF No. 202 on case docket).

8.  *United States ex rel. Schutte v. SuperValu, Inc.*, Case No. 3:11-cv-03290 (C.D. Ill.) fully survived dismissal on October 21, 2016. (ECF No. 65 on case docket). SuperValu won the case on summary judgment. (ECF No. 333 on case docket).

U.S. 544, 555 (2007). The claim to relief must be "'plausible on its face,'" with "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).

When a plaintiff's claim sounds in fraud, the plaintiff also must satisfy Federal Rule of Civil Procedure 9(b). Rule 9(b) reads: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." The requirement "reflects the rulemakers' additional understanding that, in cases involving fraud and mistake, a more specific form of notice is necessary to permit a defendant to draft a responsive pleading." *United States ex rel. SNAPP, Inc. v. Ford Motor Co.*, 532 F.3d 496, 504 (6th Cir. 2008) (internal quotation marks omitted). The Sixth Circuit has explained that to satisfy Rule 9(b), a plaintiff must at a minimum "allege the time, place, and content of the alleged misrepresentation," as well as "the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud." *Bennett v. MIS Corp.*, 607 F.3d 1076, 1100 (6th Cir. 2010) (internal quotation marks omitted). "Rule 9(b) does not require omniscience; rather, the Rule requires that the circumstances of the fraud be pled with enough specificity to put defendants on notice as to the nature of the claim." *Williams v. Duke Energy Int'l, Inc.*, 681 F.3d 788, 803 (6th Cir. 2012) (quoting *Michaels Bldg. Co. v. Ameritrust Co., N.A.*, 848 F.2d 674, 680 (6th Cir. 1988)).

### III.  MOTION TO DISMISS

As a preliminary matter, the Court notes that several of the arguments raised in Kroger's Motion to Dismiss have been considered in the parallel litigation, including *Corcoran*, *Forth*, and *Stafford*. Kroger urges the Court to reject those "other U&C cases" because they "were based on different laws and different facts pled." (ECF No. 39 at 2). Kroger is correct in one regard: none of those cases controls the outcome here. Still, Kroger underestimates the persuasive value of

similar allegations tested, and mostly sustained, in district courts across the country. To grant Kroger a full dismissal would leave this case the sole outlier amongst the eleven named in Plaintiffs' response brief.

As such, where the applicable facts and legal standards compare to the cases against other pharmacies, the Court intends to follow the reasoned path set out in *Corcoran*, *Forth*, *Stafford*, and other "U&C" cases. With that clarification, the Court begins its analysis of the counts alleged.

### A. Fraud

Plaintiffs' fraud claim encompasses three distinct theories of liability: "direct misrepresentations to Plaintiffs in the form of inflated copayments," "indirect misrepresentations to Plaintiffs by reporting the inflated U&C prices to NCPDP, which [Kroger] knew would be relayed to them in the form of inflated copayments," and "material omissions by failing to disclose [the] true U&C prices." (ECF No. 37 at 1). Kroger's arguments for dismissal map onto these theories. Kroger contends that: (1) Plaintiffs have not alleged plausibly that Kroger made misrepresentations, either to them or to a third-party; (2) Plaintiffs cannot state a claim for concealment because Kroger had no duty of disclosure and did, in fact, publish its "usual and customary" prices; and (3) Plaintiffs' fraud allegations fail under Rule 9(b). (ECF No. 32-1 at 6–13).

### 1. Direct and Indirect Misrepresentations

Fraud by misrepresentation is a topic extensively discussed in the parallel litigation. Kroger describes Plaintiffs' allegation of a direct misrepresentation as "conclusory" and faults the Amended Complaint for not alleging the form in which "usual and customary" prices were communicated. (*Id.* at 6). Two other courts, however, have viewed the copayment itself as a plausible misrepresentation. In *Corcoran*, the court "agree[d] with Plaintiffs that the [complaint]

alleges CVS made a false representation every time it charged Plaintiffs for copays that were calculated based on inflated U & C prices." 169 F. Supp. 3d at 988. And in *Forth*, the court found it plausible "that Walgreens communicated misstatements to the Consumer Plaintiffs each time it charged them cost-sharing amounts based on higher-than-PSC [Prescription Savings Club] prices." 2018 WL 1235015, at *6. Here too, Plaintiffs' allegation that "Kroger made misrepresentations to Plaintiffs and class members each time it charged them for copays that were calculated based on its inflated U&C prices" (ECF No. 30 ¶ 40) is enough to ground a plausible theory of fraud by direct misrepresentation.

Plaintiffs' theory of indirect misrepresentation survives as well. Kroger claims "it is not plausible that Kroger reports the U&C price of the drug to a non-profit industry standard-setting organization [*i.e.*, the NCPDP] as opposed to the TPPs [third-party payors], which is what Kirkbride alleged in the original Complaint." (ECF No. 32-1 at 7). Kroger, however, is the only party in a position to know its procedures for submitting claims to insurers—not Plaintiffs, and not the Court. Discovery is necessary to discern the relationship between Kroger, the NCPDP, and third-party payors. Even if discovery reveals a mischaracterization in the Amended Complaint, that shortcoming has no bearing on Kroger's ability to "prepare an informed responsive pleading." *Allen v. Anderson Windows, Inc.*, 913 F. Supp. 2d 490, 499 (S.D. Ohio 2012). *See also Corcoran*, 169 F. Supp. 3d at 986 (denying motion to dismiss where "all of the missing details are likely in the possession of CVS").

Kroger cites Ohio and Texas cases[4] that purportedly foreclose an indirect misrepresentation theory (ECF No. 32-1 at 8–10); but none requires dismissal here. Kroger cites *Sooy v. Ross*

---

[4] Under Ohio's choice of law rules, "the law of the place of the injury controls unless another jurisdiction has a more significant relationship to the lawsuit." *Morgan v. Biro Mfg. Co.*, 474 N.E.2d 286, 289 (Ohio 1984). The Sixth Circuit, citing *Morgan*, has found that "the place of the

8

*Incineration Services* for the proposition that, under Ohio law, "a plaintiff claiming that a third party relied on a misrepresentation made by the defendant and that the plaintiff suffered injury thereby does not state a valid cause of action for fraud." 1999 WL 975112, at *10 (Ohio Ct. App. Oct. 20, 1999). The Amended Complaint, however, does not suggest that Plaintiffs were injured by the reliance of the NCPDP or third-party payors. Rather, it alleges that Kroger reported inflated "usual and customary" prices on the NCPDP form, which then were baked into the copayments that Kroger charged to Plaintiffs. (*See* ECF No. 30 ¶¶ 4–8, 16–17, 19). The injury flows from Plaintiffs' *own* detrimental reliance on Kroger's misrepresentations, thus distinguishing *Sooy* and related cases. (*See id.* ¶ 42 ("Kroger intended to induce Plaintiffs and other consumers to rely on its misrepresentations and omissions . . . and, as a result, [to] pay copayments higher than the actual U&C prices.")).

Kroger's argument under Texas law fares no better. Kroger's cited case confirms that "[a]n indirect misrepresentation claim can be maintained where the defendant intended, or had 'reason to expect,' that the third-party would receive and rely upon the misrepresentation." *Admiral Ins. Co. v. Heath Holdings USA, Inc.*, 2004 WL 1144062, at *5 (N.D. Tex. May 21, 2004) (quoting *Ernst & Young, L.L.P. v. Pac. Mut. Life Ins. Co.*, 51 S.W.3d 573, 578 (Tex. 2001)). Such is the case here: Plaintiffs, who are a "third-party" vis-à-vis Kroger's price reporting to the NCPDP, were intended to receive and rely upon the inflated copayments.

Thus, Plaintiffs have pled Kroger's misrepresentations sufficiently. Plaintiffs have viable fraud claims under theories of both direct and indirect misrepresentations.

---

injury controls in a consumer-protection lawsuit, requiring application of the home-state law of each potential class member." *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 947 (6th Cir. 2011). Since the named Plaintiffs are from Ohio and Texas, both states' laws are considered.

## 2. Omissions

Regarding Plaintiffs' theory of fraud by omission, Kroger raises two arguments: first, that it had no duty to disclose its "usual and customary" prices; and second, that it did, in fact, publish its retail and Savings Club prices online. (ECF No. 32-1 at 10–12). Plaintiffs respond that a party assumes a duty of disclosure "where disclosure is necessary to clarify misleading partial representations." (ECF No. 37 at 10). Ohio and Texas law both support that point. *See Blon v. Bank One, Akron, N.A.*, 519 N.E.2d 363, 367 (Ohio 1988); *United Healthcare Servs., Inc. v. Next Health, LLC*, 2021 WL 764035, at *5 (N.D. Tex. Feb. 26, 2021). Plaintiffs' argument also found traction in the parallel litigation. *See BCBSM, Inc.*, 512 F. Supp. 3d at 855 ("A half-truth is a disclosure that is misleading because it omits important information. At this stage, Plaintiffs' allegations [regarding] Walgreens' repeated submissions of false U&C prices in its forms . . . when actually charging customers less could give rise to a duty to disclose." (internal citation omitted)).[5]

Kroger's answer to *BCBSM* falls short. According to Kroger's reply brief, there can be no "partial, misleading disclosure" because the Amended Complaint lacks an allegation "that Kroger, directly or indirectly, passed on the U&C price to Plaintiffs." (ECF No. 39 at 9–10). As discussed above, Plaintiffs have stated a viable claim for direct and indirect misrepresentations via the inflated copayments charged to their pharmacy customers. Insofar as those were misleading partial representations, a corrective duty of disclosure could attach.

Meanwhile, Kroger's arguments about the publicity of its Savings Club prices also have been rejected in the parallel litigation. In *Corcoran*, the court wrote:

---

[5] By contrast, the court in *Corcoran* found no duty to disclose, reasoning that a pharmacist's "duty of care to *accurately fill* a prescription" does not extend to "matters of drug pricing." 169 F. Supp. 3d at 989. The court did not have occasion, however, to examine the partial disclosure theory discussed in *BCBSM*.

> This argument ignores Plaintiffs' theory. The gravamen of the [complaint] is not that CVS concealed the existence of the . . . [savings] program. Rather, it is that CVS deceived Plaintiffs by reporting U & C prices significantly above the prices available to members of the [savings] program, and then charged Plaintiffs inflated copays [as] a result of their deceitful practice.

169 F. Supp. 3d at 987. The same was true in *Stafford*, where the court wrote (in analyzing the "fraudulent prong" of California's Unfair Competition Law):

> The fact that Rite Aid "publicly advertised the [savings] program and the prices of the generic drugs available under it" does not save Rite Aid from potentially fraudulent conduct: Rite Aid's failure to include the Rx Program pricing in its reporting of the U&C prices which inflated Stafford's copayments, thus "concealing its true U&C price."

2018 WL 4680043, at *8.

The Court sees no basis to reach a different outcome here. Kroger's publication of its Savings Club prices online does not preclude it from fraudulently omitting that information at the register. Therefore, Plaintiffs' fraud claims are viable under an omission theory as well.

### 3. Particularity

Lastly, Kroger argues that Plaintiffs' fraud allegations fall short of the heightened pleading standard in Rule 9(b). Kroger frames the misrepresentation theories as conflicting with the omission theory (ECF No. 32-1 at 12 ("[I]t cannot be both; either Kroger misrepresented the alleged true U&C price or it concealed it somehow.")), and again claims confusion over the form of the misrepresentation. (*Id.* at 13 ("In other words, Kroger cannot know what Plaintiffs are claiming is the fraud.")).

Yet, as discussed above, each theory is plausible and supported by specific allegations in the Amended Complaint. Like in *Corcoran*, the Amended Complaint states "the manner in which [Kroger] allegedly perpetrated the fraud," and contains "detailed information regarding Plaintiffs' claims, including for each of them: the number of generic drugs purchased, a time frame in which

11

such purchases were made, the state in which the purchases were made, and the total inflated amount they were charged as a result of inflated U & C prices. Plaintiffs need not allege more." 169 F. Supp. 3d at 986 (internal citation omitted). (*See* ECF No. 30 ¶¶ 4–8, 40–42). Further, even supposing Plaintiffs' fraud theories are in conflict, alternate pleading is permitted by Rule 8(d). The fraud claims may proceed as pled.

## B.  Unjust Enrichment

Plaintiffs' next cause of action is for unjust enrichment. Kroger urges dismissal on three grounds: (1) Plaintiffs have not met heightened pleading standards; (2) "Plaintiff Kirkbride has not pled a benefit conferred on Kroger"; and (3) Texas law recognizes unjust enrichment as "a remedy, not a cause of action." (ECF No. 32-1 at 13–15). The Court already has rejected the first, it being an extension of the particularity argument Kroger raised against the fraud claims. Consequently, the Court may proceed directly to Kroger's second argument.

A "benefit conferred by a plaintiff upon a defendant" is one required element of an unjust enrichment claim. *See Johnson v. Microsoft Corp.*, 834 N.E.2d 791, 799 (Ohio 2005) (internal quotation marks omitted). Kroger asserts that Plaintiff Kirkbride cannot meet that element because her overcharge, at $1.97, is less than the $36 Savings Club membership fee. (ECF No. 32-1 at 14). This presumes, though, that Plaintiff Kirkbride would have to join the Savings Club in order to access Kroger's "usual and customary" prices, which is not Plaintiffs' theory of the case. Rather, Plaintiffs allege that industry practice was to use savings club prices when submitting insurance claims and calculating copayments, *without* considering the membership fee. (ECF No. 30 ¶ 18 ("Membership fees for savings clubs, if any, are not supposed to be factored into the U&C price.")). On a motion to dismiss, that allegation must be taken as true. Thus, as pled, Plaintiff Kirkbride has conferred a benefit on Kroger in the amount of her overcharge.

Third, Kroger contends that Plaintiffs Mackert and Lewis may not maintain unjust enrichment claims under Texas law. Texas courts appear divided on whether unjust enrichment is a cause of action, as opposed to a remedy.[6] For present purposes, however, this debate is not dispositive. Plaintiffs identify several cases in which Texas courts rejected an independent cause of action for unjust enrichment yet did *not* dismiss the claims. (*See* ECF No. 37 at 14). Rather, those courts read the unjust enrichment claims "as pleading an equitable common law claim for money had and received." *Janvey v. Alguire*, 846 F. Supp. 2d 662, 674 (N.D. Tex. 2011) (noting "the two claims are substantively identical"); *see also David O. Kemp, P.C. v. Nationwide Agribusiness Ins. Co.*, 2012 WL 13019688, at *2 (N.D. Tex. June 12, 2012) (analyzing unjust enrichment claim "under both the substantive unjust enrichment and money had and received standards"). Kroger's reply brief provides no basis for distinguishing these cases. (*See* ECF No. 39 at 13). With that observation, this Court need not wade further into the Texan thicket. Even if this Court were to resolve the split as Kroger urges, dismissal would not follow. The Court will reserve for another day the question of whether the Texas Plaintiffs' unjust enrichment claims must be recast as "money had and received."

Having rejected each of Kroger's arguments, the Court determines that the unjust enrichment claims may proceed for all Plaintiffs.

---

[6] *Compare Taylor v. Trevino*, 2021 WL 347566, at *4 (N.D. Tex. Feb. 2, 2021) ("The court has previously held that Texas law does not recognize an independent cause of action for unjust enrichment."); *and Fisher v. Blue Cross & Blue Shield of Texas, Inc.*, 2015 WL 5603711, at *12 (N.D. Tex. Sept. 23, 2015) ("[T]he vast majority of courts, including this court, now hold that unjust enrichment is not a separate cause of action."); *with Banion v. Geovera Specialty Ins. Co.*, 2016 WL 7242536, at *3 (S.D. Tex. Dec. 15, 2016) ("Texas courts recognize unjust enrichment as an independent cause of action."). *See also Elias v. Pilo*, 781 F. App'x 336, 338 n.3 (5th Cir. 2019) (discussing the split authority but declining to resolve it).

### C. Negligent Misrepresentation

Plaintiffs' third and final cause of action is for negligent misrepresentation. This claim, in contrast to the previous two, is brought only by the Texas Plaintiffs.[7] Two of Kroger's arguments for dismissal were rejected above: that Plaintiffs failed to plead an affirmative misrepresentation with particularity, and that any misrepresentations Kroger made to a third party are not alleged to have reached Plaintiffs. (ECF No. 32-1 at 16–18). *See supra* Sections III.A.1, III.A.3. The remaining argument, concerning Kroger's duty of disclosure (ECF No. 32-1 at 15–16), requires further analysis.

Under Texas law, "non-disclosures cannot be negligent unless there is a duty to disclose." *Coburn Supply Co. v. Kohler Co.*, 342 F.3d 372, 377 (5th Cir. 2003) (citing *Fleming v. Tex. Coastal Bank of Pasadena*, 67 S.W.3d 459, 461 (Tex. Ct. App. 2002); and *Steptoe v. True*, 38 S.W.3d 213, 219–20 (Tex. Ct. App. 2001)). In considering the fraud claims, this Court found a corrective duty of disclosure could attach to Kroger's partial, misleading representations. *See supra* Section III.A.2. Kroger claims this reasoning should not extend to the negligent misrepresentation context, where Texas courts require a "confidential or fiduciary relationship." (ECF No. 39 at 14).

Kroger's cited authorities, however, do not stand for so strict a limitation. Despite the introductory statement in *Coburn* that "Texas law does not recognize a duty to avoid negligent misrepresentations arising from an arms-length, at-will relationship," 342 F.2d at 377, the Fifth Circuit ultimately reserved the corrective disclosure question. *See id.* at 378 ("Assuming, without deciding," that "an affirmative misrepresentation upon which [plaintiff] justifiably relied . . . could give rise to a duty under Texas law"). Similarly, the *Fleming* court's statement that "[g]enerally, a

---

[7] In the Original Complaint, Plaintiff Kirkbride (a resident of Ohio) did plead negligent misrepresentation. (ECF No. 1 ¶¶ 40–48). That claim was jettisoned in the Amended Complaint.

duty of disclosure arises only in confidential or fiduciary relationships," 67 S.W.3d at 461, does

not foreclose other sources of duty. Two paragraphs later, the *Fleming* court acknowledged it "has

found a general duty to disclose information in arm's-length business transactions if a party makes

a partial disclosure that, although true, conveys a false impression." *Id.* at 461, 462 n.2 (noting the

Texas Supreme Court "reserved the question" in the case *Bradford v. Vento*, 48 S.W.3d 749, 755

(Tex. 2001)).

      Plaintiffs, for their part, cite several Texas cases supporting a corrective disclosure theory.

In *Correct Rx Pharmacy Services, Inc. v. Cornerstone Automation Systems, LLC*, the court

discussed "a line of cases originating from this District suggesting that a legal duty to avoid

negligent misrepresentation exists only in certain circumstances, notably when there is a special

relationship *or a previous representation that requires correction*"—and suggested that the true

duty is broader still. 2018 WL 4680568, at *2 n.5 (N.D. Tex. Sept. 28, 2018) (emphasis added)

("The only limitation is that the representation is made by a defendant in the course of his business,

or in a transaction in which he has a pecuniary interest."). *See also Jetpay Merchant Servs., LLC

v. Miller*, 2007 WL 2701636, at *5 (N.D. Tex. Sept. 17, 2007) (stating, under a negligent

misrepresentation claim, that "[e]ven without a special relationship, there is always a duty to

correct one's own prior false or misleading statement" (quoting *Trs. of Nw. Laundry & Dry

Cleaners Health & Welfare Tr. Fund v. Burzynski*, 27 F.3d 153, 157 (5th Cir. 1994))); *Highland

Crusader Offshore Partners, L.P. v. LifeCare Holdings, Inc.*, 2008 WL 3925272, at *13 (N.D.

Tex. Aug. 27, 2008) (declining to dismiss a negligent misrepresentation claim, and instead

"follow[ing] the Fifth Circuit and Texas court of appeals cases decided after *Coburn* that have held

that a duty to disclose can arise absent a fiduciary duty").

Kroger urges the Court to find *Correct Rx* "an outlier that conflicts with Fifth Circuit case law." (ECF No. 39 at 15). Yet, neither *Correct Rx* nor the other cases discussed herein conflict with *Coburn* and *Fleming*. Accordingly, the balance of authority before the Court holds that Plaintiffs' corrective disclosure theory is viable. "If the plaintiff's allegations can be proven, then the defendants would have had a duty to correct what they had represented to the plaintiff." *Jetpay*, 2007 WL 2701636, at *5. Plaintiffs are entitled to make that attempt, so their negligent misrepresentation claims may proceed.[8] [9]

### D. Injunctive Relief

Kroger also moves to dismiss the request for injunctive relief under Rule 12(b)(1), or to strike it under Rule 12(f). (ECF No. 32-1 at 18–20). The Amended Complaint does not allege that any named Plaintiff anticipates filling future prescriptions at Kroger—in contrast to Plaintiff Kirkbride's explicit allegation in the Original Complaint. (*See* ECF No. 1 ¶ 4). Thus, Kroger argues, because the Amended Complaint does not plead a risk of future injury, no Plaintiff has standing to seek an injunction. (ECF No. 32-1 at 18). In response, Plaintiffs cede that "[n]one of

---

[8] The Court does not reach the parties' arguments on whether a pharmacist holds a "special relationship" with their customers that extends to matters of drug pricing. It should be noted, though, that *Corcoran* weakens Plaintiffs' "special relationship" theory. The court, relying in part on Texas law, rejected similar arguments in support of a "constructive fraud" count and found no duty to disclose drug pricing. 169 F. Supp. 3d at 989 (citing, *inter alia*, *Morgan v. Wal-Mart Stores, Inc.*, 30 S.W.3d 455, 461, 467 (Tex. Ct. App. 2000)). The *Corcoran* court did not have occasion to consider a corrective disclosure theory.

[9] This outcome varies from *Forth*, where negligent misrepresentation claims were dismissed. The *Forth* ruling rested on Illinois law, which is more restrictive than the Texas law discussed herein. "[I]n the context of a negligent misrepresentation claim, the Illinois Supreme Court only recognizes a duty to communicate accurate information where necessary 'to avoid negligently conveying false information that results in physical injury to a person or harm to property,' or 'to avoid negligently conveying false information where one is in the business of supplying information for the guidance of others in their business transactions.'" *Forth*, 2018 WL 1235015, at *7 (quoting *Brogan v. Mitchell Int'l, Inc.*, 692 N.E.2d 276, 278 (Ill. 1998)).

the Plaintiffs are [*sic*] seeking injunctive relief." (ECF No. 37 at 1 n.1). Rather than perform a full standing inquiry on what appears to be an abandoned vestige of the Original Complaint, the Court will **STRIKE** the request for injunctive relief—specifically, items (g) and (h) of the Amended Complaint's Prayer for Relief—as "impertinent" under Rule 12(f).

## IV.   MOTION TO STRIKE CLASS ALLEGATIONS

Separately, Kroger moves to strike the class allegations in the Amended Complaint pursuant to Rule 23(d)(1)(D). (ECF No. 35). They contend that all proposed classes are pled defectively and that discovery would be futile. The Court addresses these arguments next.

### A.  Legal Framework

To certify any class, a court must conduct a "rigorous analysis," *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350–51 (2011), in which "[t]he party seeking the class certification bears the burden of proof." *In re Am. Med. Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). First, the putative class must meet Rule 23(a), which permits class actions only where:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

"Second, the proposed class must satisfy at least one of the three requirements listed in Rule 23(b)." *Dukes*, 564 U.S. at 345. Here, Plaintiffs assert that the action qualifies under Rule 23(b)(3), where "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

Plaintiffs do not intend to seek certification under subsections (b)(1) or (b)(2).[10] (*See* ECF No. 38 at 5 n.1).

If the Court determines the Complaint does not allege facts that would satisfy the demands of Rule 23, it "may . . . require that the pleadings be amended to eliminate allegations about representation of absent persons" (*i.e.*, class allegations), prior to any motion for class certification. Fed. R. Civ. P. 23(d)(1)(D); *see also Geary v. Green Tree Servicing, LLC*, 2015 WL 1286347, at *16 (S.D. Ohio Mar. 20, 2015) (citing *Pilgrim v. Universal Health Card, LLC*, 660 F.3d 943, 949 (6th Cir. 2011)).

This Court repeatedly has held, however, that "courts should exercise caution when striking class action allegations based solely on the pleadings, because class determination generally involves considerations that are enmeshed in the factual and legal issues comprising the plaintiff's cause of action." *Id.* (Marbley, J.) (quoting *Sauter v. CVS Pharmacy, Inc.*, 2014 WL 1814076, at *2 (S.D. Ohio May 7, 2014)); *see also Progressive Health & Rehab. Corp. v. Quinn Med., Inc.*, 323 F.R.D. 242, 244–45 (S.D. Ohio 2017) (Marbley, J.); *Mazzola v. Roomster Corp.*, 849 F. Supp. 2d 395, 410 (S.D.N.Y. 2012) ("[A] motion to strike class actions . . . is even more disfavored because it requires a reviewing court to preemptively terminate the class aspects of . . . litigation, solely on the basis of what is alleged in the complaint, and before plaintiffs are permitted to

---

[10] Rule 23(b)(1) allows a class to be maintained where separate actions "would create a risk of: (A) inconsistent or varying adjudications . . . that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications . . . that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Rule 23(b)(2) applies when "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *See also Dukes*, 564 U.S. at 345–46 & n.2.

complete the discovery to which they would otherwise be entitled on questions relevant to class certification").

Nonetheless, "Rule 23(c)(1)(A) says that the district court should decide whether to certify a class '[a]t an early practicable time' in the litigation, and nothing in the rules says that the court must await a motion by the plaintiffs." *Pilgrim*, 660 F.3d at 949. Where discovery and factual development would not "alter [a] central defect in [the] class claim," it may be appropriate to strike class allegations on a defendant's motion. *Id.*

### B. Class Allegations under Rule 23(b)(1) and (b)(2)

First, Kroger moves to strike the class allegations pertaining to Rule 23(b)(1) or (b)(2), specifically those appearing in Paragraph 37 of the Amended Complaint. (ECF No. 35 at 6–9). Plaintiffs' response brief waives opposition and indicates that they intend to seek certification only under Rule 23(b)(3). (ECF No. 39 at 5 n.1). As such, it is proper to **STRIKE** Paragraph 37.

### C. Class Allegations under Rule 23(b)(3)

All remaining class allegations in the Amended Complaint pertain to Rule 23(b)(3). Kroger contends that, for each cause of action, "individual questions of fact would overwhelm any common questions," making a class action "inferior and unmanageable." (ECF No. 35 at 9). Kroger advances its arguments in two parts: first against the fraud and negligent misrepresentation counts, then against the unjust enrichment count.

#### 1. *Fraud and Negligent Misrepresentation*

Under the fraud and negligent misrepresentation counts, Kroger argues that individual questions of reliance and damages preclude class treatment. (*Id.* at 10). Fraud-based claims "may be unsuited for treatment as a class action if there was material variation . . . in the kinds or degrees of reliance by the persons to whom [the misrepresentations] were addressed." *Hale v. Enerco Grp.,*

*Inc.*, 288 F.R.D. 139, 148 (N.D. Ohio 2012) (quoting Fed. R. Civ. P. 23(b)(3), Advisory Committee Notes to the 1966 Amendment). *See also Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 398 (6th Cir. 1998) (claims requiring "proof of what statements were made to a particular person, how the person interpreted those statements, and whether the person justifiably relied on the statements to his detriment . . . are typically inappropriate for class treatment").

*Hale* also recognizes, though, that courts have given class treatment to fraud-based claims "after deciding that reliance could be presumed for the entire class." 288 F.R.D. at 148. Plaintiffs offer a persuasive case that a presumption could be warranted here. As alleged, Kroger made its misrepresentations and omissions in a common manner (*i.e.*, by charging copayments calculated from an inflated usual and customary price), and class members responded by paying those charges. This mirrors the setup in *Stanich v. Travelers Indemnity Co.*, where the plaintiffs "allege[d] a set of uniform disclosures that are not materially varied." 249 F.R.D. 506, 521 (N.D. Ohio 2008). Here, as in *Stanich*, "a fact-finder could reasonably infer that the class members' purchase . . . constitutes proof of reliance . . . that is common to all class members." *Id.*; *see also Cope v. Metro. Life Ins. Co.*, 696 N.E.2d 1001, 1008 (Ohio 1998) ("When there is nondisclosure of a material fact, courts permit inferences or presumptions of inducement and reliance. Thus, cases involving common omissions across the entire class are generally certified as class actions, notwithstanding the need for each class member to prove these elements.").

Kroger's arguments against classwide reliance fail to persuade. Kroger reasons "there will certainly be putative class members who are not price sensitive," and who "may not object" to the overpayment due to their interests in "convenience" and "brand loyal[ty]." (ECF No. 35 at 11). In addition to resting on "'speculation and surmise,'" *Bridging Communities Inc. v. Top Flite Fin. Inc.*, 843 F.3d 1119, 1125 (6th Cir. 2016), Kroger's theory does not square with the allegations.

20

Had Kroger used its Savings Club prices as "usual and customary" when calculating copayments, as Plaintiffs claim it should have, then Plaintiffs would have paid a lower price *without* sacrificing convenience or brand loyalty. That Plaintiffs paid a higher rate, for no marginal benefit, is contrary to basic microeconomics—unless it is evidence of reliance. The same flaw infects Kroger's remaining arguments—that other pharmacies might have charged more, and that class members might have individualized reasons for not joining the Savings Club. (ECF No. 35 at 11). Again, had Kroger reported its Savings Club prices as "usual and customary," Plaintiffs would have been able to pay a lower price without regard to other pharmacies' rates and without joining the Savings Club.

Regarding damages, Kroger identifies several sources of individual variation: (a) whether the customer's "out-of-pocket payments on covered drugs exceeded the Savings Club prices by at least $36/year"; (b) whether the "prescriptions were covered by the person's insurance"; and (c) whether "the person would have hit their out-of-pocket maximum anyway." (ECF No. 35 at 12–13). The first, as stated above, improperly assumes Plaintiffs would have to join the Savings Club to access Kroger's "usual and customary" prices. As to the others, "recognition that individual damages calculations do not preclude class certification under Rule 23(b)(3) is well nigh universal." *In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig.*, 722 F.3d 838, 861 (6th Cir. 2013) (internal quotation marks omitted). Both variables likely can be extracted from transaction data in Kroger's possession, then factored into "a mathematical or formulaic calculation" of damages. *Treviso v. Nat'l Football Museum, Inc.*, 2018 WL 4608197, at *10 (N.D. Ohio Sept. 25, 2018) (quoting *Ibe v. Jones*, 836 F.3d 516, 529 (5th Cir. 2016)). The *Corcoran* court reached the same conclusion: "For the percentage of putative class members whose insurance provided them with out-of-pocket caps, damages can be determined by calculating the difference

21

between those caps and what they would have paid had defendants submitted the correct U&C price. That some of these calculations will involve individualized and fact-specific determinations is insufficient to defeat class certification." 2017 WL 3873709, at *8 (N.D. Cal. Sept. 5, 2017).[11]

As such, individual questions of reliance and damages are not a certain barrier to certification of the fraud and negligent misrepresentation claims. Absent a "central defect in this class claim," *Pilgrim*, 660 F.3d at 949, "[t]he Court deems it prudent to assess the propriety of class certification in the context of a fully briefed class certification motion rather than in the context of a motion to strike class claims at the pleading stage." *Geary*, 2015 WL 1286347, at *17.

### 2. *Unjust Enrichment*

Turning to the unjust enrichment count, Kroger argues that an individualized inquiry is necessary to discern whether Kroger's retention of the alleged overpayments is unjust under the circumstances. (ECF No. 35 at 14). Quoting *Vega v. T-Mobile USA, Inc.*, Kroger states that "common questions will rarely, if ever, predominate an unjust enrichment claim, the resolution of which turns on individualized facts." 564 F.3d 1256, 1274 (11th Cir. 2009).

Yet, there is no prohibition, as Plaintiffs' cited authorities illustrate. *See, e.g.*, *Youngblood v. Linebarger Googan Blair & Sampson, LLP*, 2012 WL 4597990, at *8 (W.D. Tenn. Sept. 30, 2012) ("Courts routinely certify classes based on claims of unjust enrichment or conversion."); *Fenley v. Wood Grp. Mustang, Inc.*, 325 F.R.D. 232, 252 n.8 (S.D. Ohio 2018) (rejecting argument that "claims for unjust enrichment are 'inherently unsuitable for class certification'"). It remains for the Court to determine whether "the questions common to the class are 'at the heart of the

---

[11] The Ninth Circuit reversed on other grounds, holding that the district court's class definition was too *narrow* in that it limited participation to customers with specific pharmacy benefits managers. 779 F. App'x 431, 434 (9th Cir. 2019). The class was certified again on remand, consistent with the Ninth Circuit's instructions. (*See* ECF No. 371 on case docket).

litigation.'" *Pfaff v. Whole Foods Mkt. Grp. Inc.*, 2010 WL 3834240, at *6 (N.D. Ohio Sept. 29, 2010) (certifying unjust enrichment class where the "claims pertain[ed] largely to actions taken by Whole Foods vis-a-vis the class").

The individualized circumstances advanced by Kroger do not favor striking the class allegations preemptively. Kroger offers the example of a person who "was told or otherwise knew they could join the Savings Club and pay a lower price than they would using their insurance." (ECF No. 35 at 15). As discussed above, this does not square with Plaintiffs' theory of the case, that joining the Savings Club should *not* have been a predicate to accessing Kroger's "usual and customary" prices. (*See* ECF No. 30 ¶ 18). Moreover, a customer's knowledge of the Savings Club does not necessarily mean consent to the alleged overbilling. The court in *Corcoran* found a classwide inference of reliance to be appropriate even for those customers who *had* joined CVS's version of the Savings Club, since the "opaque" nature of the "copayment adjustment process" undercuts the idea "that putative class members were aware of the fraudulent acts." *Corcoran*, 2017 WL 3873709, at *7.

Thus, the Court fails to see a "central defect," *Pilgrim*, 660 F.3d at 949, that would preclude class treatment of the unjust enrichment claim. It therefore will decline Kroger's invitation to strike the class allegations at this early stage.

### D.  Nationwide Class

In the alternative, Kroger moves to strike the nationwide class allegations, arguing that differences among the states' laws on fraud, negligent misrepresentation, and unjust enrichment would make a nationwide class unmanageable. (ECF No. 35 at 16–20). Kroger observes (and Plaintiffs do not contest) that Ohio's choice-of-law factors favor applying "the consumer-protection laws of the potential class members' home States . . . where the protected consumers

lived and where the injury occurred." *Pilgrim*, 660 F.3d at 946. According to Kroger's attached chart, those laws differ on several dimensions, such as "knowing misrepresentation [versus] reckless disregard," "standard of proof," "intent to induce reliance," "statutes of limitations," "damages," "punitive damages," and "existence of negligent misrepresentation." (ECF No. 35 at 17–18; No. 35-1 Ex. 1).

In response, Plaintiffs emphasize that the nationwide class is "simply a placeholder," which "'may be modified or narrowed by an amended complaint, or at class certification, including through the use of multi-state subclasses to account for material differences in state law, if any.'" (ECF No. 38 at 14, quoting ECF No. 30 ¶¶ 29–30). Plaintiffs argue they "cannot possibly plead those classes now without taking discovery on what those states are, Defendant's conduct in those states, and whether admissions by Defendant render differences among any state laws immaterial." (*Id.* at 15). Significantly, Kroger obtained a stay of discovery while the Court adjudicated the instant motions (*see* ECF No. 41), so discovery remains nascent.

As Plaintiffs note, this Court has permitted "impermissible fail-safe" classes to proceed to discovery, with the understanding that a refined definition will be presented at class certification. *Progressive Health*, 323 F.R.D. at 245–247; *see also Geary*, 2015 WL 1286347, at *16–17. *Pilgrim*, named extensively in Kroger's briefing, does not command otherwise. There, the Sixth Circuit affirmed a district court's *permissive* exercise under Rule 23(d)(1)(D) against an abuse-of-discretion standard. Nothing in the opinion *requires* class allegations to be stricken, even under similar facts. Furthermore, the nationwide class struck in *Pilgrim* was pled as final; the opinion makes no reference to a placeholder class to be refined through discovery.

Like in *Progressive Health*, Kroger's argument about the untenability of a nationwide class is "premature." 323 F.R.D. at 247. *See also Kimber Baldwin Designs, LLC v. Silv Commc'ns, Inc.*,

2016 WL 10520133, at *5–6 (S.D. Ohio Dec. 15, 2016) ("Because Plaintiff may ultimately move to certify a class encompassing some, but not all states, the issues Defendant raises about differences in states' unjust enrichment laws may never materialize."). Differences in law do not necessarily preclude some combination of state and multistate classes from being certified, as *Corcoran* shows. 2017 WL 3873709, at *9 (certifying California, Florida, Illinois, and Massachusetts classes; "plaintiffs have sufficiently demonstrated how jury instructions and a verdict form may be structured to account for statewide classes in light of the fact that many of the state-law claims raise common issues"). Until those classes are formulated more precisely, with the benefit of discovery, the Court cannot fulfill its "duty of engaging in a 'rigorous analysis' of the question." *Pilgrim*, 660 F.3d at 949 (quoting *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982)).

Kroger's concerns about the burden of nationwide discovery are not lost on the Court. Nevertheless, they counsel for a careful plan of discovery management, not for preemptively striking dozens of states in which viable subclasses still might be formulated. As such, the Court "will permit Plaintiff[s] to [commence] discovery, but notes that Plaintiff[s'] discovery should be aimed toward refining the class definition such that the Court may determine the certification question as soon as is practicable." *Progressive Health*, 323 F.R.D. at 247.[12]

## V.    CONCLUSION

For the reasons stated above, Defendant's Motion to Dismiss (ECF No. 32) is **DENIED**, except as to Plaintiffs' request for injunctive relief, which is **STRICKEN**. Defendant's Motion to

---

[12] For instance, it may be appropriate for Plaintiffs to seek admissions and basic information about Kroger's conduct in each state of operation (*see* ECF No. 38 at 15) before Kroger is asked to undertake the more burdensome request of pulling "hundreds of millions of lines of transactional data." (ECF No. 41 at 3). The Court leaves the precise contours of a discovery plan to the reasoned consideration of the Magistrate Judge.

Strike Class Allegations (ECF No. 35) is **DENIED**, except as to Paragraph 37 of the Amended Complaint, which is **STRICKEN**. The denial of the Motion to Strike is without prejudice to renewal following a period of class discovery or in opposition to class certification. In the interim, this case may proceed as a putative class action on all counts alleged.

     **IT IS SO ORDERED.**

                                               **ALGENON L. MARBLEY**
                                             **CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: July 12, 2022**